CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
HB Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HB Productions, Inc., | ) **Case No.: 1:19-cv-487** |
| | ) (Copyright) |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT; EXHIBITS 1-4;** |
| | ) **DECLARATION OF STEPHANIE** |
| Muhammad Faizan, | ) **KESSNER; DECLARATION OF** |
| JOHN DOE dba ibit.uno, and | ) **COUNSEL** |
| DOES 1-35 | ) |
| | ) **(1) CONTRIBUTORY** |
| Defendants. | ) **COPYRIGHT** |
| | ) **INFRINGEMENT** |
| | ) **(2) INTENTIONAL** |
| | ) **INDUCEMENT** |
| | ) **(3) DIRECT COPYRIGHT** |
| | ) **INFRINGEMENT** |
| | ) **(4) FALSE ADVERTISING** |
| | ) |

## <u>COMPLAINT</u>

Plaintiff  HB  Productions,  Inc.  ("Plaintiff")  files  this  Complaint  against

Defendants  Muhammad  Faizan  ("Faizan"),  JOHN  DOE  dba  ibit.uno  ("JOHN

20-018B

DOE"), and DOES 1-35 (sometimes referred to collectively as "Defendants") and alleges as follows:

## I.     NATURE OF THE ACTION

1.      Plaintiff brings this action to stop the massive piracy of its motion picture *Hellboy* brought on by Defendants.

2.      To halt Defendants' illegal activities, Plaintiff brings this action under: (a) the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and allege that Defendants are liable for direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; (b) the Lanham Act of 1946, as amended, 15 U.S.C. §§1051, et seq., and alleges that Defendant Faizan is further liable for  false and/or misleading misrepresentations in violation of 15 U.S.C. §1125(a)(1)(B);

## II.     JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), 15 U.S.C. §1125(a)(1)(B) (the Lanham Act), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury

20-018B

in this jurisdiction.

5.     Defendants Faizan and JOHN DOE cause harm to Plaintiff's business within this District by diverting customers in this District to unauthorized Internet-based content distribution services through, at least, the interactive websites ibit.uno, mkvcage.fun and mkvcage.com.

6.     Defendants Faizan and JOHN DOE have designed their interactive websites to individually target Hawaii users based upon their personal information such as web browsing history.

7.     Upon information and belief, Defendants Faizan and JOHN DOE collect log files including the Internet Protocol ("IP") address, Internet Service Provider ("ISP") and browser type of each user who visits their interactive websites.

8.     Upon information and belief, Defendants Faizan and JOHN DOE use cookies and web beacons to store information such as personal preferences of users who visit their websites.

9.     Upon information and belief, Defendants Faizan and JOHN DOE obtain financial benefit from their users in Hawaii via third party advertisements such as Google through the Google AdSense program.

20-018B



10.     Upon information and belief, Defendants Faizan and JOHN DOE use the cookies, log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user.   Particularly, users in Hawaii receive advertisements based upon their location and websites they have previously visited.

20-018B



11.    Defendant Faizan solicits feedback from his users.  Namely, movies that his users wish for him to pirate.



12.    Defendant Faizan solicits donations from his users from his interactive website.



13.     In the alternative, the Court has jurisdiction of Defendants Faizan and JOHN DOE pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiff's claims arise under federal law; (2) the Defendants Faizan and JOHN DOE purposely directed their electronic activity into the United States and target and attract a substantial number of users in the United States and, more particularly, this District; (3) Defendants Faizan and JOHN DOE do so with the manifest intent of engaging in business or other interactions with the United States; (4) the Defendants Faizan and JOHN DOE are not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United States Constitution and laws.

14.     The top country of origin of traffic to the website of Defendant JOHN DOE is the United States.

20-018B



15.     Defendant JOHN DOE has received over 42,910,000 visitors to his website ibit.uno since February of 2019.



16.     The United States is the second highest source of traffic to the website of Defendant Faizan.

20-018B



17.    Defendant Faizan has received over 9 million visitors to his website mkvcage.com since May of 2019.



18.    Defendants Faizan and JOHN DOE use or have used many United States ("US") based sources for operating their interactive websites.  Both use the nameserver company Cloudflare, Inc. (California). Defendant Faizan uses the domain Registrar and hosting service of Namecheap (Arizona).  Defendant Faizan

20-018B

uses the email service of the US Company Google (California).  Defendant Faizan used the US company PayPal to make a payment to Namecheap when registering the domain mkvcage.cc on Jan. 6, 2018.

19.     Defendant JOHN DOE purposely avails itself of the advantages of US law.  Particularly, Defendant JOHN DOE takes advantage of the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA") of 17 USC § 512 on its website.



20.     Defendant Faizan purposely avails himself of the advantages of US law.  Particularly, Defendant Faizan takes advantage of the safe harbor provisions of the DMCA on his website.

20-018B



21.    Defendants Faizan and JOHN DOE promote overwhelmingly if not exclusively motion pictures produced by US companies on their interactive websites.

22.    Defendant Faizan even includes a webpage of the Internet Movie Database ("IMDB") top 250 movies with a download link below each movie to unlawfully download the specific movie.  The IMDB is operated by IMDb.com, Inc., a subsidiary of the US company Amazon and includes primarily US movies.

20-018B



23.    Defendant Faizan and JOHN DOE promoted Plaintiff's motion picture prominently on their websites to attract new users.



**Storyline:** Based on the graphic novels by Mike Mignola, Hellboy, caught between the worlds of the supernatural and human, battles an ancient sorceress bent on revenge.

Download → (https://www.mkvcage.fun/hellboy-2019-720p-brrip-hevc-750mb/#more-48827)

20-018B



24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) any of the Defendants not a resident of the United States may be sued in this District.

### III.   PARTIES

### A.   The Plaintiff

25.    The Plaintiff is a corporation organized and existing under the laws of the State of Nevada.   The Plaintiff has its principal offices in Los Angeles, California.

26.    Plaintiff is the owner of the copyright for the motion picture in the Work "*Hellboy*", (hereafter: the "Work") a major motion picture released in 2018.

20-018B

27.     The Work is an action movie starring David Harbour, Milla Jovovich, IanMcShane.   The Work tells the story of a legendary half-demon superhero called to the English countryside to battle a trio of rampaging giants where he suddenly becomes caught in a clash between the supernatural and the human.

28.     The Plaintiff is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures, including, among others, *Rambo, The Expendables, Olympus Has Fallen* and *London Has Fallen*. *See* www.millenniumfilms.com.

## B.   The Defendants

29.     Upon information and belief, Defendant Faizan resides in Gujranwala, Pakistan.

30.     Defendant Faizan operates an interactive website mkvcage.com and previously mkvcage.fun (hereafter: "MKVCAGE website") which includes a library of torrent files for copyright protected motion pictures, including Plaintiff's.   The torrent files can be used by a BitTorrent client application to download and reproduce motion pictures for free and without license.

31.     Defendant Faizan creates the torrent files made available on the MKVCAGE website.   Particularly, Defendant Faizan created the torrent files: Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv;

Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG;                    and

20-018B

Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv   and   distributes   them from the MKVCAGE website.

32.    Upon  information  and  belief,  Defendant  Faizan  uses  a  process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

33.    Defendant    Faizan    sometimes    includes    words    such    as "MkvCage.com" in the titles of the torrent files he creates in order to enhance his reputation  for  the  quality  of  his  torrent  files  and  attract  users  to  his  interactive MKVCAGE website.

34.    Defendant  JOHN  DOE  operates  an  interactive  website  ibit.uno (hereafter: "IBIT website") which includes a library of torrent files for copyright protected motion pictures, including Plaintiff's as well as games, software and books.    The  torrent  files  can  be  used  by  a  BitTorrent  client  application  to download motion pictures for free and without license.

35.    The  true  names  and  capacities,  whether  individual,  corporate, associate or otherwise, of Defendant JOHN DOE is unknown to Plaintiff who therefore sues said Defendant by a fictitious name.    Defendant JOHN DOE is known to the Plaintiff only by the website where it induces and contributes to infringements of Plaintiff's Work.

14

20-018B

36.     In response to a DMCA notice and subpoena, the Registrar Namecheap has indicated that the true name of the registrant of mkvcage.fun website is Defendant Faizan and that Defendant Faizan is also the registrant for the domains mkvcage.com, mkvcage.ws, mkvcage.cc and mkvcage.me.

37.     Upon information and belief, Namecheap informed Defendant Faizan of Plaintiff's DMCA notice.  Defendant Faizan promptly moved his website from mkvcage.fun to mkvcage.com.

38.     The whois search records for the registrant of the ibit.uno show Registrar is Tucows Domains, Inc. ("Tucows").   In response to a DMCA subpoena, Tucows has indicated that the registrant is 1337 Services LLC which is a privacy service for the registrant.

39.     Upon information and belief, Tucows informed Defendant JOHN DOE of Plaintiff's DMCA notice.  Defendant JOHN DOE deleted the link to the torrent file Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv specifically referred to in the DMCA notice, but continues to provide links to nearly one hundred other torrent files for copying the Work.

20-018B





40.    Upon information and belief, the Defendants DOES 1-35 are users of the interactive websites of Defendants JOHN DOE and Faizan.

41.    The Defendants DOES 1-35 include members of three groups of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: 0550544E834856FC1F012A567388F0307CD8A61A (the "First Unique Hash Number") for DOES 1-6 and the file name is Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv;            SHA1: 18031E80B3360664B3641E1B7952172740AD5A63 (the "Second Unique Hash Number")    for    DOES    7-29    and    the    file    name    is Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG;        and    SHA1: 0550544E834856FC1F012A567388F0307CD8A61A   (the "Third Unique Hash Number")    for    DOES    30-35    and    the    file    name    is Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv.

42.    Upon information and believe, Each of the Defendants DOES 1-35 received from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the DMCA requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

43.    The Internet Service Providers ("ISP") Hawaiian Telcom and Charter

17

Communications LLC dba Spectrum ("Spectrum") provide the Internet service for

Defendants DOES 1-35.  Plaintiff intends to subpoena the ISP in order to learn the

subscriber identities of Defendants DOES 1-35.   Further discovery may be

necessary in some circumstances in order to be certain of the identity of the proper

Defendant.  Plaintiff believes that information obtained in discovery will lead to

the identification of each Defendant's true names and permit the Plaintiff to

amend this Complaint to state the same.   Plaintiff further believes that the

information obtained in discovery may lead to the identification of additional

infringing parties to be added to this Complaint as Defendants.   Plaintiff will

amend this Complaint to include the proper names and capacities when they have

been determined.  Plaintiff is informed and believes, and based thereon allege, that

each of the fictitiously named Defendants participated in and are responsible for

the acts described in this Complaint and damages resulting therefrom.

## IV.   JOINDER

44.   Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was

properly joined because, as set forth in more detail below, the Plaintiff asserts: (a)

a right to relief arising out of the same transaction, occurrence, or series or

transactions, namely (i) the distribution of the torrent files associated with

Plaintiff's Work via the website of Defendant Faizan to Defendants DOES 1-35;

(ii) the inducement by Defendant Faizan of the direct infringements of Defendants

20-018B

DOES 1-35; and (iii) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other (all via Defendant Faizan); and (b) there are common questions of law and fact.

## V.    FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyright to the Work

45.    The Plaintiff is the owner of the copyright in the Work.  The Work is the subject of a copyright registration, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "2".

46.    The Work is a motion picture currently offered for sale in commerce.

47.    Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

48.    Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendants Used BitTorrent To Infringe the Plaintiff's Copyright

49.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large

20-018B

amounts of data.

50.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants DOES 1-35 installed a BitTorrent Client onto his or her Computer.

51.    A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

52.    Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

53.    Defendants DOES 1-35 installed a BitTorrent Client onto their respective computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

20

20-018B

54.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

55.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

56.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

57.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

58.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

59.     The "tracker" is a computer or set of computers that a torrent file

20-018B

specifies and to which the torrent file provides peers with the URL address(es).

60.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

61.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

62.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including those of Defendants Faizan and JOHN DOE.

63.     Upon information and belief, Defendants DOES 1-35 went to a torrent site to upload and download Plaintiff's copyrighted Work.

64.     Upon information and belief, Defendants DOES 1-35 went to the torrent site of Defendants Faizan and JOHN DOE to download Plaintiff's copyrighted Work.  Particularly, the torrent files downloaded by Defendants DOES 1-35 were created by Defendant Faizan and made available by Defendant Faizan on his MKVCAGE website and on Defendant JOHN DOE's IBIT website.

20-018B

#### *4. Uploading and Downloading a Work Through a BitTorrent Swarm*

65.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

66.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

67.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

68.     In this way, all of the peers and seeders are working together in what is called a "swarm."

69.     Here, Defendants (through each of the three groups) participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

70.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The

20-018B

recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

71.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**5. *The Plaintiff's Computer Investigator Identified the Defendants DOE 1-35's IP Addresses as Participants in Swarms That Were Distributing the Plaintiff's Copyrighted Work***

72.    The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

73.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

74.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

75.    The IP addresses, Unique Hash Number, and hit dates contained on

20-018B

Exhibit "1" accurately reflect what is contained in the evidence logs, and show that Defendants DOES 1-35 have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Numbers.

76.    The Defendants DOES 1-35's computers used the identified IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

77.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

78.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### C. Defendant Faizan is the initial Seeder of the Work

79.    Defendant Faizan was the initial seeder who copied the Work, created the torrent files Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv, Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG and Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv and distributed them via the MKVCAGE and IBIT websites.

80.    Accordingly, Defendant Faizan is the initial contributor and creator

20-018B

of the Swarms identified by the Unique Hash Numbers.

81.    Defendant Faizan did not and does not have a license from Plaintiff to copy Plaintiff's Work.

**D. Defendants Faizan and JOHN DOE distribute the torrent files of the Work**

82.    Defendant    Faizan    has    made    the    torrent    files Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv, Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG    and Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv available to users in Hawaii such as Defendants DOES 1-35, the United States and the entire World to download from the MKVCage website.

83.    Defendant Faizan also made available the files Hellboy (2019) 720p BRRip HEVC 750MB ; Hellboy (2019) 1080p BRRip 6CH 2.3GB ; Hellboy (2019) 720p BRRip 1.1GB ; Hellboy (2019) 1080p AMZN WEB-DL 6CH 2.2GB ; Hellboy (2019) 1080p WEB-DL 6CH 2GB ; Hellboy (2019) 720p WEB-DL 950MB ; Hellboy (2019) 720p HC HDRip 950MB available to users in Hawaii such as Defendants DOES 1-35, the United States and the entire World to download from the MKVCage website.

84.    Defendant    Faizan    uploaded    the    file "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" to the IBIT website

20-018B

of Defendant JOHN DOE in early July of 2019 where the Torrent File can be downloaded.  Defendant Faizan used his profile "mkvcage" when uploading the file in order to maintain brand awareness of the quality of his torrent files.



85.   Defendants Faizan and JOHN DOE did not and do not have a license from Plaintiff to distribute copies of Plaintiff's Work.

86.   As of Sept. 6, 2019 and the date of the infringements, Defendants Faizan and JOHN DOE do not have a DMCA agent as required by the DMCA to assert safe harbor.

20-018B



### E. Defendants Faizan and JOHN DOE induce infringements of the Work

87.    Users of the Defendants Faizan and JOHN DOE's interactive websites such as Defendants DOES 1-35 use the websites for their intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiff's Copyrighted Work.

88.    Defendants Faizan and JOHN DOE promote their websites for overwhelmingly, if not exclusively, infringing purposes, and that is how the users

20-018B

use the websites.

89.    The commercial value of Defendant Faizan and JOHN DOE's websites depends on high-volume use of unauthorized content through the websites. Defendants Faizan and JOHN DOE promise their users reliable and convenient access to all the content they can watch and users visit the websites based on Defendants Faizan and JOHN DOE's apparent success in delivering infringing content to its customers.

### F. Defendant Faizan misrepresents the legality of the torrent files he distributes.

90.    Defendant Faizan promotes and/or advertises his MKVCAGE website commercially in interstate commerce.

91.    Defendant Faizan has distributed torrent files of the Work in interstate commerce from his MKVCAGE website.

92.    Defendant Faizan's website includes misleading statements and/or false descriptions that misrepresent the nature, characteristics, qualities of the torrent files he distributes.

93.    Particularly, Defendant Faizan's statements that the torrent files can be used to watch Plaintiff's Work misrepresents the illegal nature of the torrent files he distributes.

94.    Particularly, Defendant Faizan's omission that using the torrent files

20-018B

he distributes as promoted would subject the user to copyright infringement misrepresents the illegal nature of his torrent files.

95.     Defendant Faizan advertises, promotes, markets and distributes torrent files on his MKVCAGE website for the purpose of watching free movies. Accordingly, Defendant has made and distributed in interstate commerce and in this District, commercial advertising or promotions that contains false or misleading representations of fact.

96.     Defendant Faizan has not obtained a license from Plaintiff or, upon information or belief, any Copyright holders to publicly perform or distribute their motion pictures.

97.     Defendant Faizan does not mention the illegality of the torrent files in his promotional language of his MKVCAGE website.

98.     Defendant Faizan has gone to great lengths to conceal himself from the public, including by using a privacy service to conceal his contact information in connection with registering and hosting his websites.

99.     Consumers are likely to be misled and deceived into believing the torrent files of Defendant Faizan can be legally used for viewing Copyrighted motion pictures by the promotional language on Defendant Faizan's MKVCAGE website.

100.    Defendant Faizan's false and misleading promotions of his torrent

20-018B

files are designed to entice consumers to use Defendant Faizan's MKVCAGE website for viewing motion pictures rather than retailers, distributors or streaming services licensed by Plaintiff.

101.   Because Defendant Faizan does not pay for a license to distribute or copy any motion pictures, he can distribute the torrent files for nothing while profiting from advertisements on his websites and donations.   In this way, Defendant Faizan entices consumers who would otherwise pay to own and/or watch Plaintiff's Works on a legitimate platform.   In doing so, Defendant Faizan wrongfully misleads and deceives consumers into believing that they are using a legitimate platform to watch and/or copy Plaintiff's Works, when in fact consumers are putting themselves at risk for criminal and civil penalties for Copyright Infringement.

102.   Defendant benefits financially from the infringement of the Works by the Hawaii users of his torrent files.

103.   Plaintiff is informed and believes that Defendant Faizan's wrongful conduct has resulted in increased traffic to his websites while hindering the sale of Plaintiff's Work through legitimate distribution channels.   Plaintiff has sustained and will sustain damages as a result of Defendant Faizan's wrongful conduct.

## VI. FIRST CLAIM FOR RELIEF
### (Intentional Inducement – Against Defendants Faizan and JOHN DOE)

20-018B

104.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

105.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

106.   Defendants Faizan and JOHN DOE had actual knowledge of third parties' infringement of Plaintiff's exclusive rights under the Copyright Act.

107.   Defendants Faizan and JOHN DOE intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly distribute copies of Copyrighted Works.

108.   As intended and encouraged by Defendants Faizan and JOHN DOE, their websites provide torrent files that connect users to Torrent sources and/or sites that deliver copies of Plaintiff's Copyrighted Work.  The operators of these Torrent sources directly infringe Plaintiff's exclusive rights by providing unauthorized copies of the works to the public, including to users of Defendants Faizan and JOHN DOE's websites.

109.   Once the user of Defendants Faizan and JOHN DOE's websites have obtained a complete copy of the Plaintiff's Copyrighted Works, that particular user also becomes another Torrent source that delivers copies of Plaintiff's Copyrighted

20-018B

Work.

110.   Defendants Faizan and JOHN DOE induce the aforementioned acts of infringement by supplying the torrent file that facilitates, enables, and creates direct links between their users and the infringing Torrent source, and by actively inducing, encouraging and promoting the use of their websites for blatant copyright infringement.

111.   Defendants Faizan and JOHN DOE's intentional inducement of the infringement of Plaintiff's rights in its Copyrighted Work constitutes a separate and distinct act of infringement.

112.   Defendants Faizan and JOHN DOE's inducement of the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

113.   Defendants Faizan and JOHN DOE's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

### VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Material Contribution – Against Defendants Faizan and JOHN DOE)

114.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

115.   Defendants Faizan and JOHN DOE had actual or constructive knowledge of infringement of Plaintiff's exclusive rights under the Copyright Act.

33

20-018B

Defendants Faizan and JOHN DOE knowingly and materially contribute to such infringing activity.

116. Defendants Faizan and JOHN DOE knowingly and materially contribute to the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to distribute the Work. Defendants Faizan and JOHN DOE design and promote their websites to provide torrent files that connect customers to unauthorized online torrent sources to download copies of Plaintiff's Copyrighted Work. The operators of these torrent sources directly infringe Plaintiff's distribution rights by providing copies of the Work to the public, including to website users. The operators, or others operating in concert with them, control the facilities and equipment used to store and deliver copies of the content, and they actively and directly cause the content to be distributed when users run the torrent file obtained from the website.

117. Defendants Faizan and JOHN DOE knowingly and materially contribute to the aforementioned acts of infringement by supplying the website that facilitates, encourages, enables, and creates direct links between website users and infringing operators of the Torrent services, and by actively encouraging, promoting, and contributing to the use of the website for blatant copyright infringement.

118. Defendants Faizan and JOHN DOE's knowing and material

20-018B

contribution to the infringement of Plaintiff's rights in the Copyrighted Work constitutes a separate and distinct act of infringement.

119. Defendant Faizan and JOHN DOE's knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

120. As a direct and proximate result of the infringement to which Defendants Faizan and JOHN DOE knowingly and materially contribute, Plaintiff is entitled to damages and Defendant Faizan and JOHN DOE's profits in amounts to be proven at trial.

121. Defendants Faizan and JOHN DOE obtained a direct financial interest, financial advantage, and/or economic consideration from the infringements in Hawaii as a result of their infringing actions in the United States.

122. Defendants Faizan and JOHN DOE's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

## VIII. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement against Defendants Faizan and DOES 1-35 based upon participation in the BitTorrent Swarm)

123. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

20-018B

124.   By participating in the BitTorrent swarms with others, Defendants Faizan and DOES 1-35 induced, caused or materially contributed to the infringing conduct of others.

125.   Plaintiffs did not authorize, permit, or provide consent to the Defendants Faizan and DOES 1-35 inducing, causing, or materially contributing to the infringing conduct of others.

126.   Defendants Faizan and DOES 1-35 knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendants Faizan and DOES 1-35 directly participated in and therefore materially contributed to others' infringing activities.

127.   The Defendants Faizan and DOES 1-35's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

128.   By engaging in the contributory infringement alleged in this Complaint, the Defendants Faizan and DOES 1-35 deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

20-018B

129.   The Plaintiff has suffered damages that were proximately caused by the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## IX. FOURTH CLAIM FOR RELIEF
### (Direct Copyright Infringement against Defendants Faizan and DOES 1-35)

130.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

131.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

132.   Defendant Faizan copied the constituent elements of the Work when creating the torrent files.

133.   Defendant DOES 1-35 copied the constituent elements of the Work.

134.   Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, redistribute, perform, or display their Works.

135.   As a result of the foregoing, Defendants Faizan and DOES 1-35 violated the Plaintiff's exclusive right to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

136.   Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

137.   The Plaintiff has suffered damages that were proximately caused by

20-018B

each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. FIFTH CLAIM FOR RELIEF
### (False Description against Defendant Faizan)

138.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

139.   Defendant Faizan has made and distributed in interstate commerce in in this District, advertisements that contain false or misleading statements of fact regarding the torrent files he distributes.   These advertisements contain actual misstatements and/or misleading statements and failures to disclose, among other, the statement that Defendant Faizan's torrents can be used to watch free movies without describing the illegality.

140.   Upon information and belief, these or misleading statements actually deceive or have a tendency to deceive, a substantial segment of Plaintiff's customers and potential customers.   This deception is material in that is likely to influence the purchasing decisions of Plaintiff's customers.

141.   The false and misleading advertising statements and omissions of Defendant Faizan injure both consumers and Plaintiff.

142.   Defendant Faizan's false and misleading advertising statements and omissions violate the Lanham Act §43(a), 15 U.S.C. §1125(a).

20-018B

143.   Defendant Faizan has caused and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.  As such, Plaintiff is entitled to an injunction under 15 U.S.C. §1116 restraining Defendant Faizan, his agents, employees, representatives and all persons acting in concert with him from engaging in further acts of false advertising, and ordering removal of all Defendant Faizan's false advertisements or to add a prominent warning to consumers regarding the illegality of his torrent files.

144.   Pursuant to 15 U.S.C. §1117, Plaintiff is entitled to recover from Defendant Faizan the damages sustained by Plaintiff as a result of Defendants Faizan's acts in violation of Lanham Act §43(a).  Plaintiff is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants Faizan's acts.

145.   Pursuant to 15 U.S.C. §1117, Plaintiff is further entitled to recover from Defendant Faizan the gains, profits and advantages that he has obtained as a result of his acts.  Plaintiff is at present unable to ascertain the full amount of the gains, profits and advantages Defendant Faizan has obtained by reason of his acts.

146.   Pursuant to 15 U.S.C. §1117, Plaintiff is further entitled to recover costs of this action.  Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendant Faizan's conduct was undertaken willfully and with

20-018B

the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining each Defendant from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that, Cloudflare and any other service provider cease providing service for the websites: (i) ibit.uno, mkvcage.com; and (ii) any mirror websites in concert with ibit.uno and mkvcage.com such as, but not limited to mkvcage.ws and mkvcage.cc, immediately cease said service;

(C) that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, ISP, Web hosts, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants Faizan and JOHN DOE engages in the aforementioned infringements;

40

(D) award the Plaintiff's actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, September 9, 2019.

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
HB Productions, Inc.

20-018B