CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiff
HB Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HB Productions, Inc., | ) **Case No.: 1:19-cv-487-JMS-KJM** |
| | ) (Copyright) |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT; EXHIBITS 1-4;** |
| | ) **DECLARATION OF STEPHANIE** |
| Muhammad Faizan, | ) **KESSNER; DECLARATION OF** |
| | ) **COUNSEL; DECLARATION OF** |
| | ) **DANIEL ARHEIDT** |
| Defendant. | ) |
| | ) **(1) CONTRIBUTORY** |
| | )     **COPYRIGHT** |
| | )     **INFRINGEMENT** |
| | ) **(2) INTENTIONAL** |
| | )     **INDUCEMENT** |
| | ) **(3) DIRECT COPYRIGHT** |
| | )     **INFRINGEMENT** |
| | ) |

## FIRST AMENDED COMPLAINT

Plaintiff HB Productions, Inc. ("Plaintiff") files this First Amended Complaint

against Defendant Muhammad Faizan ("Defendant") and alleges as follows:

### I.      NATURE OF THE ACTION

20-018B 19cv487

1.      Plaintiff brings this action to stop the massive piracy of its motion picture *Hellboy* brought on by Defendant.

2.      To halt Defendant's illegal activities, Plaintiff brings this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and allege that Defendant is liable for direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendant solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.

5.      Defendant sent at least a substantial portion if not all of copies of Plaintiff's motion pictures directly to individuals in Hawaii such as those shown in Exhibit "1" from one or more computing devices under his control.

6.      Particularly, Defendant Faizan sent at least a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" to 12 Internet Protocol ("IP") addresses in Hawaii.

7.    Particularly, Defendant Faizan sent at least a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG" to 23 IP addresses in Hawaii.

8.    Defendant Faizan knew these 35 IP addresses were in Hawaii when he sent the at least a piece of each of said copies of Plaintiff's Works.

9.    Defendant Faizan causes harm to Plaintiff's business within this District by diverting customers in this District to unauthorized Internet-based content distribution services through, at least, the interactive websites mkvcage.nl, mkvcage.fun and mkvcage.com.

10.    Defendant Faizan has designed his interactive websites to individually target Hawaii users based upon their personal information such as web browsing history.

11.    Upon information and belief, Defendant Faizan collects log files including the Internet Protocol ("IP") address, Internet Service Provider ("ISP") and browser type of each user who visits his interactive websites.

12.    Upon information and belief, Defendant Faizan uses cookies and web beacons to store information such as personal preferences of users who visit their websites.

13.    Upon information and belief, Defendant Faizan obtains financial

3

benefit from his users in Hawaii via third party advertisements such as Google through the Google AdSense program.

14.     Upon information and belief, Defendant uses the cookies, log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user.  Particularly, users in Hawaii receive advertisements based upon their location and websites they have previously visited.

15.     Defendant Faizan solicits feedback from his users.  Namely, movies that his users wish for him to pirate.



16.     Defendant Faizan solicits donations from his users in Hawaii and the United States from his interactive website.



17.    In the alternative, the Court has jurisdiction of Defendant Faizan pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiff's claims arise under federal law; (2) the Defendant Faizan purposely directed his electronic activity into the United States and targets and attracts a substantial number of users in the United States and, more particularly, this District; (3) Defendant Faizan does so with the manifest intent of engaging in business or other interactions with the United States; (4) the Defendant Faizan is not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United States Constitution and laws.

18.    Defendant Faizan has sent at least a piece of a copy of Plaintiff's Work if not the entire copy to IP addresses in the United States for at least 16,942 instances.

19.    Particularly, Defendant Faizan sent a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv"

to IP addresses in the United States at least 8555 times.

20.    Particularly, Defendant Faizan sent a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG" to IP addresses in the United States at least 8387 times.

21.    Defendant Faizan knew these IP addresses were in the United States when he sent the at least a piece of the copy of Plaintiff's Works 16,942 times.

22.    The United States is the second highest source of traffic to the website of Defendant Faizan.



23.    Defendant Faizan has received over 9 million visitors to his website mkvcage.com since May of 2019.

20-018B  19cv487



24.    Defendant Faizan uses or has used many United States ("US") based sources for operating his interactive websites.    Defendant Faizan uses the nameserver company Cloudflare, Inc. (California), the domain Registrar and hosting service of Namecheap (Arizona), the email service of the US Company Google (California).  Defendant Faizan used the US company PayPal to make a payment to Namecheap when registering the domain mkvcage.cc on Jan. 6, 2018.  Defendant Faizan used the US social media platforms TWITTER, INSTAGRAM and Reddit to promote his websites.

25.    Defendant Faizan purposely avails himself of the advantages of US law. Particularly, Defendant Faizan takes advantage of the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA") on his website.



26.     Upon information and belief, Defendant Faizan has purposely availed himself of the benefit of the DMCA with respect to other websites he owns and/or controls such as, for example, the website FAIZANATHAR.COM.

27.     Upon information and belief, Defendant Faizan submitted at least two DMCA notices to Google requesting Google to remove search results for websites that he believed infringed his rights in the website faizanathar.com on March 25, 2018.

28.     Upon information and belief, when Defendant Faizan submitted said

8

least two DMCA notices to Google, he agreed to be subject to the jurisdiction of the United States.

29.    Defendant Faizan promotes overwhelmingly if not exclusively motion pictures produced by US companies on their interactive websites.

30.    Defendant Faizan even includes a webpage of the Internet Movie Database ("IMDB") top 250 movies with a download link below each movie to unlawfully download the specific movie.  The IMDB is operated by IMDB.com, Inc., a subsidiary of the US company Amazon and includes primarily US movies.



31.    Defendant Faizan promoted Plaintiff's motion picture prominently on their websites to attract new users.

20-018B  19cv487



**Storyline:** Based on the graphic novels by Mike Mignola, Hellboy, caught between the worlds of the supernatural and human, battles an ancient sorceress bent on revenge.

Download → (https://www.mkvcage.fun/hellboy-2019-720p-brrip-hevc-750mb/#more-48827)

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) although Defendant is not a resident of the United States he may be sued in this District.

### III.   PARTIES

### A.   The Plaintiff

33.     The Plaintiff is a corporation organized and existing under the laws of the State of Nevada.   The Plaintiff has its principal offices in Los Angeles,

California.

34.     Plaintiff is the owner of the copyright for the motion picture in the Work "*Hellboy*", (hereafter: the "Work") a major motion picture released in 2018.

35.     The Work is an action movie starring David Harbour, Milla Jovovich, IanMcShane.  The Work tells the story of a legendary half-demon superhero called to the English countryside to battle a trio of rampaging giants where he suddenly becomes caught in a clash between the supernatural and the human.

36.     The Plaintiff is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures, including, among others, *Rambo: Last Blood, The Expendables, Olympus Has Fallen* and *London Has Fallen*. *See* www.millenniumfilms.com.

## B.   The Defendant

37.     Upon information and belief, Defendant Faizan resides in Gujranwala, Pakistan.

38.     Defendant Faizan operates an interactive website mkvcage.nl and previously mkvcage.fun and mkvcage.com (hereafter: "MKVCAGE website") which include a library of torrent files for copyright protected motion pictures, including Plaintiff's.  The torrent files can be used by a BitTorrent client application to download and reproduce motion pictures for free and without license.

20-018B  19cv487

39.     Defendant Faizan creates the torrent files made available on the MKVCAGE website.  Particularly, Defendant Faizan created the torrent files: Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv                    and Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG and distributes them from the MKVCAGE website.

40.     Upon information and belief, Defendant Faizan uses a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

41.     Defendant Faizan sometimes includes words such as "MkvCage.com" in the titles of the torrent files he creates in order to enhance his reputation for the quality of his torrent files and attract users to his interactive MKVCAGE website.

42.     In response to a DMCA notice and subpoena, the Registrar Namecheap has indicated that the true name of the registrant of mkvcage.fun website is Defendant Faizan and that Defendant Faizan is also the registrant for the domains mkvcage.com, mkvcage.ws, mkvcage.cc and mkvcage.me.

43.     Upon information and belief, Namecheap informed Defendant Faizan of Plaintiff's DMCA notice.  Defendant Faizan promptly moved his website from mkvcage.fun to mkvcage.com.

44.     Defendant Faizan subsequently begin operating the website mkvcage.nl jointly with 1337 Services, LLC ("1337").

45. 1337 is a limited liability company organized under the laws of the Caribbean island of St. Kitts and Nevis.

46. 1337 was created and is controlled by Peter Sunde Kolmisoppi.

47. Peter Sunde Kolmisoppi is a notorious copyright thief who was sentenced to prison in Sweden for his creation of The Pirate Bay.

48. Upon information and belief, the individuals DOES 1-35 are users of the interactive website of Defendant Faizan.

49. The DOES 1-35 include members of two groups of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: 0550544E834856FC1F012A567388F0307CD8A61A (the "First Unique Hash Number") for DOES 1-6 and 30-35 and the file name is Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv; and SHA1: 18031E80B3360664B3641E1B7952172740AD5A63 (the "Second Unique Hash Number") for DOES 7-29 and the file name is Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG.

## IV.         FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyright to the Work

20-018B  19cv487

50.   The Plaintiff is the owner of the copyright in the Work.  The Work is the subject of a copyright registration, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "2".

51.   The Work is a motion picture currently offered for sale in commerce. A Blu-ray copy of the Work is currently available for sale at a retailer in Kailua Kona, Hawaii for $15.95.



52.   Defendant had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

53.   Defendant also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendant Used BitTorrent To Infringe the Plaintiff's Copyright

54.   BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts

of data.

55.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. DOES 1-35 installed a BitTorrent Client onto his or her Computer.

56.    A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

57.    Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

58.    DOES 1-35 installed a BitTorrent Client onto their respective computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

59.    A BitTorrent user that wants to upload a new file, known as an "initial

seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

60.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

61.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

62.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

63.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

64.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

20-018B  19cv487

65.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

66.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

67.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including those of Defendant Faizan.

68.     Upon information and belief, DOES 1-35 went to the torrent site of Defendant Faizan to download Plaintiff's copyrighted Work.  Particularly, the torrent files downloaded by DOES 1-35 were created by Defendant Faizan and made available by Defendant Faizan on his MKVCAGE website.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

69.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

17

70.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

71.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

72.     In this way, all of the peers and seeders are working together in what is called a "swarm."

73.     Here, DOES 1-35 (through each of the three groups) participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

74.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

75.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because

18

it continues to distribute the torrent file, here the copyrighted Work.

**5.   *The Plaintiff's Computer Investigator Identified the DOE 1-35's IP Addresses as Participants in Swarms That Were Distributing the Plaintiff's Copyrighted Work***

76.   The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

77.   MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

78.   MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

79.   The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show that DOES 1-35 have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Numbers.

80.   The DOES 1-35's computers used the identified IP address to connect to the investigative server from a computer in this District in order to transmit a full

copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

81.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

82.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

83.    MEU's agent logged 8555 instances of infringing transactions in the United States and 38567 infringing transactions worldwide with the Unique Hash Number 0550544E834856FC1F012A567388F0307CD8A61A shown in Exhibit "1" as of September 1, 2019.

84.    MEU's agent logged 8387 instances of infringing transactions in the United States and 66476 infringing transactions worldwide with the Unique Hash Number 18031E80B3360664B3641E1B7952172740AD5A63 shown in Exhibit "1" as of September 1, 2019.

### C. Defendant Faizan is the initial Seeder of the Work

85.    Defendant Faizan was the initial seeder who copied the Work, created the torrent files Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv and Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG and distributed them via

20

the MKVCAGE websites.

86.     Defendant Faizan seeded copies of the work from computing devices under his control under his username to other notorious movie piracy sites such as ETTV and 1337x.

87.     Accordingly, Defendant Faizan is the initial contributor and creator of the Swarms identified by the Unique Hash Numbers.

88.     Defendant Faizan did not and does not have a license from Plaintiff to copy Plaintiff's Work.

### D. Defendant Faizan distributes the torrent files of the Work

89.     Defendant    Faizan    has    made    the    torrent    files Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv, Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG                    and Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv available to users in Hawaii such as DOES 1-35, the United States and the entire World to download from the MKVCage website and other notorious movie piracy sites such as ETTV and 1337x.

90.     Defendant Faizan also made available the files Hellboy (2019) 720p BRRip HEVC 750MB ; Hellboy (2019) 1080p BRRip 6CH 2.3GB ; Hellboy (2019) 720p BRRip 1.1GB ; Hellboy (2019) 1080p AMZN WEB-DL 6CH 2.2GB ; Hellboy (2019) 1080p WEB-DL 6CH 2GB ; Hellboy (2019) 720p WEB-DL

21

950MB ; Hellboy (2019) 720p HC HDRip 950MB available to users in Hawaii such as DOES 1-35, the United States and the entire World to download from the MKVCage website and other notorious movie piracy sites such as ETTV and 1337x.

91.     Defendant     Faizan     uploaded     the     file "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" to the website ibit.uno of 1337 in early July of 2019 where the Torrent File can be downloaded.  Defendant Faizan used his profile "mkvcage" when uploading the file in order to maintain brand awareness of the quality of his torrent files.



92.     Defendant Faizan did not and does not have a license from Plaintiff to distribute copies of Plaintiff's Work.

93.     As of Sept. 6, 2019 and the date of the infringements, Defendant Faizan

does not have a DMCA agent as required by the DMCA to assert safe harbor.

Search the DMCA Designated Agent Directory

| | Search |
| --- | --- |
| mkvcage | |

☐ Include Terminated Service Provider Designations

**Search Results**

Show 10 ▼ entries

| Service Provider ▲ | Matching Alternate Names | Status |
| --- | --- | --- |
| | No Service Provider found for your search | |

Showing 0 to 0 of 0 entries                                                                 Previous    Next

### E. Defendant Faizan induces infringements of the Work

94.    Users of the Defendant Faizan's interactive websites such as DOES 1-35 use the websites for their intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiff's Copyrighted Work.

95.    Defendant Faizan promotes his websites for overwhelmingly, if not exclusively, infringing purposes, and that is how the users use the websites.

96.    The commercial value of Defendant Faizan's websites depend on high-volume use of unauthorized content through the websites. Defendant Faizan promises his users reliable and convenient access to all the content they can watch and users visit the websites based on Defendant Faizan's apparent success in delivering infringing content to his customers.

### F. Defendant Faizan misrepresents the legality of the torrent files he

20-018B  19cv487

***distributes.***

97.    Defendant Faizan promotes and/or advertises his MKVCAGE website commercially in interstate commerce.

98.    Defendant Faizan has distributed torrent files of the Work in interstate commerce from his MKVCAGE website.

99.    Defendant Faizan's website includes misleading statements and/or false descriptions that misrepresent the nature, characteristics, qualities of the torrent files he distributes.

100.    Particularly, Defendant Faizan's statements that the torrent files can be used to watch Plaintiff's Work misrepresents the illegal nature of the torrent files he distributes.

101.    Particularly, Defendant Faizan's omission that using the torrent files he distributes as promoted would subject the user to liability for copyright infringement misrepresents the illegal nature of his torrent files.

102.    Defendant Faizan advertises, promotes, markets and distributes torrent files on his MKVCAGE website for the purpose of watching free movies.

103.    Defendant Faizan advertised, promoted, marketed and distributed torrent files on the social media website FACEBOOK under the username MKCAGE for the purpose of watching free movies until approximately September of 2019.

24

20-018B  19cv487

104.   Defendant Faizan advertises, promotes, markets and distributes torrent files on the social media website REDDIT for the purpose of watching free movies.

105.   Defendant Faizan advertises, promotes, markets and distributes torrent files on the social media website TWITTER under the handle @Mkvcage for the purpose of watching free movies.

106.   Defendant Faizan advertises, promotes, markets and distributes torrent files on the social media website INSTAGRAM under the handle @Mkvcage for the purpose of watching free movies.



107.   Accordingly, Defendant has made and distributed in interstate commerce and in this District, commercial advertising or promotions that contains false or misleading representations of fact.

108.   Defendant Faizan has not obtained a license from Plaintiff or, upon information or belief, any Copyright holders to publicly perform or distribute their

25

motion pictures.

109.   Defendant Faizan does not mention the illegality of the torrent files in his promotional language of his MKVCAGE website.

110.   Defendant Faizan has gone to great lengths to conceal himself from the public, including by using a privacy service to conceal his contact information in connection with registering and hosting his websites.

111.   Consumers are likely to be misled and deceived into believing the torrent files of Defendant Faizan can be legally used for viewing Copyrighted motion pictures by the promotional language on Defendant Faizan's MKVCAGE website.

112.   Defendant Faizan's false and misleading promotions of his torrent files are designed to entice consumers to use Defendant Faizan's MKVCAGE website for viewing motion pictures rather than retailers, distributors or streaming services licensed by Plaintiff.

113.   Because Defendant Faizan does not pay for a license to distribute or copy any motion pictures, he can distribute the torrent files for nothing while profiting from advertisements on his websites and donations.   In this way, Defendant Faizan entices consumers who would otherwise pay to own and/or watch Plaintiff's Works on a legitimate platform.   In doing so, Defendant Faizan wrongfully misleads and deceives consumers into believing that they are using a

legitimate platform to watch and/or copy Plaintiff's Works, when in fact consumers are putting themselves at risk for criminal and civil penalties for Copyright Infringement.

114.   Defendant benefits financially from the infringement of the Works by the Hawaii users of his torrent files.

115.   Plaintiff is informed and believes that Defendant Faizan's wrongful conduct has resulted in increased traffic to his websites while hindering the sale of Plaintiff's Work through legitimate distribution channels.   Plaintiff has sustained and will sustain damages as a result of Defendant Faizan's wrongful conduct.

## V. FIRST CLAIM FOR RELIEF
### (Intentional Inducement)

116.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

117.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

118.   Defendant Faizan had actual knowledge of third parties' infringement of Plaintiff's exclusive rights under the Copyright Act.

119.    Defendant Faizan intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly distribute copies of Copyrighted Works.

20-018B  19cv487

120.   As intended and encouraged by Defendant Faizan, his websites provide torrent files that connect users to Torrent sources and/or sites that deliver copies of Plaintiff's Copyrighted Work.   The operators of these Torrent sources directly infringe Plaintiff's exclusive rights by providing unauthorized copies of the works to the public, including to users of Defendant Faizan's websites.

121.   Once the user of Defendant Faizan's websites have obtained a complete copy of the Plaintiff's Copyrighted Works, that particular user also becomes another Torrent source that delivers copies of Plaintiff's Copyrighted Work.

122.   Defendant Faizan induces the aforementioned acts of infringement by supplying the torrent file that facilitates, enables, and creates direct links between their users and the infringing Torrent source, and by actively inducing, encouraging and promoting the use of his websites for blatant copyright infringement.

123.   Defendant Faizan's intentional inducement of the infringement of Plaintiff's rights in its Copyrighted Work constitutes a separate and distinct act of infringement.

124.   Defendant Faizan's inducement of the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

125.   Defendant Faizan's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

28

## VI. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Material Contribution)

126.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

127.   Defendant Faizan had actual or constructive knowledge of infringement of Plaintiff's exclusive rights under the Copyright Act.  Defendant Faizan knowingly and materially contributes to such infringing activity.

128.   Defendant Faizan knowingly and materially contributes to the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to distribute the Work. Defendant Faizan designs and promotes his websites to provide torrent files that connect customers to unauthorized online torrent sources to download copies of Plaintiff's Copyrighted Work.  The operators of these torrent sources directly infringe Plaintiff's distribution rights by providing copies of the Work to the public, including to website users. The operators, or others operating in concert with them, control the facilities and equipment used to store and deliver copies of the content, and they actively and directly cause the content to be distributed when users run the torrent file obtained from the website.

129.   Defendant Faizan knowingly and materially contributes to the aforementioned acts of infringement by supplying the website that facilitates,

encourages, enables, and creates direct links between website users and infringing operators of the Torrent services, and by actively encouraging, promoting, and contributing to the use of the website for blatant copyright infringement.

130. Defendant Faizan's knowing and material contribution to the infringement of Plaintiff's rights in the Copyrighted Work constitutes a separate and distinct act of infringement.

131. Defendant Faizan's knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

132. As a direct and proximate result of the infringement to which Defendant Faizan knowingly and materially contributes, Plaintiff is entitled to damages of at least $270,902.58 and Defendant Faizan's profits in amounts to be proven at trial.

133. Defendant Faizan obtained a direct financial interest, financial advantage, and/or economic consideration from the infringements in Hawaii as a result of his infringing actions in the United States.

134. Defendant Faizan's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

## VII. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

135. Plaintiff re-alleges and incorporates by reference the allegations

30

contained in each of the foregoing paragraphs.

136.  By participating in the BitTorrent swarms with others such as DOES 1-35, Defendant Faizan induced, caused or materially contributed to the infringing conduct of others.

137.  Plaintiff did not authorize, permit, or provide consent to the Defendant Faizan inducing, causing, or materially contributing to the infringing conduct of others.

138.  Defendant Faizan knew or should have known that the other BitTorrent users in a swarm with him were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.  Indeed, Defendant Faizan directly participated in and therefore materially contributed to others' infringing activities.

139.  The Defendant Faizan's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

140.  By engaging in the contributory infringement alleged in this Complaint, the Defendant Faizan deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant's

31

misconduct therefore offends public policy.

141.   The Plaintiff has suffered damages of $270,902.58 in the United States that were proximately caused by the Defendant's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. FOURTH CLAIM FOR RELIEF
### (Direct Copyright Infringement)

142.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

143.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

144.   Defendant Faizan copied the constituent elements of the Work when creating the torrent files.

145.   Plaintiff did not authorize, permit, or provide consent to Defendant to copy, reproduce, redistribute, perform, or display their Works.

146.   As a result of the foregoing, Defendant Faizan violated the Plaintiff's exclusive right to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

147.   Defendant's infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

148.   The Plaintiff has suffered damages that were proximately caused by

32

the Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter a permanent injunction enjoining Defendant from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that, Cloudflare and any other service provider cease providing service for the websites: (i) mkvcage.com; and (ii) any mirror websites in concert with mkvcage.com such as, but not limited to mkvcage.ws and mkvcage.cc, immediately cease said service;

(C) that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any Internet search engines, ISP, Web hosts, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendant Faizan engages in the aforementioned infringements;

(D) award the Plaintiff's actual damages of $270,902.58 and Defendant's profits in such amount as may be found; alternatively, at Plaintiff's election, for

20-018B  19cv487

maximum statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, January 23, 2020.


CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
HB Productions, Inc.

20-018B  19cv487