CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
HB Productions, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HB Productions, Inc., | ) | **Case No.: 1:19-cv-487-LEK-KJM** |
| | ) | **(Copyright)** |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | OBJECTION |
| Muhammad Faizan. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF OBJECTION**

I.  **FACTUAL BACKGROUND**

Plaintiff HB Productions, Inc. ("Plaintiff") filed the First Amended Complaint [Doc. #40] ("FAC") against Defendant Muhammad Faizan ("Defendant") on Feb. 14, 2020. Plaintiff alleged in the FAC that Defendant was liable for direct and contributory copyright infringement and intentional inducement for distributing various illicit file copies of Plaintiff's motion picture *Hellboy* from his now defunct

1

websites that operated under the name "MKVCAGE".  *See* FAC at ¶¶9, 38.  Particularly, Plaintiff made the verified allegation that Defendant's distribution of illicit copies of the motion picture under the file names: (1) "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" via the Unique Hash Number 0550544E834856FC1F012A567388F0307CD8A61A; and (2) "Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG" via the Unique Hash Number 18031E80B3360664B3641E1B7952172740AD5A63 had resulted in over 105,043 infringements worldwide as of Dec. 12, 2019. *See* Id. at ¶¶83-84, Decl. of Arheidt [Doc. #40-7] at ¶¶8-9.  Besides these two files, Defendant further copied Plaintiff's Work and distributed it via other files such as: (3) Hellboy (2019) 720p BRRip HEVC 750MB; (4) Hellboy (2019) 1080p BRRip 6CH 2.3GB; (5) Hellboy (2019) 720p BRRip 1.1GB; (6) Hellboy (2019) 1080p AMZN WEB-DL 6CH 2.2GB; (7) Hellboy (2019) 1080p WEB-DL 6CH 2GB; and (8) Hellboy (2019) 720p WEB-DL. *See* Decl. of Stephanie Kessner [Doc. #40-5] at ¶10, FAC at ¶90.

Defendant went about his distribution by first directly copying Plaintiff's motion picture from Blu-ray discs and legitimate streaming sources to create illegitimate high quality file copies (including Blu-ray) of the Work. Id. at ¶¶38-40.  He then created torrent files for his illegitimate file copies and placed them on his websites mkvcage.fun and mkvcage.com and other websites such as ibit.uno to be available for download freely anywhere in the World.  Id. at ¶¶90-91.  He seeded

file copies of the motion picture on notorious piracy platforms such as 1337x and ETTV so that anyone who wished to make a copy could via various swarms using the bittorrent protocol. Id at ¶¶86, 89-90.  When notified of this lawsuit, Defendant double downed on his piracy activities by creating the website mkvcage.nl jointly with 1337 Services, LLC.  Id at ¶44.

**II.     PROCEDURAL BACKGROUND**

The procedural background is described in pgs. 2-3 of the Recommendation. The Clerk entered default against Defendant twice for failing to answer the Complaint and the FAC.  [Docs. ##24, 43].   Plaintiff withdrew its first Rule 55(b)(1) Motion for Clerk to Enter Default Judgment on March 4, 2020 [Doc. #44] on March 25, 2020 [Doc. #47], and filed a second Rule 55(b)(1) Motion for Clerk to Enter Default Judgment ("Motion") on March 27, 2020 [Doc. #48] requesting the clerk to enter an award of damages for the sum certain of $270,224.90.  The Motion included an affidavit of counsel [Doc. #48-1] that clearly detailed the two steps for the calculation of the sum certain reshown below:

    5.    Adding the United States instances of infringement of the 61A file (8555) to the instances of infringements of the A63 file (8387) amounts to 16,942.

$$8555+8387=16,942$$

    6.    The instances of infringement (16,942) was multiplied by $15.95 (the price of a Blue Ray copy of the motion picture *See* FAC at ¶51) to amount to $270,224.90.

$$16,942*\$15.95=\$270,224.90$$

The two steps include: (1) the addition of the number of confirmed instances of two of Defendant's infringing files; and (2) multiplying the sum by the retail price minus taxes and fees ($15.95).

Despite this clear explanation of the basis for calculation of the sum certain, on April 23, 2020 Magistrate Judge Mansfield ordered supplemental briefing to explain the Motion's basis for using a price for a retail store in Kailua-Kona, Hawaii as the value of damage [Doc. #50]. Plaintiff provided a supplemental brief on April 24, 2020 pointing out *inter alia* that the price of the motion picture in the Motion was reflective of the nationwide price and less than the price in Pakistan. *See* [Doc. #51-1] at ¶¶2-6. On May 18, 2020, Magistrate Judge Mansfield issued the Recommendation denying Plaintiffs' Motion. [Doc. #52].

### III.  LEGAL STANDARD

When a party objects to a magistrate judge's findings or recommendations, the district court must review *de novo* those portions to which the objections are

made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) ("[T]he district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise.").

## IV. ARGUMENT

Plaintiff respectfully requests that the Court review the Recommendation and make a *de novo* determination whether Plaintiff's requested amount is "a sum certain or a sum that can be made certain by computation…" as called for in Fed. R. Civ. P. 55(b)(1).

**A.    Plaintiff's requested amount of $270,902.58 is for a sum that can be made certain by computation.**

Rule 55(b)(1) includes the alternative language of "a sum certain" or "a sum that can be made certain by computation." Nonetheless, the Recommendation did not discuss whether the requested amount was for a sum that can be made certain by computation. Rather, the Recommendation only discussed whether the requested amount was a sum certain. *See* Recommendation at pg. 6 ("…fail to persuade the Court that Plaintiff's claims are for a sum certain…"). However, as discussed below Plaintiff's requested amount of $270,902.58 is a sum that can be made certain by the

simplest of computation – namely the price to legitimately purchase a copy of the motion picture by the number of times Defendant distributed a similar illicit copy of the motion picture.

1. **Defendant is responsible for over 100,000 infringements of Plaintiff's motion picture worldwide.**

The allegations in the FAC are deemed true since Defendant has defaulted. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Accordingly, Plaintiff's verified allegation that Defendant is responsible for over 100,000 infringing instances of its motion picture worldwide including at least 16,942 instances of infringements in the United States is deemed true. *See* FAC at ¶¶83-84. The 16,942 number is step one of Plaintiff's computation of the sum.

2. **The use of a price of a Blue-ray disc of the motion picture in a Walmart store in Kailua-Kona, Hawaii was a fair representation of the price nationwide.**

The Recommendation questions that the price from a Walmart store in Kailua-Kona is a fair representation of the nationwide price. Recommendation at pg. 6. However, Plaintiff pointed out in the Supplemental Brief that the price of $15.95 was a fair representation for the nationwide price as of Jan. 22, 2020. [Doc. #51-1] at ¶2. In support of this assertion, Plaintiff showed evidence that the price of the motion picture in a Walmart store in Kailua-Kona as of the date of the Supplemental brief was the same as a price in Walmart store locations in five different regions in

the United States, although the price had dropped since the date of the FAC. Id. at ¶¶1-2. Moreover, the file names of Defendant's illicit copies ("HDRip" and "1080p") that he distributed over 100,000 infringements worldwide show that they were *Blue-ray* versions of the motion picture. Decl. of Arheidt [Doc. #40-7] at ¶¶8-9. Accordingly, the nationwide price for a Blu-ray copy of the motion picture is a fair indication of the price basis to use for step two in the computation.

The Recommendation further stated that because the price of the Blue-ray disc varies by vendor and date, that "doubt remains as to the amount Plaintiff is entitled to…" Recommendation at pg. 7. However, Plaintiff respectfully submits that the key time was the date of the FAC, which is after the two files were distributed more than 100,000 times.

3. **The computation of the requested sum of $270,902.58 is certain.**

Plaintiff's allegation that the retail price of a Blu-ray copy of the motion picture is $15.95 is deemed true. Accordingly, the calculation of 15.95 x 16,942 = $270,902.58 is as certain and straight forward calculation that can be done.

B. **Plaintiff's requested amount of $270,902.58 is for a sum certain.**

Contrary to the Recommendation, there can be no doubt that Plaintiff is entitled to the amount of $270,902.58.

1. **Plaintiff's requested sum is certain because no doubt remains.**

In determining whether a requested amount was a "sum certain", the Ninth Circuit applied the First Circuit test from *KPS & Assocs., Inc. v. Designs by FMC, Inc.* of "a claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 928-29 (9th Cir. 2004). However, even in *KPS*, as discussed in *Franchise Holding II*, the First Circuit rejected a claim as not a sum certain because the affidavits and complaint were internally inconsistent and did not set forth a claim capable of simple mathematic computation. *See Franchise Holding II* at 929 (citing *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 20 (1st Cir. 2003)). In comparison to the claim of *KPS*, Plaintiff has set forth a claim that is capable of simple mathematical calculation, each step of which is supported in the FAC and the declarations as discussed above.

The Recommendation cites the portion of the Oregon District Court decision in *Graham v. Forever Young Or.* which states, "…if the 'sum certain' cannot be calculated reasonably by simple computation, and other evidence is required, then the plaintiff must apply to the court for a default judgment pursuant to Rule 55(b)(2)." Recommendation at pg. 5 (citing *Graham v. Forever Young Or., LLC*, No. 03:13-CV-01962-HU, 2014 WL 3512498, at *1 (D. Or. July 14, 2014)). However, in *Graham* the Court noted that the "…documentary evidence upon which [the Plaintiff] relied is not present anywhere in the record." *Graham* at pg. 4. In the

8

present case, Plaintiff is relying on the number of instances of infringements in a retail price that are both in the record. Accordingly, *Graham* is not applicable to the present case.

Moreover, there can be no doubt that Plaintiff is entitled to the requested amount of **$270,224.90** because Plaintiff is *entitled to significantly more*. The over 100,000 infringements worldwide includes only two of the eight file names by which Defendant distributed Plaintiff's motion picture. *See* Decl. of Arheidt [Doc. #40-7] at ¶¶8-9, FAC at ¶¶83-84, Decl. of Stephanie Kessner [Doc. #40-5] at ¶10, FAC at ¶90. Moreover, Plaintiff limited its damage claim to only the 16,942 instances of infringements in the United States (16 percent of worldwide total). Thus, the actual damages Defendant caused Plaintiff by his infringing activity are a multitude greater than the **$270,224.90** requested.

**2. Defendant has failed to contest any of Plaintiff's assertions.**

In *Franchise Holding II* the defaulted defendant had asserted that "the claim was not for a "sum certain"". *Franchise Holding II* at 925. The District Court of Arizona and the Ninth Circuit rejected the Defendant's assertion. However, here the Defendant has not even challenged Plaintiff's claim as not being for a "sum certain" or "a sum certain or a sum that can be made certain by computation…" The Recommendation subjects Plaintiff's claim to an unnecessary level of proof not required by *Franchise Holding II* or *KPS & Assocs., Inc.*

9

## V. **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully request that the Court REVERSE the Recommendation and order the Clerk to Enter default judgment against Defendant and issue an award of damages in the amount of $270,224.90 and taxable costs of $4,410.98.

DATED: Kailua-Kona, Hawaii, May 22, 2020.

                        CULPEPPER IP, LLLC

                        /s/ Kerry S. Culpepper
                        Kerry S. Culpepper

                        Attorney for Plaintiff