CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com

Attorney for Plaintiff
HB Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HB Productions, Inc., | ) | **Case No.: 1:19-cv-487-JMS-KJM** |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | PLAINTIFF'S MOTION FOR |
| Muhammad Faizan, | ) | DEFAULT JUDGMENT AGAINST |
| | ) | DEFENDANT MUHAMMAD |
| Defendant. | ) | FAIZAN |
| | ) | |
| | ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT
<u>JUDGMENT AGAINST DEFENDANT MUHAMMAD FAIZAN</u>

**<u>Table of Contents:</u>**

Table of Authorities.................................................................................. 5

I.      Introduction ...................................................................................9

II.     Subject Matter Jurisdiction and Venue........................................ 11

III.    Personal Jurisdiction ................................................................... 11

        A.      The Court has Jurisdiction Pursuant to Fed. R. Civ. P. 4(k)(2), the so-called Federal Long-Arm Statute…………………………………………… 11

                1.      Plaintiff's Claims Against Defendant Arise under Federal Law………………...……………………………………………….. 12

                2.      Defendant has Sufficient Minimum Contacts with the US that the Maintenance of the Suit Does Not Offend Due Process…………………………. 12

                        a.      The Defendant Purposefully Directs His Activities toward the US………………………………………………………….. 14

                                i.      Intentional Act…………………………………… 15

                                ii.     Expressly Aimed at the Forum………………….. 16

                                iii.    Defendant Knew He was Causing Harm that was Likely to be Suffered in the US…………………………………………… 17

                        b.      Plaintiff's Claims Arise out of or Relates to the Defendant's Forum-Related Activities………………...……………………….. 18

c.    The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice……………..…………………………………………… 19

B.    Alternatively, Personal Jurisdiction over Defendant is Appropriate per HRS §§ 634-35…………………..…………………………………… 19

IV.    Defendant's Default Entered......................................................... 20

V.    Argument.................................................................................. 20

A.    Copyright Infringements have been Established .............................. 20

1.    Plaintiff has Established Ownership of the Copyright in the Work…………………………………………………………………... 21

2.    Defendant Copied Constituent Portions of the Work in Violation of Plaintiff's Exclusive Rights of Reproduction and Distribution……………….. 21

3.    Defendant Intentionally Induced Infringement of the Work from his MKVCAGE Websites…………………………………………………... 22

4.    Defendant Contributed to Infringement of the Work………… 23

B.    Default Judgment is Appropriate ....................................................... 23

1.    The Possibility of Prejudice to Plaintiff……………..……….. 24

2. & 3.    The Merits of Plaintiff's Substantive Claims and the Sufficiency of the FAC…………………..……………………………………... 25

4.    The Sum of Money at Stake in the Action…………………… 25

5.    The Possibility of a Dispute Concerning the Material Facts… 25

        6.      Whether the Default was Due to Excusable Neglect.............. 26

        7.      The Policy Considerations……………………………………… 27

VI.    Statutory Damages for Willful Copyright Infringement…........................ 27

VII.   Plaintiff is Entitled to Injunctive Relief ....................................................... 29

VIII.  Plaintiff is Entitled to Attorney's Fees and Costs........................................ 31

        A.      The Degree of Success in the Litigation………............................... 32

        B.      Deterrence……………………….................................................... 32

        C.      The Goals of the Copyright Act........................................................ 32

        D.      Objective Unreasonableness…......................................................... 32

        E.      Calculation of Attorney's Fees……………………………………... 33

IX.    Conclusion...................................................................................................... 35

**Table of Authorities:**

*Statutes and Rules*

United States Copyright Act, 17 U.S.C. §§ 101 et seq.........................................9, 11

17 U.S.C. § 410(c)...............................................................................21

17 U.S.C. §§ 501-506……………………………………………………18

17 U.S.C. § 502(a)………………………………………………....29

17 U.S.C. § 504(c)……………………………………………27, 28

17 U.S.C. § 505……………………………………………………..31

17 U.S.C. § 512(c)(3)(A)…………………………………………10

28 U.S.C. § 1331.............................................................................11

28 U.S.C. § 1338(a) ........................................................................11

28 U.S.C. § 1391(b) and (c).............................................................11

28 U.S.C. § 1400(a) .......................................................................11

Fed. R. Civ. P. 4(k)(2)...............................................................11, 12

Fed R. Civ. P. 5(b)(2)(C)……………………………….........20

Fed R. Civ. P. 55(a) ……………………………………................20

Fed. R. Civ. P. 55(b)(2)…………………………………23, 26

HRS §§ 634-35…………………………..………………...19, 20

*Cases*

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 n.16 (S.D.N.Y. 2009)……………………………………………………………………………...22

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)……………………………………………………………………… 14, 19

*Barranco v. 3D Sys. Corp.*, 6 F. Supp. 3d 1068, 1077 (D. Haw. 2014)…………... 19

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017)………………………………………………… 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)…………………… 13

*Calder v. Jones*, 465 U.S. 783 (1984)………………………………………… 14

*City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992)……………………………………………………………………... 34

*Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013)…………………………………………………………………………... 22

*Columbia Pictures Industries, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)………………………………………………… 27

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015)…………………………………………………………………………... 30

*Cowan v. First Ins. Co. of Haw.*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980)………………………………………………………………………….. 19

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)……………………………… 13

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)……………......... 30

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986)……………………….. 24

*Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)………………………………………… 21, 32

*Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)……………… 33, 34

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011)…………………………………………………………………………... 30

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)………………………... 31

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018)…………………………………………………………………………………... 14

*Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989)……… 23

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)……. 31

*Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007)…………... 14

*Hawaii Forest & Trial Ltd. v. Davey*, 556 F.Supp.2d 1162, 1168 (D. Haw. 2008)………………………………………………………………….................. 19

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)………………………………… 33

*Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007)……………………………………………………………………………… 14, 16

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)………………………………………………………….. 12

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)……………… 33

*Lions Gate Films Inc. v. Does*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, at 3, 6 (C.D. Cal. Aug. 8, 2014)………………………………………………... 29

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)…………………………………………………………………………... 19

*ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 18 (D. Haw. Oct. 19, 2017)………………………………………………………... 34

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37, 125 S. Ct. 2764, 2776 (2005)……………………………… …………………………... 22

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996)…………... 34

*Morrill v. Scott Financial Corporation,* 873 F.3d 1136, 1142 (9th Cir. 2017)...15, 16

*Parr v. Club Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012)……………………………………………………………………………... 24

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)……………… 12

*Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985)………… 27

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987)……………………………………………………………………….. 34

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)……………………………………………………………………………... 24

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)………….. 31

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001)………………………………………………………………………… 26

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987)……. 23, 25

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000)……… 21

*VHT, Inc. v. Zillow Grp., Inc.,* 918 F.3d 723, 745 (9th Cir. 2019)……………….. 23

*Walden v. Fiore*, 571 U.S. 277, 284 (2014)……………………………….. 13, 16

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673-74 (9th Cir. 2012)……………………………………………………………………………... 15

## I.    <u>INTRODUCTION</u>

Plaintiff HB Productions, Inc. ("Plaintiff") is the owner of the copyright for the motion picture *Hellboy* ("Work").   *See* Exhibit "2" [Doc. #40-2] to the First Amended Complaint ("FAC") [Doc. #40].  Plaintiff is currently selling the Work in the United States ("US") including in Hawaii.  *See* FAC at ¶51. Plaintiff filed this action against Defendant Muhammad Faizan ("Defendant") on Feb. 14, 2020 alleging that Defendant is liable for direct infringement, contributory copyright infringement and intentional inducement in violation of the US Copyright Act, 17 U.S.C. 101 §§ et. for making file copies and torrent files for the Work, distributing them from websites that operated under the name "MKVCAGE" and seeding copies of the Work via the BitTorrent Protocol.  *See* FAC at ¶¶9, 38.  Particularly, Plaintiff made the verified allegation that Defendant's distribution of illicit copies of the motion picture under two particular file names has resulted in over 105,043 infringements worldwide as of Dec. 12, 2019. *See* Id. at ¶¶83-84, Decl. of Arheidt [Doc. #40-7] at ¶¶8-9.  Defendant further copied Plaintiff's Work and distributed it via six other files. *See* Decl. of Kessner [Doc. #40-5] at ¶10, FAC at ¶90.

Defendant went about his distribution by first copying Plaintiff's motion picture from Blu-ray discs and legitimate streaming sources to create illegitimate high quality copies of the Work by a process referred to as "ripping". Id. at ¶¶38-40.  He then created torrent files for his illegitimate copies and placed them on his

MKVCAGE websites and other websites such as ibit.uno to be available for download freely anywhere. Id. at ¶¶39, 90-91. He seeded file copies of the motion picture on notorious piracy platforms such as 1337x and ETTV so that anyone could make a copy via the BitTorrent protocol. Id at ¶¶86, 89-90.

When Plaintiff became aware that Defendant was distributing Plaintiff's Work from the MKVCAGE websites, Plaintiff's counsel served a notice pursuant to 17 U.S.C. § 512(c)(3)(A) of the Digital Millennium Copyright Act ("DMCA") upon Defendant's domain registrar and host provider Namecheap, Inc. ("Namecheap") and nameserver provider CloudFlare, Inc. ("CloudFlare"). *See* FAC at ¶42, Exhibits "1" and "2". CloudFlare and Namecheap notified Defendant of Plaintiff's notice. *See* Decl. of Counsel at ¶¶3-5. Namecheap and CloudFlare subsequently provided identification information to Plaintiff's counsel. *See* FAC at ¶42, Decl. of Counsel at ¶2. Defendant did not provide his real name or email address to CloudFlare; however, he did provide the correct name and email address (but incomplete physical address) to Namecheap. *See* Id. at ¶¶6-8, Exhibit 4 [Doc. #40-4] to the FAC.

On September 5, 2019, Plaintiff's counsel sent a notice to Defendant via email requesting him to stop promoting and distributing torrent files for the Work and pay a small portion of Plaintiff's damages. *See*, Exhibit "4", Dec. of Counsel at ¶9. Defendant agreed to shut down his websites but refused to pay any damages. Id. at

¶10-16. Accordingly, Plaintiff filed the Complaint on September 9, 2019. *See* [Doc. #1]. Defendant was served a copy of the Complaint, Summons and Scheduling Order on Oct. 4, 2019. *See* Supplemental Decl. of Muhammad Waqar at ¶3 [Doc. #17]. Shortly thereafter, Defendant renewed his piracy activities by creating the website mkvcage.nl jointly with 1337 Services, LLC (an entity organized under laws of the island of Nevis in West Indies). FAC at ¶44. Defendant also continued to seed torrent files on 1337x. Decl. of Counsel at ¶¶6-7. Defendant only shutdown this website after Plaintiff's counsel sent a notice to 1337's registered agent on December 11, 2019. *See* Decl. of Counsel at ¶20.

Prior to the present motion, Plaintiff's counsel sent an email communication on July 18, 2020 to Defendant including a copy of the entry of default as an attachment and stating Plaintiff's intention to file the present motion for default judgment. Decl. of Counsel at ¶5.

## II.   **SUBJECT MATTER JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

## III.   **PERSONAL JURISDICTION**

A.   The Court has Jurisdiction Pursuant to Fed. R. Civ. P. 4(k)(2), the so-called Federal Long-Arm Statute

11

1.  Plaintiff's Claims Against Defendant Arise under Federal Law

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws." Rule 4(k)(2) imposes three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted). Defendant is a resident of Pakistan, and thus not subject to the personal jurisdiction of any state court of general jurisdiction.  *See* FAC at ¶37.  Plaintiff's claims for Inducement, Direct Infringement and Contributory Copyright Infringement against Defendant arise under Federal Law.

2.  Defendant has Sufficient Minimum Contacts with the US that the Maintenance of the Suit Does Not Offend Due Process

Due Process requires that a defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted) (internal quotations omitted).  A court has specific jurisdiction over a

nonresident defendant when it "purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017) (alteration in original).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Id.*  Plaintiff does not assert general jurisdiction.   The specific jurisdiction inquiry focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. This requires the relationship to "arise out of contacts that the 'defendant *himself* creates with the forum state" and "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 284-85.

 To analyze specific jurisdiction, the Ninth Circuit has articulated a three-part test to evaluate the sufficiency of a defendant's minimum contacts within the forum:

(1) the defendant must either purposefully direct his activities toward the

forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal citations and quotations omitted).

In *Holland America Line v. Wärtsilä North Amer.*, the Ninth Circuit concluded that "[t]he the due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [Defendant] … and the forum state, we consider contacts with the nation as a whole." *Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007). Accordingly, Plaintiff will address the three-part test of *Axiom Foods, Inc.* with respect to the US as the forum.

a. *The Defendant Purposefully Directs His Activities Toward the US*

"A claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate." *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007).

The purposeful direction analysis has been equated with the "effects test" described in *Calder v. Jones*, 465 U.S. 783 (1984). *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). "Under the *Calder* effects test, purposeful direction exists when a defendant allegedly: (1) committed an

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state*." Id.* at 604 n.3 (citation and internal quotation marks omitted).

i.  Intentional Act

"An intentional act is one 'denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended.'" *Morrill v. Scott Financial Corporation,* 873 F.3d 1136, 1142 (9th Cir. 2017) (some alterations in *Morrill*) (quoting *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673-74 (9th Cir. 2012)).

The Defendant intentionally registered his domain with the US company (Arizona) Namecheap.  FAC at ¶24.  The Defendant intentionally uses Namecheap and US company (California) CloudFlare for the hosting and nameserver of his websites.  Id.  Because Defendant intentionally placed the torrent files for copying the Work and the file copies of the Work on his website that was hosted on a US company, Defendant intentionally placed the torrent files in the US (on the servers of Cloudflare and Namecheap).

Defendant intentionally used the US social media platforms of Facebook, Reddit and Twitter (all in California) to promote his website and availability of new content.  Id. at ¶¶24, 103-104.  Defendant intentionally uses the US company (California) PayPal to make payments to Namecheap.  Id. at ¶24.  Defendant

intentionally uses email service of the US company Google for email communications. Id. The United States is the second highest country from which traffic to his website originates. *See* FAC at ¶123.

ii. Expressly Aimed at the Forum

The two factors that Courts have considered when determining whether an action is expressly aimed at the forum are: (1) whether the relationship arises out of contacts that the defendant himself creates with the forum State; (2) Defendants contacts with the forum State rather than defendant's contacts with persons who reside there. *See Morrill,* 873 F.3d at 1143 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014)).

The Defendant takes advantage of provisions of US law on his website – namely the safe harbor protections from liability of the DMCA. *See* FAC at ¶25.

When registering his domain with the Registrar Namecheap and agreeing to the hosting service, Defendant agreed to jurisdiction and laws of Arizona. Decl. of Counsel. at ¶¶23-24. When registering for service with Cloudflare, Defendant agreed to jurisdiction and laws of California. Id. at ¶25. Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound. *See Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted). Although these agreements provided for Courts in Arizona and California,

the focus on the test of the Federal Long Arm statute is the United States as a whole as the forum.  Moreover, these contacts are not the type of continuous contacts such as a place of incorporation and principal place of business that would constitute general jurisdiction with one of these states, thereby ruling out the applicability of the Federal Long Arm statute.

As alleged in the FAC, Defendant purposely directs his electronic activity into the United States and targets and attract a substantial number of users in the United States and, more particularly, Hawaii.  *See* FAC at ¶17.  Defendant's website generates cookies and trackers to users so that advertisements can be tailored to the user location.  *See* Id. at ¶¶11-12, Decl. of Kessner at ¶11.

As alleged in the FAC, by seeding the torrent files for the Work on, for example, 1337x, Defendant sent at least pieces if not all of the Work to over 16,000 IP addresses in the United States, including 35 in Hawaii.   Decl. of Counsel at ¶27.

iii.  Defendant Knew He was Causing Harm that was Likely to be Suffered in the US

Defendant *knew* he was causing harm in the US when operating his MKVCAGE websites.   As stated above, Defendant registered and hosted his websites in the US with US companies.  Defendant's website included a list of the Internet Movie Database ("IMDB") top 250 (primarily US) movies with a download link for downloading each movie.  *See* FAC at ¶30.   Thus, Defendant knew he was

causing harm to the US companies that produced these movies.  Defendant received

notifications from CloudFlare and Namecheap concerning Plaintiff's DMCA

notices.  *See* Decl. of Counsel at ¶¶3-5.  In response, Defendant moved his website

from mkvcage.fun domain to the mkvcage.com domain and continued to host the

torrent files for downloading Plaintiff's Work.  FAC at ¶43.  Plaintiff's counsel

communicated directly with Defendant and informed him of the harm he was

causing in the United States.

> Ripping streams and Blu-ray discs to make copies of our clients' motion pictures and torrent files and promoting and/or distributing torrent files for the purposes of infringing copyright protected material constitutes contributory copyright infringement, which is a violation of the Federal copyright statute, found at 17 U.S.C. § § 501-506.
> …
> Please appreciate that our clients invested significant time, effort and money in making and marketing their motion pictures. Accordingly, they request financial compensation for the damages caused by piracy websites such as the yours.

*See* Exhibit "4".

Even after Defendant took down his website in response to the above notice,

he once again renewed his piracy activities under the website mkvcage.nl.  *See* FAC

at ¶44.

> b. *Plaintiff's Claims Arise out of or Relates to the Defendant's Forum-Related Activities*

Plaintiff's claims arise from Defendant's website that he registered with a US

company (Namecheap), promoted via US social media platforms (Twitter, Facebook

and Reddit), hosted via the US companies (Cloudflare and Namecheap), and paid for from an account of the US company (PayPal). *See* FAC at ¶24, Decl. of Counsel at ¶¶2, 9.

       *c. The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice*

       It is not Plaintiff's burden to address this prong. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). However, Plaintiff respectfully submits that since Defendant has already consented to be haled into US courts in California and Arizona, there is no further burden for Defendant to be haled into a Court in Hawaii.

**B. Alternatively, Personal Jurisdiction over Defendant is Appropriate per HRS §§ 634-35**

       Because Hawaii's long-arm jurisdictional statute HRS §§ 634-35 is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See Hawaii Forest & Trial Ltd. v. Davey*, 556 F.Supp.2d 1162, 1168 (D. Haw. 2008); *Barranco v. 3D Sys. Corp.*, 6 F. Supp. 3d 1068, 1077 (D. Haw. 2014) (citing *Cowan v. First Ins. Co. of Haw.*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980)). Plaintiff respectfully submits that applying the three part *Axiom Foods* test again with respect to Defendant's contacts with Hawaii only alternatively supports personal jurisdiction because

19

Defendant committed the tortious act of copyright infringement within Hawaii as defined by HRS §§ 634-35(a)(2) by sending at least a piece if not all of the Work to the 35 IP addresses in Hawaii.  *See* FAC at ¶6-7.  Because IP addresses include geographic information, Defendant knew that he was sending the pieces to Hawaii and therefore expressly aimed for Hawaii when sending the file pieces.  *See* Id. at ¶8., Decl. of Counsel at ¶26.  Moreover, Plaintiff's claims arise out of or relates to the Defendant's distribution of pieces of the file to the 35 IP addresses in Hawaii in violation of Plaintiff's exclusive right to reproduce and distribute the Work.

## IV.    **DEFENDANT'S DEFAULT ENTERED**

Defendant was personally served the Complaint on Oct. 4, 2019 per the Hague Convention.   *See* Supplemental Decl. of Wagar at ¶3 [Doc. #17], Affidavit of Muhammad Abeed Atiff [Doc. #14-1].  Defendant Muhammad Faizan was served a copy of the FAC on Feb. 14, 2020 per Fed R. Civ. P. 5(b)(2)(C).  *See* Certificate of Service [Doc. #41].  When Defendant failed to appear, plead, or otherwise defend, Plaintiff filed a Rule 55(a) request for the entry of default on March 2, 2020 [Doc. # 26] which was granted by the Court [Doc. #43].

## V.    **ARGUMENT**

### A.  Copyright Infringements have been Established

A Plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work

that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

    1.  Plaintiff has Established Ownership of the Copyright in the Work

In the FAC, Plaintiff alleged that it owns the copyright for the Work and included the Copyright Registrations numbers issued by the Register of Copyrights. FAC at ¶16, Exhibit "1" [Doc. #40-1] of the FAC. "Registration is *prima facie* evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000)(citing 17 U.S.C. § 410(c) (1994)).

    2.  Defendant Copied Constituent Portions of the Work in Violation of Plaintiff's Exclusive Rights of Reproduction and Distribution

As alleged in the FAC, Defendant created copies Work from Blu-ray and legal streaming services and placed them on his MKVCAGE websites. FAC at ¶40. Defendant Faizan seeded copies of the work from computing devices under his control under his username to other notorious movie piracy sites such as ETTV and 1337x. Id. at ¶86. The website 1337x.tw receives nameserver service from Cloudflare and is hosted on servers in Texas since April 28, 2018. *See* Decl. of Counsel at ¶27. Thus, Defendant reproduced the Work in the US when he placed a copy on his website and seeded it on 1337x.tw. Plaintiff's investigator Daniel Arheidt confirmed that two torrent files had been used to copy the motion picture by over 16,000 IP addresses in the United States and that these two files constituted

copies of the motion picture. *See* Decl. of Arheidt at ¶7, FAC at ¶¶19-21, 81-82. That suffices to establish underlying direct infringement. *See, e.g., Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 n.16 (S.D.N.Y. 2009) ("Courts routinely base findings of infringements on the actions of plaintiffs' investigators.").

3.   Defendant Intentionally Induced Infringement of the Work from his MKVCAGE Websites.

A plaintiff establishes inducement liability by showing: "(1) distribution of a device or product [by defendant], (2) acts of infringement [by third parties], (3) an object [of the defendant] of promoting [the device's or product's] use to infringe copyright, and (4) causation." *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37, 125 S. Ct. 2764, 2776 (2005)).   All four elements are easily met here.   (1) Defendant distributed torrent files for copying the Work from his websites.   FAC at ¶¶38-39. (2) Third parties at over 16,000 IP addresses (including 35 in Hawaii) infringed the Work using Defendants' torrent files. Id. at ¶18. (3) Defendant promoted his torrent files for copying the Work at this MKVCAGE websites. Id at ¶31. (4) Defendant's placing of the torrent files on his websites and seeding the files were the proximate cause of the infringements.   Id at ¶125.

4.  Defendant Contributed to Infringements of the Work

Contributory liability requires that a party (1) has knowledge of another's infringement and (2) either (a) material contributes to or (b) induces that infringement.  *VHT, Inc. v. Zillow Grp., Inc.,* 918 F.3d 723, 745 (9th Cir. 2019) Defendant knowingly and materially contributed to the acts of infringement by supplying the MKVCAGE website that distributed the torrent files, and by actively encouraging, promoting, and contributing to the use of the websites for blatant copyright infringement.  FAC at ¶129.  Moreover, by participating in the BitTorrent swarms with others such as the 16,000 IP addresses by his initial seeding of the file, Defendant materially contributed to the infringing conduct of others.  FAC at ¶136.

B.  Default Judgment is Appropriate

Because Defendant has chosen to default instead of defending, he has admitted the truth of the allegations asserted in the Complaint.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").  While the court may conduct a hearing to determine damages, *See* Fed. R. Civ. P. 55(b)(2)(B), the court can rely on evidence submitted by Plaintiff.  *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

Plaintiff respectfully requests that this Court enter a default judgment against Defendant.  When evaluating whether to grant a judgment by default, courts consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012).  All of these factors support the conclusion that Plaintiffs are entitled to a default judgment.

1.  The Possibility of Prejudice to Plaintiff

Plaintiff would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiff without any remedy against Defendant, who has failed to even show up and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Despite the fact that Defendant doesn't deny that Plaintiff is entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against him, Plaintiff would be left unable to seek damages or even to prevent Defendant from brazenly continuing to induce and contribute to infringement of Plaintiff's copyright by promoting and

24

distributing the torrent files for the Work. Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

2. & 3. The Merits of Plaintiff's Substantive Claims and the Sufficiency of the FAC

As discussed above, Plaintiff has adequately pled its claims for direct infringement, contributory copyright infringement and intentional inducement against Defendant.  Further, Defendant has no safe harbor from liability because: (1) he placed the torrent files on his MKVCAGE websites and the ibit.uno website himself; and (2) he did not have a DMCA agent.  *See* FAC at ¶¶90-93.

4.   The Sum of Money at Stake in the Action

Plaintiff is seeking an award of statutory damages of $150,000 for Defendant's willful contributory infringements for the Work.  The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

5.   The Possibility of a Dispute Concerning the Material Facts

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendant's default, this Court must take the factual allegations asserted in the FAC as true. *See TeleVideo Sys., Inc. v. Heidenthal, supra*, 826 F.2d at 917–18.  Moreover, Defendant has not made any attempt to contest those allegations (or

for that matter, even bothered to appear).  Finally, Defendant has admitted to being the operator of the website.  *See* Decl. of Counsel at ¶¶10-16.

6.   Whether the Default was Due to Excusable Neglect

Defendant's default is not the result of excusable neglect. As discussed above, Defendant was served a copy of the FAC on Feb. 14, 2020.  Defendant conceded that he was the operator of the website but refused to pay any damages in email communications with Plaintiff's counsel.   *See* Decl. of Counsel at ¶¶10-16. Plaintiff's counsel sent Defendant a copy of the Entry of Default. Id at ¶22.  Despite not being required to by Rule 55(b)(2) of the *Federal Rules of Civil Procedure*, Plaintiff has sent a copy of this Motion to Defendant's email address (airmail to Pakistan is not available not due to COVID-19 restrictions).  Id .

Thus, on several occasions, Defendant has been provided with notice of this proceeding and the risks for failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7.   The Policy Considerations

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole and have no mechanism to prevent further inducements and contributory infringements of its Work by this same Defendant.  In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendant.

## VI.   STATUTORY   DAMAGES   FOR   WILLFUL   COPYRIGHT INFRINGEMENT

Plaintiff elects to receive statutory damages of $150,000 for Defendant's willful direct infringement, inducements and contributions to infringements of the Work.  Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no

27

more than $150,000.00 per work for Defendant's violations of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2).

Defendant's conduct is willful.  FAC at ¶¶124, 131.  Not only did Defendant himself place the torrent files on his MKVCAGE websites and the ibit.uno website after ripping copies from legitimate sources, he also seeded copies of the Work.  Id. at ¶¶86, 90-91.  When he received notice of infringement from Cloudflare and Namecheap, he moved his website to mkvcage.com and continued to distribute torrent files for copying the Work. Id. at ¶43.  When he received notification from Plaintiff's counsel, he created a new website using the privacy services of 1337 Services, LLC to conceal his identity.  Id. at ¶44.

17 U.S.C. §504(c)(3)(A) provides that "it shall be a rebuttable presumption that the infringement was committed willfully…if the violator…knowingly provided…materially false contact information to a … domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement."  Such is the case here.  Defendant provided false information to Cloudflare when registering for his account for providing nameserver service for his account.  Defendant purposely left out the property number when registering for his account with Namecheap for registering his domain name.  *See* Decl. of Counsel at ¶¶8.

Defendant's willful conduct has resulted in over 105,043 infringements worldwide, thereby causing substantial damage to Plaintiff. FAC at ¶¶83-84. The damage is still significant when considering only the 16,942 instances of infringements in the US.

In *Lions Gate Films Inc. v. Does*, the Central District of California awarded $150,000 in statutory damages jointly against Defendants for willful infringement of the motion picture *Expendables 3* by distributing torrent files from the website limetorrents.com among other websites. *See Lions Gate Films Inc. v. Does*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, at 3, 6 (C.D. Cal. Aug. 8, 2014), Id. at Doc. 68 (attached as Exhibit "5"). Plaintiff requests a similar award in the present case.

## VII.   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

Plaintiff requests that the Court grant its request for injunctive relief, permanently barring Defendant from directly infringing, inducing and contributing to infringement of Plaintiff's copyright in the Work. The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.")

A Plaintiff is required to satisfy the following four-factor test to obtain a permanent injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015).

Despite being served the FAC for this litigation and communications with Plaintiff's counsel, Defendant continued to promote and distribute torrent files on the website mkvcage.nl. FAC at ¶44.

In copyright infringement cases, the Ninth Circuit requires a plaintiff to "demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).  Unless this Court grants an injunction, Defendant will likely continue to be the source for other torrent files that will be used by individuals in Hawaii, throughout the United States, and the world to reproduce Plaintiff's Work in violation of Plaintiff's exclusive rights to publicly perform, distribute and make copies of its Work.  Granting an injunction is the only way to prevent further infringement.

## VIII. <u>PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES AND COSTS</u>

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has held that courts may also consider these factors: "[T]he degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). Furthermore, the Ninth Circuit has "emphasized that district courts should 'accord substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'" *Id.*

Plaintiff assert that the following factors support granting its motion for attorney's fees: (1) Plaintiff's degree of success in the litigation; (2) deterrence; (3)

furtherance of the purposes of the Copyright Act; and (4) the objective unreasonableness of the losing party's (Defendant's) litigation conduct.

A.  The Degree of Success in the Litigation

In this case, Plaintiff's suit against Defendant was a total success because Defendant has defaulted.

B.  Deterrence

The interest of deterrence weighs in favor of granting Plaintiff's motion for attorney's fees.  Defendant continued to distribute the torrent files after receiving notifications from Namecheap and CloudFlare.  *See* Decl. of Counsel at ¶¶3, 6-7, and 16-18.  Accordingly, the interest of deterrence weighs in favor of fee-shifting.

C.  The Goals of the Copyright Act

The Copyright Act is intended to "'promote the Progress of Science and useful Arts' by 'assuring authors the right to their original expression' and 'encouraging others to build freely upon the ideas and information conveyed by a work.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991). Defendant's distribution of torrent files results directly in infringements of Plaintiff's Work. Thus, Defendant's conduct frustrates the goals of the Copyright Act.

D.  Objective Unreasonableness

The objective unreasonableness of Defendant's conduct also supports fee-shifting.  Defendant's conduct forced Plaintiff to file the present motion for default.

32

Defendant continued to promote and distribute torrent files despite multiple notices. The unreasonableness of Defendant's conduct during this litigation supports awarding attorney's fees to Plaintiff.

E.  Calculation of Attorney's Fees

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See *Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill

and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992). Once calculated, the "lodestar" is presumptively reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following lodestar amount for attorneys' fees it incurred in this case as detailed in the attached Declaration of Counsel with regards to Defendant:

KERRY CULPEPPER     51.33 hours @ $250/hour =        $12,832.50

Additionally, Plaintiff seeks to recover the Hawaii General Excise Tax related to those fees in the amount of $568.86 and taxable costs of $4714.

In *ME2 Productions, Inc. v. Pumaras*, this Court determined that a billing rate of $250 for Plaintiff's Counsel was consistent with the prevailing rates in the community. *See ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 18 (D. Haw. Oct. 19, 2017).

## IX.   <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court enter default judgment against Defendant and issue an award of statutory damages in the amount of $150,000, reasonable attorneys' fees in the amount of $12,832.50, Hawaii General Excise Tax related to those fees in the amount of $568.86 and taxable costs of $4714.

Additionally, Plaintiff requests that the Court permanently enjoin Defendant from directly and contributorily infringing Plaintiff's copyrighted Work.

DATED: Kailua-Kona, Hawaii, July 22, 2020.

CULPEPPER IP, LLLC

<u>/s/ Kerry S. Culpepper</u>
Kerry S. Culpepper

Attorney for Plaintiff