IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HB PRODUCTIONS, INC., | ) | Civil No. 19-00487 JMS-KJM |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO DENY |
| vs. | ) | PLAINTIFF'S MOTION FOR |
| | ) | DEFAULT JUDGMENT AGAINST |
| MUHAMMAD FAIZAN, | ) | MUHAMMAD FAIZAN |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT AGAINST MUHAMMAD FAIZAN

On July 22, 2020, Plaintiff HB Productions, Inc. ("Plaintiff") filed a Motion for Default Judgment Against Defendant Muhammad Faizan ("Motion"). ECF No. 55. Defendant Muhammad Faizan ("Defendant") did not file a response to the Motion. The Court elects to decide this matter without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii. After carefully considering the Motion, applicable law, and the record in this case, the Court FINDS AND RECOMMENDS that the district court DENY the Motion.

BACKGROUND

On September 9, 2019, Plaintiff filed its Complaint. *See* ECF No. 1. On February 14, 2020, Plaintiff filed its First Amended Complaint, which asserts

claims against Defendant for direct and contributory copyright infringement and intentional inducement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. ECF No. 40.  Plaintiff alleges that it is the copyright owner of the motion picture, *Hellboy* (the "Work" or "*Hellboy*").  *Id*. at 11 ¶ 34.  Plaintiff alleges that Defendant, a resident of Pakistan, operates the interactive website mkvcage.nl[1] ("MKV Site").  *Id.* at 11 ¶ 38.  The First Amended Complaint alleges that Defendant registered the MKV Site through the domain registrar Namecheap, a company based in Arizona.  *Id*. at 7 ¶ 24.  Defendant also registered with Cloudflare, Inc., a California company, to host the MKV Site.  *Id*.; *see also* ECF No. 55-1 at 10.

The First Amended Complaint alleges that Defendant creates torrent files with a copy of *Hellboy* making it available for download on his MKV Site.  ECF No. 40 at 11-12 ¶¶ 38-39.  Plaintiff also contends that Defendant promotes his MKC Site on social media sites such as Facebook, Reddit, Twitter, and Instagram, which misleads consumers into believing the *Hellboy* torrent file on his website is a legitimate means of watching *Hellboy*.  ECF No. 40 at 24-25, ¶¶ 99-106.  Furthermore, Plaintiff alleges that Defendant profits from the distribution of *Hellboy* on the MKV Site.  ECF No. at 27 ¶ 114.

---

[1] Defendant's website changed from mkvcage.fun to mkvcage.com, then to mkvcage.nl.  ECF No. 40 at 12 ¶ 43.

On March 2, 2020, Plaintiff filed a request for the Clerk of Court to enter default against Defendant. ECF No. 42. On March 3, 2020, the Clerk entered default against Defendant. ECF No. 43. On March 4, 2020, Plaintiff filed a Rule 55(b)(1) Motion for Clerk to Enter Default Against Muhammad Faizan ("03/04/2020 Motion"). ECF No. 44. On March 20, 2020, this Court issued its Findings and Recommendation to Deny the 03/04/2020 Motion ("03/20/2020 F&R"), finding that Plaintiff failed to establish its claims are for a "sum certain" as required by Federal Rule of Civil Procedure 55(b)(1). ECF No. 46. While the 03/20/2020 F&R was pending before the district court, Plaintiff filed a notice of withdrawal of the 03/04/2020 Motion. ECF No. 47. Plaintiff stated that it would file a second motion for default judgment addressing how damages were calculated. *Id*.

On March 27, 2020, Plaintiff filed a Second Rule 55(b)(1) Motion for Clerk to Enter Default Judgment Against Defendant Muhammad Faizan. ECF No. 48. On May 18, 2020, this Court issued its Findings and Recommendations to Deny Plaintiff's Second Rule 55(b)(1) Motion for Clerk to Enter Default Judgment Against Defendant Muhammad Faizan ("05/18/20 F&R"). ECF No. 52. On June 29, 2020, the district court adopted the 05/18/20 F&R. ECF No. 54. Thereafter, on July 22, 2020, Plaintiff filed the instant Motion.

DISCUSSION

Before considering the merits of the Motion, the Court has an affirmative obligation to determine whether it has subject-matter jurisdiction over this action and personal jurisdiction over Defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). The Court has subject-matter jurisdiction over the claims in First Amended Complaint pursuant to 28 U.S.C. §§ 1331, 1338, and 17 U.S.C. § 101, *et seq.* The Court finds, however, that it lacks personal jurisdiction over Defendant for the reasons set forth below.

Plaintiff contends that the Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2), often referred to as the federal long-arm statute. *See* ECF No. 55-1 at 11. To exercise jurisdiction under Rule 4(k)(2): (1) the claim(s) at issue must arise under federal law; (2) the defendant must not be subject to the jurisdiction of any state court of general jurisdiction; and (3) exercising jurisdiction must comport with due process. Fed. R. Civ. P. 4(k)(2); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007); *Pebble Beach Co. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). Here, Plaintiff's claims arise under federal law and Defendant, as a resident of Pakistan, is not subject to the jurisdiction of any state court of general jurisdiction. Thus, the

Court focuses on whether exercising personal jurisdiction over Defendant comports with due process.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant – general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Plaintiff states in its Motion that its claims against Defendant are not based on general jurisdiction. ECF No. 55-1 at 13. Rather, Plaintiff contends that the Court has specific jurisdiction over Defendant.

The specific jurisdiction inquiry focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. This requires the relationship to "arise out of contacts that the 'defendant *himself*' creates with the forum state" and "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Id*. at 284-85 (emphasis in original).

For specific jurisdiction to exist, a "nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alterations in *Axiom*

*Foods*) (some internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).  The Ninth Circuit employs a three-part test to determine whether a non-resident defendant has sufficient minimum contacts, which is satisfied when "'(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.'" *Pebble Beach*, 453 F.3d at 1155 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  The plaintiff bears the burden of establishing the first two prongs.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  If the plaintiff does not satisfy either prong, "personal jurisdiction is not established in the forum state." *Id*.

Under the first prong of the minimum contacts test, Plaintiff must establish that Defendant either purposefully availed himself to the privilege of conducting activities in the United States, or purposefully directed his activities toward the United States.  *See Pebble Beach*, 453 F.3d at 1158 ("Th[e] ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2).").  "A purposeful availment analysis is most often used in suits sounding in contract." *Schwarzenegger*, 374

F.3d at 802.  "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."  *Id.* (citing *Dole Food Co. v. Watts*, 3030 F.3d F.3d 1104, 1111 (9th Cir. 2002); *cf. Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995) (noting that the Ninth Circuit applies "different purposeful availment tests to contract and tort cases").  "A claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate."  *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007).

Under the purposeful direction test, which is also known as the "effects" test and derives from *Calder v. Jones*, 465 U.S. 783 (1984), "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at 1069 (citation and internal quotation marks omitted).

Plaintiff argues that Defendant's conduct meets the "effects" test and thus constitutes purposeful direction.  Plaintiff asserts that "Defendant intentionally placed the torrent files in the US (on the servers of Cloudflare and Namescheap)." ECF No. 55-1 at 15.

Plaintiff contends that Defendant's activities were aimed at the United States because Defendant "purposely directed his electronic activity into the United States and targets and attract[s] a substantial number of users in the United States and, more particularly, Hawaii."  ECF No. 55-1 at 17.  Furthermore, Plaintiff

7

asserts that Defendant promoted his MKV Site on United States social media platforms of Facebook, Reddit, and Twitter, thus purposefully directing the MKV Site's activities to users in the United States.

The Court finds that Plaintiff's evidence does not establish that Defendant's activities were expressly aimed at the United States. Simply registering with or using United States companies does not establish that Defendant purposefully directed his activity to the United States. As the Ninth Circuit explained: "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 112 (1987)). "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) ("While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that [the defendant] deliberately directed its merchandising efforts toward Arizona residents."). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing

the produce into the stream of commerce into an act purposefully directed toward the forum state." *Id.* (citing *Asahi Metal*, 480 U.S. at 112).

Plaintiff asserts facts indicating only that Defendant's MKV Site has been "swept" into the United States. The Plaintiff's contention that the United States is the country with the second most traffic to the MKV Site is not evidence of purposeful direction. That United States residents visited the MKV Site, a universally accessible website, more than residents of other countries does not lead to the conclusion that Plaintiff specifically targeted the United States.

In addition, Plaintiff argues that "Defendant takes advantage of provisions of US law on his website – namely the safe harbor protections from the liability of the [Digital Millennium Copyright Act ('DMCA')]." ECF No. 55-1 at 16. Plaintiff's argument is based on the purported "DMCA Policy" stated on the MKV Site:

> Mkvcage.us is in compliance with 17 U.S.C. § 512 and the Digital Millennium Copyright Act ("DMCA"). It is our policy to respond to any infringement notices and take appropriate actions under the Digital Millennium Copyright Act ("DMCA") and other applicable intellectual property laws.
>
> If your copyrighted material has been posted on mkvcage.ws or if links to your copyrighted material are returned through search engine and you want this material removed, you must provide a written communication that details the information listed in the following section. Please be aware that you will be liable for damages (including costs and attorneys' fees) if you misrepresent information listed on our site that is infringing on your copyrights. We suggest that you first contact an attorney for legal assistance on this matter.

ECF No. 40 at 8 ¶ 25.

Contrary to Plaintiff's argument, the above language does not indicate that Defendant takes advantage of the DMCA's protections.  Rather, the Court reads the DMCA Policy to simply state that the MKV Site is in compliance with the DMCA.  Nowhere in the DMCA Policy does it claim that Defendant has rights under the DMCA that he intends to enforce in United States courts.  Thus, Plaintiff fails to persuade the Court that including the DMCA Policy on the MKV Site amounts to an action expressly aimed at the United States or Hawaii.

Based on the foregoing, Plaintiff fails to establish that Defendant's activities were expressly aimed at the United States.  The Court thus finds that Plaintiff fails to establish that Defendant purposefully directed his actions toward the United States.  The Court also finds that Defendant's contacts are insufficient to invoke nationwide jurisdiction under Rule 4(k)(2).  More specifically, Plaintiff fails to satisfy the first prong of the three-part minimum contacts test, *i.e.*, purposeful direction.  Accordingly, the Court declines to analyze the remaining two prongs of the minimum contacts test.  *See Cybersell*, 130 F.3d at 419 (declining to analyze the second and third prong of the minimum contacts test because the plaintiffs failed to satisfy the "purposeful availment" prong of the three-part minimum contacts test).

CONCLUSION

Based on the foregoing, the Court FINDS AND RECOMMENDS that the district court DENY Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, September 28, 2020.



Kenneth J. Mansfield
United States Magistrate Judge

*HB Productions, Inc. v. Faizan*, Civil No. 19-00487 JMS-KJM; Findings and Recommendation to Deny Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan