IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HB PRODUCTIONS, INC., | CIV. NO. 19-00487 JMS-KJM |
| Plaintiff, | ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ECF NO. 59, AND ADOPTING FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST MUHAMMAD FAIZAN, ECF NO. 58 |
| vs. | |
| MUHAMMAD FAIZAN, | |
| Defendant. | |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ECF NO. 59, AND ADOPTING FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST MUHAMMAD FAIZAN, ECF NO. 58**

## I. INTRODUCTION

Plaintiff HB Productions, Inc. ("Plaintiff") objects under 28 U.S.C.

§ 636(b)(1) to Magistrate Judge Kenneth J. Mansfield's September 28, 2020

Findings and Recommendation ("F&R"), ECF No. 58, to deny Plaintiff's Motion

for Default Judgment Against Defendant Muhammad Faizan ("Defendant").  ECF

No. 59.  For the reasons discussed below, the court OVERRULES Plaintiff's

Objections and ADOPTS the F&R.

## II. BACKGROUND

The First Amended Complaint ("FAC") claims that Defendant

Muhammad Faizan ("Defendant") engaged in direct and contributory copyright

infringement of Plaintiff's copyright of the motion picture *Hellboy*, in violation of the Copyright Act of 1976, 17 U.S.C. § 101, et seq. FAC ¶¶ 1-2, 34, ECF No. 40 at PageID ## 271, 280. A detailed summary of the undisputed factual and procedural background of this case is set forth in the F&R. *See* ECF No. 58 at PageID ## 511-13. The court incorporates that background and thus provides only the following facts for context.

Defendant (1) owns and operates websites that are accessed worldwide on which he posts United States-produced content and/or torrent files of such content without a license to do so; (2) creates and posts torrent files of United States-produced content onto known piracy websites; (3) contracts with United States-based web-service providers, social media platforms, and companies through which he pays for such services and communicates via email; and (4) collects user data to target third-party website content and advertisements based on a user's location. *See* FAC ¶¶ 10-14, 22, 24, 29-30, 38-42, 44-47, 67-68, 85-86, 88-91, 103-106, ECF No. 40 at PageID ## 272-73, 275-76, 278, 280-82, 286, 289-91, 293-94.

In considering Plaintiff's motion for default judgment, the F&R determined that the court lacks personal jurisdiction over Defendant. ECF No. 58at PageID # 514. More specifically, addressing personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2)—commonly referred to as the federal

long-arm statute—the F&R found that "Plaintiff's claims arise under federal law and Defendant, as a resident of Pakistan, is not subject to the jurisdiction of any state court of general jurisdiction." *Id.* Thus, the F&R focused on "whether exercising personal jurisdiction over Defendant comports with due process," and determined that it did not. *Id.* at PageID ## 514-20. In particular, the F&R found that under the facts alleged, Plaintiff failed to show that Defendant "purposefully directed his actions toward the United States," and thus, "Defendant's contacts are insufficient to invoke nationwide jurisdiction under Rule 4(k)(2)." *Id.* at PageID # 520.

On October 5, 2020, Plaintiff filed objections to the F&R. ECF No. 59. Plaintiff argues that Magistrate Judge Mansfield erred in determining that Defendant's activities were not expressly aimed at the United States, and in failing to address and apply Hawaii's long-arm statute as an alternate basis for personal jurisdiction. *Id.* at PageID ## 523-24.

Upon de novo review and for the reasons discussed below, this court OVERRULES Plaintiff's Objections and ADOPTS the F&R.

### III.  <u>STANDARD OF REVIEW</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which

the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."). Under a de novo standard, there is no deference to the lower court's ruling; rather, the court "freely consider[s] the matter anew, as if no decision had been rendered below." *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (alteration in original); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

The district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," or recommit the matter to the magistrate judge with further instructions. 28 U.S.C. § 636(b)(1)(C); *United States v. Raddatz*, 447 U.S. 667, 673-74 (1980); Fed. R. Civ. P. 72(b)(3).

## IV. **DISCUSSION**

Plaintiff objects to the F&R's finding that the court lacks specific personal jurisdiction over Defendant, arguing that Defendant expressly aimed his activities at the United States and/or Hawaii. ECF No. 59 at PageID ## 523-24. The court disagrees.

///

///

4

## A.    Legal Standard

Plaintiff bears the burden of establishing that personal jurisdiction is proper.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "[P]ersonal jurisdiction over an out-of-state defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."  *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The federal long-arm statute allows any district court in the United States to exercise personal jurisdiction "[f]or a claim that arises under federal law," over a defendant who "is not subject to jurisdiction in any state's courts of general jurisdiction," so long as "exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).[1]  Here, the first two requirements are met.  Thus, the court turns to the third requirement—whether exercising personal jurisdiction over Defendant comports with due process.

Due process requires that a nonresident defendant has "'certain minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *AMA Multimedia,*

---

[1]  Similarly, Hawaii's long-arm statute authorizes personal jurisdiction to the extent permitted by the United States Constitution.  *See Cowan v. First Ins. Co. of Haw.*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) (citing Haw. Rev. Stat. § 634-35).

*LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). Determining whether specific personal jurisdiction comports with due process requirements under Rule 4(k)(2) requires the same analysis as that applied under a state's long-arm statute with one significant difference: rather than "considering contacts between the [defendant] and the forum state, [the court must] consider contacts with the nation as a whole." *Holland Am. Line Inc.*, 485 F.3d at 462.

In the Ninth Circuit, courts conduct a three-part inquiry to determine whether a nonresident defendant has sufficient "minimum contacts" with the forum to warrant the exercise of specific personal jurisdiction:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail[] himself of the privileges of conducting activities in the forum;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Wanat*, 970 F.3d at 1208 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)) (internal quotation marks omitted). Under the first prong, the exact inquiry depends on the type of claim. *See In re Boon Global*, 923 F.3d 643, 651 (9th Cir. 2019) (explaining that the "purposeful direction" analysis applies to tort claims and the "purposeful availment" analysis to contract

claims).  Copyright infringement claims sound in tort; thus, the court applies a purposeful direction analysis and asks whether Defendant has purposefully directed his activities at the United States and/or Hawaii.  *See Wanat*, 970 F.3d at 1208; *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007).

To answer the purposeful direction inquiry, the court applies a three-part "effects" test based on *Calder v. Jones*, 465 U.S. 783 (1983).  *See Wanat*, 970 F.3d at 1208-09 (citations omitted).  The effects test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Mavrix*, 647 F.3d at 1228 (quotation omitted).  As to the second requirement, courts consider two factors in determining whether an action is expressly aimed at a forum: (1) whether the relationship arises out of contacts that the defendant creates with the forum; and (2) whether the defendant's contacts are with the forum, not with persons residing in the forum.  *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)).

## B.     Application of Legal Standard

Plaintiff's failure to meet the second requirement of the effects test—that Defendant's activities must be expressly aimed at the forum—is fatal to the assertion of personal jurisdiction over Defendant.

### 1.     Framework for Determining Whether the Operation of a Website Constitutes Express Aiming at a Forum

Courts have "struggled with the question whether tortious conduct on a [widely] accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix*, 647 F.3d at 1229 (collecting cases). From this struggle a general framework has emerged.  Where a "website is passive—i.e., does not directly engage in financial transactions with those who access it—to show the website's activity was 'expressly aimed' at the forum, there must be a showing of 'something more,' i.e., 'conduct directly targeting the forum.'" *42 Ventures, LLC v. Rend*, 2020 WL 6257069, at *3 (D. Haw. Oct. 23, 2020) (quoting *Mavrix*, 647 F.3d at 1229).  "On the other hand, an 'interactive' website may provide sufficient contacts depending on the 'level of interactivity and commercial nature of the exchange of information that occurs on the website." *Blizzard Ent., Inc. v. Joyfun Inc. Co.*, 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)).  But "[i]nternet advertisement alone" will not suffice; "rather, 'something more' is needed 'to indicate that the defendant purposefully . . . directed his activity in a substantial way to the forum state.'" *Id.* (quoting *Cybersell*, 130 F.3d at 418).

Thus, an internationally-accessed website may be found to target a forum if it "appeals to, and profits from an audience in a particular [forum]."

*Mavrix*, 647 F.3d at 1231 (concluding that operator of website directly targeted California forum where the website specifically focused on the California-centered celebrity and entertainment industries and the website's economic value was based in large part on its appeal to Californians).

Express aiming has also been found where a website was hosted on servers in the United States, and its operators contracted with United States advertising companies to provide geo-location advertising—targeting ads based on the user's perceived location, received substantial traffic from the United States, earned revenue based on advertising and website traffic from the United States, and contracted with United States companies for content. *See, e.g.*, *Hydentra HLP Int'l Ltd. v. Sagan Ltd.*, 266 F. Supp. 3d 1196, 1201-03 (D. Ariz. 2017), *reversed and remanded on other grounds*, 783 F. App'x 663, 665 (9th Cir. 2019) (agreeing with the district court that defendant expressly aimed at the United States); *AMA Multimedia LLC v. Sagan*, 2016 WL 5946051, at *4 (D. Ariz. Oct. 13, 2016) (same factors).

And express aiming was found where a website displayed United States advertisements and a policy notice pursuant to the Digital Millennium Copyright Act ("DMCA"); and the website operator agreed to be bound by the law of various states in contracts with United States companies for domain registration and website-hosting services on United States servers. *See Hunter Killer Prods. v.*

*Zarlish*, 2020 WL 2064912, at \*4-6 (D. Haw. Apr. 29, 2020) (explaining that although not relied upon, additional allegations regarding all defendants generally—collecting user data to enable geo-located advertising and obtain financial benefits from that information and promoting primarily United States-produced movies on the website—also support finding of express aiming).

But these cases were decided before the Ninth Circuit's recent application of the effects test.  In *Wanat*, the defendant (1) operated websites from Poland through which users could search, select, and stream adult videos, (2) contracted with United States companies to register domain names, and (3) contracted with a third party to place advertisements on the websites targeted to users based on their location.  *See Wanat*, 970 F.3d at 1204-05.  The United States was the websites' largest market with twenty percent of their overall traffic.  *Id.* at 1205.  Notwithstanding these allegations, *Wanat* held that there was no personal jurisdiction over the defendant because "the United States was not 'the focal point' of the website 'and the harm suffered.'"  *Id.* at 1212 (citing *Walden*, 571 U.S. at 287).  *Wanat* reasoned that "the popularity or volume of U.S.-generated adult content does not show that Wanat expressly aimed the site at the U.S. market," as evidenced by the fact that the United States comprised only 20% of the website's traffic.  *Id.* at 1210.  And the court found it significant that users selected and uploaded content, negating any argument that the defendant expressly aimed the

10

website's content at a United States audience. *Id.* ("Although Wanat may have foreseen that [the website] would attract a substantial number of viewers in the United States, this alone does not support a finding of express aiming."). The court further reasoned that the use of geo-located advertisements targeted *all* users in *every* forum, not just the United States. *Id.* at 1211. And the court reasoned that the defendant's choice of a United States-based high-speed web-service provider, without more, failed to show that he sought more United States users as opposed to more users globally. *Id.* at 1212.

Following *Wanat*, another court in this district declined to find express aiming where the defendants operated websites and applications accessed worldwide, posted United States-produced content to those websites and applications, contracted with United States-based web- and application-service providers, collected user data and used such data to target content and advertisements, displayed a DMCA policy notice on the websites, and employed a United States-based payment provider. *See Rend*, 2020 WL 6257069, at *3-6. *Rend* reasoned that like *Wanat*, "the market for United States-produced movies is 'global.'" *Id.* at *4. And the existence of that global market precluded a finding that by posting such content, the defendants targeted the United States. *Id.* Similarly, because the United States-based companies the defendants used for domain registration and website and application hosting and distribution services

all have customers worldwide, the plaintiff failed to show that defendants selected them specifically to target the United States.  *Id.* at \*5.

### 2.   *Application of Express Aiming Framework*

Plaintiff argues that Defendant "purposely directs his electronic activity into the United States and . . . Hawaii."  ECF No. 55-1 at PageID # 443. To support this argument, Plaintiff alleges that Defendant (1) registered his domain with Namecheap (an Arizona company); (2) posted United States-based content— including a webpage of the Internet Movie Database top 250 movies with links to download each movie, and torrent files of *Hellboy*—on his MKVCage websites, which are hosted by Namecheap and CloudFlare (a California company) on servers in Arizona and California; (3) used United States social media platforms (Facebook, Reddit, Twitter) to promote his websites; (4) used United States companies to make payments (PayPal) to Namecheap and for email communications (Google); and (5) collected user data used by a United States company (Google) to target ads based on the user's perceived location.  FAC ¶¶ 11-14, 24. ECF No. 40 at PageID ## 272-73, 276.  The court is not persuaded that Defendant's actions target the United States and/or Hawaii.

First, the market for United States-produced movies is global.  *See Rend*, 2020 WL 6257069, at \*4 & n.4 ("Today, nearly 70 percent of Hollywood box office revenue comes from abroad.") (citation omitted).  Plaintiff alleges that

12

Defendant's files are available to users worldwide, as evidenced by the fact that even as the second highest source of traffic to the website, surpassed only by India, the United States accounts for less than ten percent of the traffic to Defendant's websites.  FAC ¶ 22, ECF No. 40 at PageID # 275.  Plaintiff attempts to distinguish *Wanat* by arguing that Defendant, not website users, uploaded United Stated-produced movies onto his websites.  But the global market for United States-produced movies renders Defendant's posting of content to his websites irrelevant for purposes of establishing express aiming.  *See Wanat*, 970 F.3d at 1210; *Rend*, 2020 WL 6257069, at *4 (reasoning that given the global market for United States-produced movies, "the Court cannot conclude that Defendants chose their content to specifically target the United States market").  Nor does Plaintiff allege any facts showing that Defendant specifically targeted the United States and/or Hawaii in choosing to upload files of *Hellboy*, or that Defendant was physically present in the United States to upload his files.

Second, the companies providing website registration, hosting, and server services (Namecheap, CloudFlare), payment (PayPal) and email communication (Google) services, and social media platforms (Facebook, Reddit, Twitter) on which Defendant promotes his websites, have a global presence with customers worldwide.  *See, e.g.*, *Rend*, 2020 WL at 6257069, at *5 & nn.8-9, 12-13 (discussing global reach of Namecheap, CloudFlare, Facebook, Twitter); *see also*

https://www.paypal.com/us/webapps/mpp/about (last visited November 12, 2020) (boasting 325 million account holders in 200 markets worldwide); https://techjury. net/blog/gmail-statistics/#gref ) (last visited November 12, 2020) (reporting that Google's Gmail is "the most popular email platform with over 1.8 billion users worldwide"); https://www.statista.com/statistics/325144/reddit-global-active-user-distribution/ (last visited November 12, 2020) ("Reddit is one of the world's most popular websites[.]").  Thus, Defendant's selection of these companies cannot be said to target the United States.  *See Rend*, 2020 WL 6257069, at *5.

Third, Plaintiff's argument that Defendant's use of geo-located advertising shows that Defendant targeted the United States and/or Hawaii is foreclosed by *Wanat*.  *See Wanat*, 970 F.3d at 1211; *Rend*, 2020 WL 6257069, at *6 ("Where such collection and targeting is common to users across the globe, it cannot be said that the United States market was specifically in Defendants' crosshairs.") (citing *Wanat*, 970 F.3d at 1211).

Fourth, Plaintiff does not allege that Defendant sold copies of the movie directly to users or collected payment directly from users.  Nor does it allege that in seeding torrent files, Defendant did anything more than merely post such files for users to locate and access.  *See, e.g.*, FAC ¶¶ 89-90, ECF No. 40 at PageID ## 290-91 (alleging that Defendant made files "available to users in Hawaii . . . the United States and the entire World to download from the MKVCage website and

other notorious movie piracy sites"). Plaintiff characterizes Defendant's seeding

torrent files of *Hellboy* onto his website and "notorious movie piracy sites such as

ETTV and 1337x" as "sen[ding]" pieces of or the entire movie to over 16,000 IP

addresses in the United States, including 35 in Hawaii. *Id.* ¶¶ 6-7, 18-21, 85-86,

89-91, ECF No. 40 at PageID ## 271-72, 274-75, 289-90. But such allegation

refers to users downloading or streaming Defendant's files from his websites. That

is, although Plaintiff characterizes such activity as acts targeting the United States

and Hawaii, Plaintiff does not allege that Defendant himself individually addressed

and sent files to specific IP addresses in the United States and/or Hawaii.

In sum, the court concludes that Defendant's use of United States

companies with global reach to place files of a United States-produced movie in

the stream of commerce, to promote his websites, to pay his bills, and to conduct

email communication does not demonstrate that Defendant expressly aimed his

infringing activities at the United States or Hawaii.

### 3.    *Consent to Jurisdiction and Safe Harbor Provisions*

Plaintiff presents two addition arguments in support of his contention

that Defendant expressly aimed his activities at the United States. The court

rejects both.

First, Plaintiff argues that Defendant agreed to jurisdiction in Arizona

and California when he entered into contracts containing choice of law and venue

clauses with Namecheap and CloudFlare.  ECF No. 59 at PageID # 538.  But as

*Rend* explained in rejecting this same argument under similar facts:

> Defendants' agreements with third parties about choice of
> law, jurisdiction, or venue are unrelated to personal
> jurisdiction in this case, where Plaintiff was not a party to
> those agreements, nor is the allegedly infringing conduct
> related to Defendants' performance under those contracts.

2020 WL 6257069, at *6 (citation omitted); *see also Lang Van, Inc. v. VNG Corp.*,

2019 WL 8107873, at *4 (C.D. Cal. Nov. 21, 2019) ("Defendant's app developer

contracts with Google and Apple are also insufficient to establish that Defendant

expressly aimed its conduct at California.  Defendant's agreement to a forum

selection clause for disputes with Apple and Google is not relevant to [copyright]

claims asserted by Plaintiff, which is not a party to the app developer agreements.")

(citing *Bibiyan v. Marjan Television Network, Ltd.*, 2019 WL 422664, at *3-4 (C.D.

Cal. Feb. 4, 2019)).

       Second, Plaintiff argues that Defendant's adoption of a policy

pursuant to the DMCA's safe harbor protections from liability "shows that

[Defendant] expressly aimed his conduct at the [United States]."  *See* ECF No. 59-

1 at PageID # 540; *see also* FAC ¶¶ 25-28, ECF No. 40 at PageID ## 276-78.  The

F&R concluded that Defendant's DMCA policy merely indicated compliance with

the DMCA; that is, it did not show that "Defendant has rights under the DMCA

that he intends to enforce in United States courts."  ECF No. 58 at PageID # 520.

Plaintiff objects to this conclusion, arguing that the FAC's allegation—that Defendant sent "two DMCA notices" asking Google to remove search results for a website that he believed infringed his rights, FAC ¶¶ 27-28, ECF No. 40 at PageID ## 277-78—shows Defendant's "clear intention to protect his safe harbor" rights under United States law.  ECF No. 59-1 at PageID # 540.

But to qualify for safe harbor under the DMCA, a service provider must (1) designate an agent who may be notified of copyright infringement on its website, (2) include the agent's information on the website, and (3) provide the agent's information to the United States Copyright Office.  *See* 37 C.F.R. § 201.38. Plaintiff alleges that Defendant "does not have a DMCA agent as required . . . to assert safe harbor."  FAC ¶ 93, ECF No. 40 at PageID ## 291-92.  That is, Plaintiff does not allege that Defendant's website includes the name and information of an agent who may be notified of any copyright infringement or that Defendant registered such information with the United States Copyright Office.  Absent factual allegations that Defendant took steps to qualify for protection under the DMCA, the court cannot conclude that Defendant, in fact, took action expressly aimed at the United States.  *See Rend*, 2020 WL 6257069 at *6 (finding plaintiff's failure to allege actual steps taken by the defendant to secure protection under the DMCA fatal to its assertion of personal jurisdiction over the defendant); *cf. UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (finding that

17

personal jurisdiction existed over the defendant, in part, based on the defendant's registration of a DMCA agent with the United States Copyright Office); *but see Zarlish*, 2020 WL 2064912, at *5 ("The display of [a DMCA] policy on the [website] shows that [the defendant] was aware of, and attempted to invoke the protections of, potentially applicable United States law.").

In sum, the court concludes that Plaintiff failed to demonstrate that Defendant's activities were expressly aimed at the United States or Hawaii. Thus, Plaintiff failed to show that Defendant's contacts are sufficient to invoke nationwide jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), or jurisdiction under Hawaii's long-arm statute, Hawaii Revised Statute § 634-35.

Nevertheless, Ninth Circuit law on the issue of what conduct by the operator of an internationally-accessible website constitutes express aiming at a forum continues to evolve. Because *Wanat* was issued after Plaintiff filed its FAC, the court GRANTS Plaintiff leave to file a Second Amended Complaint by December 11, 2020 to attempt to allege facts sufficient to comply with *Wanat's* newer guidance on express aiming.

## V. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Objections are OVERRULED and the Findings and Recommendation to Deny Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan (ECF No. 55), ECF No. 58, is

18

ADOPTED.  Plaintiff may file a Second Amended Complaint by December 11, 2020.  Failure to file a timely Second Amended Complaint may result in automatic dismissal of the action for lack of personal jurisdiction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 18, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*HB Prods, Inc. v. Faizan*, Civ. No. 19-00487 JMS-KJM, Order Overruling Plaintiff's Objections, ECF No. 59, and Adopting Findings and Recommendation to Deny Plaintiff's Motion for Default Judgment Against Muhammad Faizan, ECF No. 58