CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiff
HB Productions, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HB Productions, Inc., | ) **Case No.: 1:19-cv-487-JMS-KJM** |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) **SECOND AMENDED** |
| vs. | ) **COMPLAINT; EXHIBITS 1-4;** |
| | ) **DECLARATION OF STEPHANIE** |
| Muhammad Faizan, | ) **KESSNER; DECLARATION OF** |
| | ) **COUNSEL; DECLARATION OF** |
| Defendant. | ) **DANIEL ARHEIDT** |
| | ) |
| | ) **(1) CONTRIBUTORY** |
| | ) **COPYRIGHT** |
| | ) **INFRINGEMENT** |
| | ) **(2) DIRECT COPYRIGHT** |
| | ) **INFRINGEMENT** |
| | ) |
| | ) |
| | ) |

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff HB Productions, Inc. ("Plaintiff") files this Second Amended

Complaint against Defendant Muhammad Faizan ("Defendant") and alleges as

follows:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this action to stop the massive piracy of its motion picture *Hellboy* ("Work") brought on by Defendant.

2.    To halt Defendant's illegal activities, Plaintiff brings this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and allege that Defendant is liable for direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.    Defendant solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction as provided by HRS § 634-35.

5.    Defendant sent at least a substantial portion if not all of copies of Plaintiff's motion pictures directly to individuals in Hawaii such as those shown in Exhibit "1" from one or more computing devices under his control.

6.    Particularly, Defendant sent at least a piece of a copy of Plaintiff's

2

Work with a file name "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" to 12 Internet Protocol ("IP") addresses in Hawaii.

7.      Particularly, Defendant sent at least a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG" to 23 IP addresses in Hawaii.

8.      Defendant knew these 35 IP addresses were in Hawaii when he sent the at least a piece of each of said copies of Plaintiff's Work.  That is, Defendant himself individually addressed and sent the file pieces to the 35 specific IP addresses in Hawaii automatically using a BitTorrent Client application.

9.      Each piece Defendant sent included a destination address of the Peer Identification and IP address of the recipients in Hawaii.

10.      Defendant causes harm to Plaintiff's business within this District by diverting customers in this District to unauthorized Internet-based content distribution services through, at least, his interactive websites previously mkvcage.nl, mkvcage.fun, mkvcage.com and, currently mkvcage.site.

11.      Defendant has designed his interactive websites to individually target Hawaii users based upon their personal information such as web browsing history.

12.      Upon information and belief, Defendant collects log files including the IP address, Internet Service Provider ("ISP") and browser type of each user who visits his interactive websites.

3

13.    Upon information and belief, Defendant uses cookies and web beacons to store information such as personal preferences of users who visit his websites.

14.    Upon information and belief, Defendant obtains financial benefit from his users in Hawaii via third party advertisements such as Google through the Google AdSense program.

15.    Upon information and belief, Defendant uses the cookies, log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user.  Particularly, users in Hawaii receive advertisements based upon their location and websites they have previously visited.

16.    Defendant solicits feedback from his users.  Namely, movies that his users wish for him to pirate.



17.    Defendant solicits donations from his users in Hawaii and the United States from his interactive website.

20-018B  19cv487



18.     In the alternative, the Court has jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiff's claims arise under federal law; (2) the Defendant purposely directed his electronic activity into the United States and targets and attracts a substantial number of users in the United States and, more particularly, this District; (3) Defendant does so with the manifest intent of engaging in business or other interactions with the United States; (4) the Defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United States Constitution and laws.

19.     Defendant seeded one or more copies of Plaintiff's Work on IP address 104.31.88.65 at a server in Texas that hosts the notorious piracy website 1337x.tw. By this act, Defendant directly infringed Plaintiff's exclusive rights of reproduction and distribution in Texas and thus the United States.

## Whois Record for 1337X.to

**— Domain Profile**

| | |
|---|---|
| Proximity Score | 0 |
| Registrar Status | taken |
| Name Servers | OLGA.NS.CLOUDFLARE.COM (has 18,191,474 domains)<br>TODD.NS.CLOUDFLARE.COM (has 18,191,474 domains) |
| IP Address | 104.31.88.65 - 521 other sites hosted on this server |
| IP Location | - Texas - Dallas - Cloudflare Inc. |
| ASN | AS13335 CLOUDFLARENET, US (registered Jul 14, 2010) |
| Domain Status | Registered And Active Website |
| Whois History | 1,061 records have been archived since 2014-04-05 |
| Hosting History | 1 change on 2 unique name servers over 6 years |

**— Website**

| | |
|---|---|
| Website Title | ✗ 500 SSL negotiation failed: |
| Response Code | 500 |

Whois Record ( last updated on 2020-12-02 )

20.     Defendant uploaded the file "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" on IP address 104.27.152.221 at a server in California that hosts the piracy website ibit.uno using his profile "mkvcage".  By this act, Defendant directly infringed Plaintiff's exclusive rights of reproduction and distribution in California and thus the United States.

6

## Whois Record for lblt.uno

**— Domain Profile**

| | |
|---|---|
| Proximity Score | 34 |
| Email | domainabuse@tucows.com is associated with ~11,320,820 domains |
| Registrar | Tucows.com Co.<br>IANA ID: 69<br>URL: http://www.tucows.com/<br>Whois Server: whois.tucows.com<br>domainabuse@tucows.com<br>(p) 14165350123 |
| Registrar Status | clientTransferProhibited, clientUpdateProhibited |
| Dates | 663 days old<br>Created on 2019-02-08<br>Expires on 2021-02-08<br>Updated on 2020-01-16 |
| Name Servers | TERIN.NS.CLOUDFLARE.COM (has 18,191,474 domains)<br>TIA.NS.CLOUDFLARE.COM (has 18,191,474 domains) |
| IP Address | 104.27.152.221 - 525 other sites hosted on this server |
| IP Location | - California - San Francisco - Cloudflare Inc. |
| ASN | AS13335 CLOUDFLARENET, US (registered Jul 14, 2010) |
| Domain Status | Registered And Active Website |

21.    Defendant has sent at least a piece of a copy of Plaintiff's Work if not the entire copy to IP addresses in the United States for at least 16,942 instances.

22.    Particularly, Defendant sent a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" to IP addresses in the United States at least 8555 times.

23.    Particularly, Defendant sent a piece of a copy of Plaintiff's Work with a file name "Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG" to IP addresses in the United States at least 8387 times.

24.    Defendant knew these IP addresses were in the United States when he sent the at least a piece of the copy of Plaintiff's Work 16,942 times.  That is,

20-018B  19cv487

Defendant himself individually addressed and sent files automatically to specific IP addresses in the United States using a BitTorrent Client.

25.    The United States is the second highest source of traffic to the mkvcage.com website of Defendant.



26.    Defendant has received over 9 million visitors to his website mkvcage.com since May of 2019.  Accordingly, nearly a million of these visitors originated from the United States.

20-018B  19cv487



27.    The United States is also the second highest source of traffic to the mkvcage.site website Defendant currently uses to distribute pirated US copyright protected content.



28.    Defendant uses or has used many United States ("US") based sources for operating his interactive websites.  Defendant uses the nameserver company Cloudflare, Inc. (California), the domain Registrar and hosting service of

20-018B  19cv487

Namecheap (Arizona), and the email service of the US Company Google (California) for his websites.  Defendant used the US company PayPal to make a payment to Namecheap when registering the domain mkvcage.cc on Jan. 6, 2018. Defendant used the US social media platforms TWITTER, INSTAGRAM and Reddit to promote his websites to the US audience.

29.     Defendant agreed to be subject to jurisdiction in the US and to a Court in the US (Arizona) when agreeing to terms of services with Namecheap for hosting his websites and registering his domains.

30.     Defendant agreed to terms of services with Namecheap that required him "….not to use Namecheap services to host any website, other content, links or advertisements of websites that: infringe any copyright…or other proprietary rights of any third party information…" 4. Accepted Use Policy, https://www.namecheap.com/legal/hosting/tos/ [last accessed on Nov. 24, 2020].

31.     Defendant further agreed to terms of services with Namecheap that required him to "…agree to defend, indemnify and hold harmless Namecheap…from any loss, liability, damages or expense…arising out of (i) any breach of any representation or warranty provided in this Agreement, or as provided by Namecheap's AUP… (vii) …any allegation that Your account infringes a third person's copyright…or intellectual property right…" *Id*. at 17. Indemnification.

32.     As a copyright holder, Plaintiff is a third-party beneficiary of the

Defendant's agreement with Namecheap.   Plaintiff's claims for direct and contributory infringement arise out of Defendant's breach of the terms of service with Namecheap.

33.   Defendant agreed to be subject to jurisdiction in the US and to a Court in the US (California) when agreeing to terms of services with Cloudflare for nameserver service.

34.   Defendant agreed to terms of services with Cloudflare that required him to "…represent and warrant that Your Information does not infringe, violate, or misappropriate any third-party right, including any copyright…or any other intellectual property or proprietary right." Paragraph 2.5.4, https://www.cloudflare.com/terms/ [last accessed on Nov. 24, 2020].

35.   Defendant further agreed to terms of services with Cloudflare that required him to "…agree to defend, indemnify, and hold harmless Cloudflare…from and against any and all claims…arising out of or in any way connected with your access to, use of, or alleged use of the Service; (ii) your violation of this Agreement or any representation, warranty, or agreements referenced herein, or any applicable law or regulation; (iii) your violation of any third-party right, including without limitation any intellectual property right…" *Id*. at 10.2 (By You).

36.   As a copyright holder, Plaintiff is a third-party beneficiary of the Defendant's agreement with Cloudflare.   Plaintiff's claims for direct and

contributory infringement arise out of Defendant's breach of the terms of service with Cloudflare.

37.     Defendant attempted to purposely avail himself of the advantages of US law.  Particularly, Defendant takes advantage of the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA") on his website by reference to the United States Code.



38.     Defendant   further   provides   a   contact   information   for   receiving infringement notices as required by 17 U.S.C. §512.

20-018B  19cv487

- Must be signed by the authorized person to act on behalf of the owner of an exclusive right that is allegedly being infringed.

Send the written infringement notice to the following address and an email notification to **admin@mkvcage.com**

39.     Defendant does not attempt to avail himself of protections and laws of any other country.  For example, Defendant does not invoke the protections of the European Directive on Copyright in the Digital Single Market ("Article 17").

40.     Upon information and belief, Defendant has purposely availed himself of the benefit of the DMCA with respect to other websites he owns and/or controls such as, for example, the website FAIZANATHAR.COM.

41.     Upon information and belief, Defendant submitted at least two DMCA notices to Google requesting Google to remove search results for websites that he believed infringed his rights in the website faizanathar.com on March 25, 2018.

42.     Upon information and belief, when Defendant submitted said at least two DMCA notices to Google, he agreed to be subject to the jurisdiction of the United States.

43.     Defendant falsely claims on his website that the blatantly infringing torrent files and file copies he hosts were uploaded by third parties when he himself uploaded them.

44.     By adopting this notices scheme and conjunction with falsely claiming that others had uploaded the files, Defendant has further attempted to avail himself

20-018B  19cv487

of the safe harbor provided by 17 U.S.C. § 512(i) for service providers by promoting the illusion that he had adopted and reasonably implemented a policy for termination of repeat infringers.

45.    Defendant promotes a list of content exclusively produced by US companies with links to pirate the content under the title "Hollywood Movies".

46.    This list is curated to display links to movies and television shows that are mostly popular to the US audience at a given time.  For example, according to the Internet Archive, a May 9, 2017 version of the list on the website promoted the motion pictures "*Get Out*" and "*The Black Room*" and the television series "*Better Call Saul*" – content uniquely oriented to and popular in the US market.



47.    Defendant even includes a webpage of the Internet Movie Database's

20-018B  19cv487

("IMDB") Top 250 movies with a download link below each movie to unlawfully download the specific movie.   The IMDB is operated by IMDB.com, Inc., a subsidiary of the US company Amazon and includes primarily US movies.



48.    Defendant promoted Plaintiff's motion picture prominently on his websites to attract new users.



Storyline: Based on the graphic novels by Mike Mignola, Hellboy, caught between the worlds of the supernatural and human, battles an ancient sorceress bent on revenge.

Download → (https://www.mkvcage.fun/hellboy-2019-720p-brrip-hevc-750mb/#more-48827)

20-018B  19cv487

49.    Defendant specifically targeted the United States market to pirate the Work.

50.    Plaintiff released different versions of the motion picture in different regions and in different languages.  Defendant specifically chose the United States English version of Plaintiff's motion picture to pirate on his websites and via BitTorrent because he specifically targeted the US market.

51.    Defendant specifically chose a United States version Blue-ray disc to copy and create infringing file copies (e.g., Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv) of the Work to be made available for download on his website because he specifically targeted the US market.

52.    Defendant used United States IP addresses provided by his host provider Namecheap (in Arizona) to receive a legitimate streaming copy of the motion picture from Amazon and create an infringing file copy (Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG ) of the Work because he specifically targeted the US market.

53.    Upon information and belief, due to geographic restrictions, Amazon did not stream the US version of the Work to Pakistan at the time Defendant received the streaming copy of the motion picture.

54.    Defendant particularly chose a US bank account provided by Paypal so that US users could seamlessly send donations in US dollars from US Paypal

16

accounts without incurring burdensome foreign conversion fees.  That is, Defendant particularly targeted US Paypal users for donations.

55.    Below is a partial screenshot of the website provided by the Internet Archive.



56.    Upon information and belief, Defendant specifically chose the US providers Namecheap and Cloudflare for the hosting and nameserver service for his website so that he could obtain US IP addresses for his website to overcome blacklist restrictions that US search engines and servers often apply to IP addresses of foreign

based piracy websites.  For example, the notorious foreign piracy websites Piratebay and rarbg are removed from US search results in US search engines.

57.    Upon information and belief, in addition to third party advertisements, Defendant also obtains financial benefit from his users in US via advertising partners he directly contracted with that specifically designed advertisements for US consumers regardless of where the visitor is located.  Even when a visitor has an adBlock on their browser activated to prevent sharing of cookies associated with the visitor and prevent the third party advertisements, Defendant's website displays advertisement from one of his direct advertising partners and a message encouraging the visitor to "disable [the adBlock], to keep this website free and alive!".  Below is a screenshot of the website as it existed previously according to the Internet Archive.



58.    For example, one such advertisement a US visitor to Defendant's website would see from one of Defendant's direct advertising partners is an advertisement for a casual dating site specifically setup to recommend a specific type of women ("ugly") in the US.  Below is a screenshot of the website as it existed previously according to the Internet Archive Wayback machine on 2/19/2015.

20-018B  19cv487



59.    This advertisement includes a photograph of a US woman and US styled English with a style profanity unique to the US.

60.    Defendant knew that his websites and actions were causing harm to Plaintiff and United States content owners.

61.    Plaintiff's counsel sent notices pursuant to 17 U.S.C. § 512(c)(3)(A) of the DMCA to Defendant's domain registrar and host provider Namecheap and nameserver provider CloudFlare.   Namecheap and CloudFlare promptly notified Defendant of the notices.

62.    Plaintiff's counsel also sent an email to Defendant on 9/5/2019 describing the harm he was causing in the United States and requesting him to cease his unlawful conduct and pay a portion of Plaintiff's damages.

20-018B  19cv487

Ripping streams and Blu-ray discs to make copies of our clients' motion pictures and torrent files and promoting and/or distributing torrent files for the purposes of infringing copyright protected material constitutes contributory copyright infringement, which is a violation of the Federal copyright statute, found at 17 U.S.C. § § 501-506. The Federal copyright statutes provide protection for copyright owners and permits the copyright owner to impound your material, recover their attorney's fees from the infringer, and seek damages of $750.00 to $150,000.00 per work, depending on the circumstances surrounding the infringement.

Please appreciate that our clients invested significant time, effort and money in making and marketing their motion pictures.  Accordingly, they request financial compensation for the damages caused by piracy websites such as the yours.

63.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) although Defendant is not a resident of the United States he may be sued in this District.   Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant or Defendant's agents resides and/or can be found in this District since personal jurisdiction is appropriate.

### III.    PARTIES

### A.   The Plaintiff

64.    The Plaintiff is a corporation organized and existing under the laws of the State of Nevada.   The Plaintiff has its principal offices in Los Angeles, California.

65.    Plaintiff is the owner of the copyright for the motion picture in the Work "*Hellboy*", (hereafter: the "Work") a major motion picture released in 2018.

66.    The Work is an action movie starring David Harbour, Milla Jovovich,

20

and Ian McShane.  The Work tells the story of a legendary half-demon superhero called to the English countryside to battle a trio of rampaging giants where he suddenly becomes caught in a clash between the supernatural and the human.

67.   The Plaintiff is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures, including, among others, *Rambo: Last Blood, The Expendables, Olympus Has Fallen* and *London Has Fallen*. *See* www.millenniumfilms.com.

## B.  The Defendant

68.   Upon information and belief, Defendant resides in Gujranwala, Pakistan.

69.   Defendant operates an interactive website mkvcage.site and previously mkvcage.fun, mkvcage.com, and mkvcage.nl (hereafter: "MKVCAGE website") which include a library of torrent files and file copies for copyright protected motion pictures, including Plaintiff's.  The torrent files can be used by a BitTorrent client application to download and reproduce file copies for free and without license.

70.   Defendant creates the torrent files and file copies made available on the MKVCAGE website.  Particularly, Defendant created the torrent files: Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv                     and Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG and distributes them from the MKVCAGE website.

20-018B  19cv487

71.     Upon information and belief, Defendant uses a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

72.     Defendant specifically chose a United States version Blue-ray disc to copy and create infringing file copies (e.g., Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv) of the Work on his website.

73.     Defendant used United States IP addresses provided by his host provider Namecheap (in Arizona) to receive a legitimate streaming copy of the motion picture from Amazon and create an infringing file copy (Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG ) of the Work.

74.     Defendant sometimes includes words such as "MkvCage.com" in the titles of the torrent files and file copies he creates in order to enhance his reputation for the quality of his torrent files and attract users to his interactive MKVCAGE website.

75.     In response to a DMCA notice and subpoena, the Registrar Namecheap has indicated that the true name of the registrant of mkvcage.fun website is Defendant Faizan and that Defendant Faizan is also the registrant for the domains mkvcage.com, mkvcage.ws, mkvcage.cc and mkvcage.me.

76.    Upon information and belief, Namecheap informed Defendant of Plaintiff's DMCA notice.    Defendant promptly moved his website from mkvcage.fun to mkvcage.com.

77.    When Defendant received notification of this litigation, he subsequently begin operating the website mkvcage.nl by using the hosting services of 1337 Services, LLC ("1337").

78.    1337 is a limited liability company organized under the laws of the Caribbean island of St. Kitts and Nevis.

79.    1337 was created by Peter Sunde Kolmisoppi.

80.    Peter Sunde Kolmisoppi was previously sentenced to prison in Sweden for his creation of the notorious movie piracy website The Pirate Bay.

81.    1337 and Mr. Sunde received notification of this litigation from Plaintiff's counsel and/or a news article discussing this litigation at the website TorrentFreak. *See* Ernesto Van der Sar, "Movie Company Links 'Notorious Copyright Thief' Peter Sunde to MKVCage Lawsuit", https://torrentfreak.com/movie-company-links-notorious-copyright-thief-peter-sunde-to-mkvcage-lawsuit/ [last accessed on 12/2/2020].

82.    Defendant subsequently ceased operating mkvcage.nl, but continues to operate the website mkvcage.site.  The mkvcage.site domain is also registered with

Namecheap, hosted by Namecheap and uses the nameserver services of CloudFlare and has exactly the same design and layout.

83.     Upon information and belief, the individuals DOES 1-35 are users of the interactive website of Defendant.

84.     The DOES 1-35 include members of two groups of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: 0550544E834856FC1F012A567388F0307CD8A61A (the "First Unique Hash Number") for DOES 1-6 and 30-35 and the file name is Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv;     and     SHA1: 18031E80B3360664B3641E1B7952172740AD5A63 (the "Second Unique Hash Number") for DOES 7-29 and the file name is Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG.

## IV.     FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyright to the Work

85.     The Plaintiff is the owner of the copyright in the Work.  The Work is the subject of a copyright registration, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "2".

24

20-018B  19cv487

86.    The Work is a motion picture currently offered for sale in commerce. A Blu-ray copy of the Work is currently available for sale at a retailer in Kailua Kona, Hawaii for $15.95.



87.    Defendant had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

88.    Defendant also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendant Used BitTorrent To Infringe the Plaintiff's Copyright

89.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

90.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In

25

short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. DOES 1-35 installed a BitTorrent Client onto his or her Computer.

91.    A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

92.    Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

93.    DOES 1-35 installed a BitTorrent Client onto their respective computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

94.    A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

95.    The Client takes the target computer file, the "initial seed," here the

copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

96.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

97.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

98.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

99.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

100.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the

computers.

101.  Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

102.  Defendant was the initial seeder who created the torrent files and file copies of the Work.

### 3. Torrent Sites

103.  "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including those of Defendant Faizan.

104.  Upon information and belief, DOES 1-35 went to the torrent site of Defendant to download Plaintiff's copyrighted Work.  Particularly, the torrent files downloaded by DOES 1-35 were created by Defendant and made available by Defendant on his MKVCAGE website.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

105.  Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

106.  The BitTorrent protocol causes the initial seeder's computer to send

different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

107.   Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

108.   In this way, all of the peers and seeders are working together in what is called a "swarm."

109.   Here, DOES 1-35 (through each of their respective groups) participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

110.   In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

111.   Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

20-018B  19cv487

### 5. The Plaintiff's Computer Investigator Identified the DOE 1-35's IP Addresses as Participants in Swarms That Were Distributing the Plaintiff's Copyrighted Work

112.  The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

113.  MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

114.  MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

115.  The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show that DOES 1-35 have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Numbers.

116.  The DOES 1-35's computers used the identified IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash

20-018B  19cv487

Number.

117.   MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

118.   MEU's agent viewed the works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

119.   MEU's agent logged 8555 instances of infringing transactions in the United States and 38567 infringing transactions worldwide with the Unique Hash Number  0550544E834856FC1F012A567388F0307CD8A61A  shown  in  Exhibit "1" as of September 1, 2019.

120.   MEU's agent logged 8387 instances of infringing transactions in the United States and 66476 infringing transactions worldwide with the Unique Hash Number  18031E80B3360664B3641E1B7952172740AD5A63  shown  in  Exhibit "1" as of September 1, 2019.

### C. Defendant is the initial Seeder of the Work

121.   Defendant was the initial seeder who copied the Work, created the torrent    files    Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv    and Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG and distributed them via the MKVCAGE websites.

31

122.   Defendant seeded copies of the Work from computing devices under his control and also under his username on other notorious movie piracy sites such as ETTV and 1337x.   Defendant has an account with 1337x under the name "MkvCage" having an account status of "Vip Uploader".



123.   Accordingly, Defendant is the initial contributor and creator of the Swarms identified by the Unique Hash Numbers.

124.   Defendant did not and does not have a license from Plaintiff to copy Plaintiff's Work.

**D. Defendant distributes the torrent files of the Work**

20-018B  19cv487

125.    Defendant    has    made    the    torrent    files Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv, Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG                    and Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv available to users in Hawaii such as DOES 1-35, the United States and the entire World to download from the MKVCage website and other notorious movie piracy sites such as ETTV and 1337x.

126.    Defendant also made available the files Hellboy (2019) 720p BRRip HEVC 750MB ; Hellboy (2019) 1080p BRRip 6CH 2.3GB ; Hellboy (2019) 720p BRRip 1.1GB ; Hellboy (2019) 1080p AMZN WEB-DL 6CH 2.2GB ; Hellboy (2019) 1080p WEB-DL 6CH 2GB ; Hellboy (2019) 720p WEB-DL 950MB ; Hellboy (2019) 720p HC HDRip 950MB available to users in Hawaii such as DOES 1-35, the United States and the entire World to download from the MKVCage website and other notorious movie piracy sites such as ETTV and 1337x.

127.    Defendant uploaded the file "Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv" to the website ibit.uno of 1337 in early July of 2019 where the torrent file can be downloaded.  Defendant used his profile "mkvcage" when uploading the file in order to maintain brand awareness of the quality of his torrent files.



128.   The website ibit.uno is hosted on an IP address associated with CloudFlare at a server in California.



129.   Defendant did not and does not have a license from Plaintiff to distribute copies of Plaintiff's Work.

130.   As of Sept. 6, 2019 and the date of the infringements, Defendant does not have a DMCA agent as required by the DMCA to assert safe harbor.

### E. Defendant induces infringements of the Work

131.   Users of the Defendant's interactive websites such as DOES 1-35 use the websites for their intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiff's Copyrighted Work.

132.   Defendant promotes his websites for overwhelmingly, if not exclusively, infringing purposes, and that is how the users use the websites.

133.   The commercial value of Defendant's websites depend on high-volume use of unauthorized content through the websites. Defendant promises his users reliable and convenient access to all the content they can watch and users visit the websites based on Defendant's apparent success in delivering infringing content to his customers.

### F. Defendant misrepresents the legality of the torrent files he distributes.

134.   Defendant promotes and/or advertises his MKVCAGE website commercially in interstate commerce.

135.   Defendant has distributed torrent files of the Work in interstate commerce from his MKVCAGE website.

136.   Defendant's website includes misleading statements and/or false descriptions that misrepresent the nature, characteristics, and qualities of the torrent files he distributes.

20-018B  19cv487

137.   Particularly, Defendant's statements that the torrent files can be used to watch Plaintiff's Work misrepresents the illegal nature of the torrent files he distributes.

138.   Particularly, Defendant's omission that using the torrent files he distributes as promoted would subject the user to liability for copyright infringement misrepresents the illegal nature of his torrent files.

139.   Defendant advertises, promotes, markets and distributes torrent files on his MKVCAGE website for the purpose of watching free movies.

140.   Defendant advertised, promoted, marketed and distributed his torrent files on the social media website FACEBOOK under the username MKCAGE for the purpose of watching free movies until approximately September of 2019.

141.   Defendant advertises, promotes, markets and distributes his torrent files on the social media website REDDIT for the purpose of watching free movies.

142.   Defendant advertises, promotes, markets and distributes his torrent files on the social media website TWITTER under the handle @Mkvcage for the purpose of watching free movies.

143.   Defendant advertises, promotes, markets and distributes his torrent files on the social media website INSTAGRAM under the handle @Mkvcage for the purpose of watching free movies.



144.   Accordingly, Defendant has made and distributed in interstate commerce and in this District, commercial advertising or promotions that contains false or misleading representations of fact.

145.   Defendant has not obtained a license from Plaintiff or, upon information or belief, any Copyright holders to publicly perform or distribute their motion pictures.

146.   Defendant does not mention the illegality of the torrent files in his promotional language of his MKVCAGE website.

147.   Defendant has gone to great lengths to conceal himself from the public, including by using a privacy service to conceal his contact information in connection with registering and hosting his websites.

148.   Consumers are likely to be misled and deceived into believing the torrent files of Defendant can be legally used for viewing Copyrighted motion

20-018B  19cv487

pictures by the promotional language on Defendant's MKVCAGE website.

149.   Defendant's false and misleading promotions of his torrent files are designed to entice consumers to use Defendant's MKVCAGE website for viewing motion pictures rather than retailers, distributors or streaming services licensed by Plaintiff.

150.   Because Defendant does not pay for a license to distribute or copy any motion pictures, he can distribute the torrent files for nothing while profiting from advertisements on his websites and donations.   In this way, Defendant entices consumers who would otherwise pay to own and/or watch Plaintiff's Work on a legitimate platform.   In doing so, Defendant wrongfully misleads and deceives consumers into believing that they are using a legitimate platform to watch and/or copy Plaintiff's Work, when in fact consumers are putting themselves at risk for criminal and civil penalties for Copyright Infringement.

151.   Defendant benefits financially from the infringement of the Work by the Hawaii users of his torrent files.

152.   Plaintiff is informed and believes that Defendant's wrongful conduct has resulted in increased traffic to his websites while hindering the sale of Plaintiff's Work through legitimate distribution channels.   Plaintiff has sustained and will sustain damages as a result of Defendant's wrongful conduct.

20-018B  19cv487

## V. FIRST CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Intentional Inducement)

153.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

154.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

155.   Defendant had actual knowledge of third parties' infringement of Plaintiff's exclusive rights under the Copyright Act.

156.   Defendant intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly distribute copies of its Copyrighted Work.

157.   As intended and encouraged by Defendant, his websites provide torrent files that connect users to Torrent sources and/or sites that deliver copies of Plaintiff's Copyrighted Work.  The operators of these Torrent sources directly infringe Plaintiff's exclusive rights by providing unauthorized copies of the work to the public, including to users of Defendant's websites.

158.   Once the user of Defendant's websites have obtained a complete copy of the Plaintiff's Copyrighted Work, that particular user also becomes another Torrent source that delivers copies of Plaintiff's Copyrighted Work.

159.   Defendant induces the aforementioned acts of infringement by supplying the torrent file that facilitates, enables, and creates direct links between

40

their users and the infringing Torrent source, providing file copies of the Work for blatant infringement and by actively inducing, encouraging and promoting the use of his websites for blatant copyright infringement.

160.   Defendant's intentional inducement of the infringement of Plaintiff's rights in its Copyrighted Work constitutes a separate and distinct act of infringement.

161.   Defendant's inducement of the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

162.   Defendant's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

## VI. SECOND CLAIM FOR RELIEF
**(Contributory Copyright Infringement based upon Material Contribution)**

163.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

164.   Defendant had actual or constructive knowledge of infringement of Plaintiff's exclusive rights under the Copyright Act.  Defendant knowingly and materially contributes to such infringing activity.

165.   Defendant knowingly and materially contributes to the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to distribute the Work. Defendant designs and promotes his websites to provide torrent files that connect customers to unauthorized online

41

torrent sources to download copies of Plaintiff's Copyrighted Work.  The operators of these torrent sources directly infringe Plaintiff's distribution rights by providing copies of the Work to the public, including to website users. The operators, or others operating in concert with them, control the facilities and equipment used to store and deliver copies of the content, and they actively and directly cause the content to be distributed when users run the torrent file obtained from the website.

166.   Defendant knowingly and materially contributes to the aforementioned acts of infringement by supplying the website that facilitates, encourages, enables, and creates direct links between website users, infringing operators of the torrent services, and file copies provided by Defendant, and by actively encouraging, promoting, and contributing to the use of the website for blatant copyright infringement.

167.   Defendant's knowing and material contribution to the infringement of Plaintiff's rights in the Copyrighted Work constitutes a separate and distinct act of infringement.

168.   Defendant's knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

169.   As a direct and proximate result of the infringement to which Defendant knowingly and materially contributes, Plaintiff is entitled to damages of at least

42

$270,902.58 and Defendant's profits in amounts to be proven at trial.

170.   Defendant obtained a direct financial interest, financial advantage, and/or economic consideration from the infringements in Hawaii as a result of his infringing actions in the United States.

171.   Defendant's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

## VII. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

172.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

173.   By participating in the BitTorrent swarms with others such as DOES 1-35, Defendant induced, caused or materially contributed to the infringing conduct of others.

174.   Plaintiff did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of others.

175.   Defendant knew or should have known that the other BitTorrent users in a swarm with him were directly infringing the Plaintiff's Copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendant directly participated in and therefore materially contributed to others' infringing activities.

43

176.    The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

177.    By engaging in the contributory infringement alleged in this Complaint, the Defendant deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant's misconduct therefore offends public policy.

178.    The Plaintiff has suffered damages of $270,902.58 in the United States that were proximately caused by the Defendant's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. FOURTH CLAIM FOR RELIEF
### (Direct Copyright Infringement)

179.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

180.    Plaintiff is the copyright owner of the Work which contains an original work of authorship.

181.    Defendant copied the constituent elements of the Work when creating the torrent files and file copies of the Work in violation of Plaintiff's exclusive rights

44

20-018B  19cv487

to reproduce the Work in copies provided by17 U.S.C. §§ 106(1) and 501.

182. Defendant ordered a United States version Blue-ray disc from a United States retailer, bypassed the technical measures put in place on the Blue-ray disc to prevent copying and created the infringing file copy (e.g., Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv) of the Work.

183. Defendant used United States IP addresses provided by his host provider Namecheap (in Arizona) to purchase a legitimate streaming copy of the motion picture from the US provider Amazon.com at the time that geographic restrictions prevented Plaintiff's Work from being publicly performed (streamed) in Pakistan.

184. Defendant created an infringing file copy (Hellboy.2019.1080p.AMZN.WEBRip.DDP5.1.x264-NTG ) of the Work from this streaming copy.

185. Defendant distributed the file copies of the Work in violation of Plaintiff's exclusive rights to distribute copies of the Work provided by 17 U.S.C. §§ 106(3) and 501.

186. Defendant made these torrent files and file copies of the Work available for download on his websites and websites of others such as 1337x.to and ibit.uno.

187.   Defendant distributed pieces of the Work via the BitTorrent protocol to 35 individuals in Hawaii and 16,942 individuals in the United States.

188.   Plaintiff did not authorize, permit, or provide consent to Defendant to copy, reproduce, redistribute, perform, or display its Work.

189.   Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

190.   The Plaintiff has suffered damages that were proximately caused by the Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter a permanent injunction enjoining Defendant from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that, Namecheap, Cloudflare and any other service provider cease providing service for the websites: (i) mkvcage.com and mkvcage.site; and (ii) any mirror websites in concert with mkvcage.com and mkvcage.site such as, but not limited to mkvcage.ws and mkvcage.cc;

(C) enter that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any Internet search engines, ISP, Web

46

hosts, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendant engages in the aforementioned infringements;

(D) award the Plaintiff's actual damages of $270,902.58 and Defendant's profits in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, December 2, 2020.


CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
HB Productions, Inc.

20-018B  19cv487