IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HB PRODUCTIONS, INC., | ) | CIVIL NO. 19-00487 JMS-KJM |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO DENY |
| vs. | ) | PLAINTIFF'S MOTION FOR |
| | ) | DEFAULT JUDGMENT AGAINST |
| MUHAMMAD FAIZAN, | ) | DEFENDANT MUHAMMAD |
| | ) | FAIZAN |
| Defendant. | ) | |
| | ) | |

FINDINGS AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT AGAINST DEFENDANT MUHAMMAD FAIZAN

On January 27, 2022, Plaintiff HB Productions, Inc. ("Plaintiff") filed a

Motion for Default Judgment Against Defendant Muhammad Faizan ("Motion").

ECF No. 75.  The Court elects to decide this matter without a hearing pursuant to

Rule 7.1(c) of the Local Rules of Practice for the United States District Court for

the District of Hawaii.  After carefully considering the Motion, applicable law, and

the record in this case, the Court FINDS AND RECOMMENDS that the district

court DENY the Motion.

BACKGROUND

I.      Plaintiff's Claims of Copyright Infringement and the Motion

This case arises from claims that Defendant, a resident of Pakistan, allegedly

copied, created, and distributed file copies of the motion picture, *Hellboy* (the

"Work"), on Defendant's website, mkvcage.site ("MKV Website").[1]  Plaintiff alleges that it owns the copyright to the Work.  ECF No. 64 at 20 ¶ 65.  Plaintiff asserts claims against Defendant for direct and contributory copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. ("Copyright Act"). Plaintiff alleges that due to Defendant's violations of the Copyright Act, Plaintiff suffered $270,902.58 in damages.  *Id.* at 2 ¶ 2, 42–43 ¶ 169, 44 ¶ 178.

On September 9, 2019, Plaintiff filed a Complaint against, among others, Defendant.  ECF No. 1.  Plaintiff subsequently filed two amended complaints against Defendant only.  ECF Nos. 40, 64.  Defendant was served with the Second Amended Complaint on December 2, 2020.  ECF No. 65.  On January 14, 2022, Plaintiff requested that the Clerk of Court ("Clerk") enter default against Defendant for failure to appear or otherwise defend.  ECF No. 73.  On January 19, 2022, the Clerk entered default.  ECF No. 74.

On January 27, 2022, Plaintiff filed this Motion, seeking an award of $150,000 in statutory damages, $23,895 in attorney's fees, $1,059.27 in Hawaii General Excise Tax, and $4,714 in taxable costs as final judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).  ECF No. 75.  Plaintiff attached a Declaration of Counsel in support of the Motion.  ECF No. 75-2.  Plaintiff served

---

[1]  Before the MKV Website, Defendant operated under "mkvcage.nl," "mkvcage.fun," and "mkvcage.com."  *See* ECF No. 64 at 3 ¶ 10, 21 ¶ 69.

the Motion on Defendant by airmail on January 27, 2022.  ECF No. 75-9.

Defendant did not file an opposition or otherwise respond to the Motion.

II.     Plaintiff's Prior Motions for Entry of Default Judgment

Prior to filing the Second Amended Complaint and this Motion, Plaintiff

sought entry of default judgment three times.  In the first two instances, this Court

found that Plaintiff failed to establish that its claims against Defendant were "sum

certain" as required by Rule 55(b)(1) and recommended that the district court deny

Plaintiff's requests.[2]  *See* ECF Nos. 46, 52.  In the third instance, this Court found

that it lacks personal jurisdiction over Defendant and recommended that the district

court deny Plaintiff's request ("09/28/2020 Findings and Recommendation").  ECF

No. 58.

With guidance from *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th

Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021), the district court analyzed Plaintiff's

allegations and concluded that "Plaintiff failed to demonstrate that Defendant's

activities were expressly aimed at the United States or Hawaii."  Consequently,

"Plaintiff failed to show that Defendant's contacts are sufficient to invoke

nationwide jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) . . . ."

ECF No. 60 at 18.

---

[2]  After this Court issued its findings and recommendation as to the first motion for
default judgment and before the district court could consider it, Plaintiff withdrew
its first motion for default judgment and filed its second motion for default
judgment.  *See* ECF Nos. 47–49.

In *AMA Multimedia*, the Ninth Circuit determined that the plaintiff could not show that the operator of an internationally accessible website expressly aimed his suit-related conduct at the United States.  970 F.3d at 1215.  The Ninth Circuit thus affirmed the district court's dismissal of the plaintiff's copyright infringement claims for lack of personal jurisdiction.  *Id*. at 1204.  The district court acknowledged that *AMA Multimedia* was issued after Plaintiff filed the First Amended Complaint.  The district court thus granted Plaintiff leave to file a Second Amended Complaint "to attempt to allege facts sufficient to comply with [*AMA Multimedia*'s] newer guidance on express aiming."  ECF No. 60 at 18.

Plaintiff then filed a Motion for Certificate of Appealability and Stay of Proceedings, which it later withdrew.  *See* ECF Nos. 61, 62.  The district court subsequently directed Plaintiff to either:  "(1) amend its pleading; or (2) file a statement that it would not amend its pleading, at which time the district court [would] dismiss the action and enter judgment."  ECF No. 63.  Plaintiff filed the Second Amended Complaint.  ECF No. 64.

The Court held a status conference and ordered that this matter be stayed and administratively closed pending the appeal of another copyright infringement case in this district, *42 Ventures, LLC v. Rend*, Civil No. 20-00228 DKW-WRP.  The district court in *42 Ventures* declined to find express aiming under facts similar to

4

this matter.  The defendants in *42 Ventures* allegedly operate websites accessible

worldwide and engage in a range of United States-based website activity, such as:

"(1) posting United States-produced content to their sites and applications;

(2) contracting with United States-based web-and application-service providers

and employing a United States-based payment provider to carry on business with

those companies; and (3) collecting user data and using user and location data to

target content and advertisements."  *42 Ventures*, Case No. 20-cv-00228-DKW-

WRP, 2020 WL 6257069, at *4 (D. Haw. Oct. 23, 2020).

The district court reasoned that "[l]ike the content at issue in [*AMA

Multimedia*], the market for United States-produced movies is 'global.'"  *Id*. (citing

*AMA Multimedia*, F.3d at 1210); *see also id*. n.4 (citation omitted) ("Today, nearly

70 percent of Hollywood box office revenue comes from abroad, up from just over

30 percent in 1991.").  The district court, furthermore, found that the defendants'

use of United States-based companies for domain name registration and United

States-based server companies and application stores to host and/or distribute their

websites and applications does not constitute express aiming at the United States.

These United States-based companies, too, have global reach.  *Id*. at *5.  The

district court thus determined that the plaintiff failed to show that the defendants

selected these United States-based companies to expressly target the United States.

*Id*.  Based on the foregoing, the district court concluded that it lacked personal

jurisdiction over the defendants.  The plaintiff appealed the district court's decision to the Ninth Circuit.

In an unpublished memorandum, the Ninth Circuit determined that on the facts pleaded in *42 Ventures* the district court lacked personal jurisdiction.  *42 Ventures, LLC v. Mav*, No. 20-17305, 2021 WL 5985018, at *1 (9th Cir. Dec. 16, 2021).  The Ninth Circuit added, however, that "because 42 Ventures could plead jurisdictional facts that might save its Complaint, the district court erred in dismissing the Complaint without granting leave to amend."  *Id.* (citing *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016)).

Accordingly, 42 Ventures filed a second amended complaint.  *42 Ventures*, Civil No. 20-00228 DKW-WRP, ECF No. 43.  In the interim, this Court ordered that the stay in this matter be lifted and the case reopened.  ECF No. 72.  Plaintiff's Motion followed.

## DISCUSSION

### I.    Legal Standard

The court has discretion to grant or deny a motion for default judgment. *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986) (citation omitted).  Default judgments are ordinarily disfavored and cases should be decided on their merits if reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470,

1472 (9th Cir. 1986).  Courts may consider the following factors in deciding whether to grant a motion for default judgement (collectively, "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel*, 782 F.2d at 1471–72).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).  Likewise, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## II.    Jurisdiction

Before considering the merits of a motion for default judgment, the Court has an affirmative obligation to determine whether it has subject-matter jurisdiction over this action and personal jurisdiction over Defendant.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has

7

the power, i.e., the jurisdiction, to enter the judgment in the first place."). The Court has subject-matter jurisdiction over the claims in the Second Amended Complaint pursuant to 28 U.S.C. §§ 1331, 1338, and the Copyright Act. *See* ECF No. 64 at 2 ¶ 3. The Court finds, however, that it lacks personal jurisdiction over Defendant for the reasons set forth below.

Plaintiff contends that the Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2), the "federal long-arm statute." *See* ECF No. 75-1 at 13. Application of Rule 4(k)(2) requires (1) that the claim against the defendant must arise under federal law, (2) that the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction, and (3) that the federal court's exercise of personal jurisdiction must comport with due process. *AMA Multimedia*, 970 F.3d at 1208 (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)). Here, the first two requirements are satisfied. Plaintiff's claims arise under federal law and Defendant, a Pakistan resident, is not subject to the jurisdiction of any state court of general jurisdiction. Fed. R. Civ. P. 4(k)(2)(A). ECF No. 64 at 21 ¶ 68. The Court thus focuses on the third requirement, whether exercising personal jurisdiction over Defendant comports with due process.

"A district court's exercise of jurisdiction over a nonresident defendant comports with due process when the defendant has at least 'minimum contacts'

8

with the forum and subjecting the defendant to an action in that forum would 'not offend traditional notions of fair play and substantial justice.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citation and quotation marks omitted) (quoting *Int'l. Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  Such minimum contacts can give rise to either general or specific jurisdiction.  *Ayla*, 11 F.4th at 979 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)).

Specific jurisdiction exists over an out-of-forum defendant if the following are met:  (1) the defendant "performed some act or consummated some transaction" by "purposefully direct[ing] its activit[ies]" toward the United States or by "purposefully avail[ing] itself of the privilege of conducting business" in the United States; (2) plaintiff's claims "arise out of or result from" defendant's "forum-related activities"; and (3) the exercise of jurisdiction is reasonable.  *Id.* (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019–20 (9th Cir. 2002)).  The plaintiff bears the burden of establishing the first two prongs.  *Id.* (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).  If the plaintiff does not satisfy either prong, "personal jurisdiction is not established in the forum State."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Under the first prong of this minimum contacts test, Plaintiff must establish that Defendant either purposefully availed himself of the privilege of conducting activities in the United States, *or* purposefully directed his activities toward the United States.  The due process analysis under Rule 4(k)(2) "is nearly identical to traditional personal jurisdiction analysis . . . [but] rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Ayla*, 11 F.4th at 979 (quoting *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (brackets and ellipses in *Ayla*); *see also Pebble Beach*, 453 F.3d at 1158 ("Th[e] ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2).").

Furthermore, while "[a] purposeful availment analysis is most often used in suits sounding in contract. . . . [a] purposeful direction analysis . . . is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (first citing *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001), then citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *cf. Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995) (noting that the Ninth Circuit applies "different purposeful availment tests to contract and tort cases")).  "Trademark infringement is treated as tort-like for personal jurisdiction purposes, and so we focus on

purposeful direction . . . ."  *Ayla*, 11 F.4th at 979 (citing *AMA Multimedia*, 970 F.3d at 1208).

Plaintiff asserts that Defendant has sufficient minimum contacts with the United States such that the maintenance of this suit does not offend due process. ECF No. 75-1 at 13.  Purposeful direction being the appropriate analysis in copyright infringement cases notwithstanding, Plaintiff argues that Defendant's alleged conduct constitutes both purposeful direction *and* purposeful availment. ECF No. 75-1 at 14–15.  The Court first addresses purposeful direction.

The test to establish purposeful direction, the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984).  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citing *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)).  Under the effects test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.* (citing *Wash. Shoe*, 704 F.3d at 673).

A.     Intentional Act

For purposes of jurisdiction under the effects test, a defendant acts intentionally when he acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *AMA Multimedia*, 970 F.3d at 1209 (quoting *Schwarzenegger*, 374 F.3d at 806

(quoting Restatement (Second) of Torts § 2 & cmt. c (1965) ("Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger and not the impingement of the bullet upon the other's person.")).  This specialized meaning of "intentional act" under the effects test is "not to be confused with an allegation that a defendant acted willfully for purposes of copyright infringement."  *Schwarzenegger*, 374 F.3d at 806; *Amini Innovation Corp. v. Bank & Est. Liquidators Inc.*, Case No. CV 13-7012 PSG (JEMx), 2013 WL 12142568, at *4 (C.D. Cal. Dec. 30, 2013) (citing *Wash. Shoe*, 704 F.3d at 673–74).

Here, Plaintiff alleges that Defendant operates the MKV Website.  ECF No. 64 at 21 ¶ 69.  Specific to that operation, Plaintiff alleges that Defendant creates torrent files and file copies—including those for the Work—and makes them available on the MKV Website.  *Id.* at ¶ 70, 28 ¶ 102.  Plaintiff alleges that Defendant set up the MKV Website as follows:  Defendant registered the MKV Website with the domain name registrar and host provider, Namecheap; Defendant uses a nameserver, CloudFlare; Defendant paid Namecheap via PayPal for domain name registration; Defendant uses Google for the MKV Website email; and Defendant is on social media platforms, Twitter, Instagram, and Reddit.  *Id.* at 9–10 ¶ 28.

As stated, Plaintiff obtained an entry of default on January 14, 2022.  ECF No. 73.  Given the entry of default, the Court must accept the factual allegations in the Second Amended Complaint as true, except those relating to the amount of damages.  *TeleVideo Sys., Inc*., 826 F.2d at 917–18 (quoting *Geddes*, 559 F.2d at 560).  Accepting as true Plaintiff's factual allegations, the Court finds that Defendant's act of operating the MKV Website is an intentional act which satisfies the first prong of the effects test.  *See AMA Multimedia*, 970 F.3d at 1209 (finding that operating a website, registering proxy domains, and purchasing secondary DNS services fulfills the intentional act requirement); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (citing *Rio Props*., 284 F.3d at 1020) (finding that operating a passive website was an intentional act).

B.      Express Aiming at the Forum

The second element of the effects test, whether an action is expressly aimed at the forum, requires the Court to consider two factors relating to Defendant's contacts with the forum that he himself creates—not with persons who reside there:

(1) First, the relationship must arise out of contacts that the defendant himself creates with the forum . . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.

(2) Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (quoting *Walden*

*v. Fiore*, 571 U.S. 277, 284–85 (2014)).

Express aiming at the forum, in other words, "requires more than the

defendant's awareness that the plaintiff it is alleged to have harmed resides in or

has strong ties to the forum, because 'the plaintiff cannot be the only link between

the defendant and the forum.'" *Ayla*, 11 F.4th at 980 (quoting *Walden*, 571 U.S. at

285). "[S]omething more—conduct directly targeting the forum—is required to

confer personal jurisdiction." *Id*. (internal quotation marks omitted) (quoting

*Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1229 (9th Cir. 2011)).

Courts have determined that doing "something more" may include factors such as

"the interactivity of the defendant's website" or "the geographic scope of the

defendant's commercial ambitions . . . ." *Mavrix Photo*, 647 F.3d at 1229

(citations omitted); *see also Ayla*, 11 F.4th at 980–83 (analyzing the defendant

business entity's connections with the forum through advertising, volume of sales,

contractual relationships in the forum, distribution of the product, and "benefits afforded by the country's regulatory regime").

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State . . . ." *Walden*, 571 U.S. at 286 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  It is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." *Id.* (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 475).  In fact, *Walden* requires the Court to focus on Defendant's "intentional conduct that is aimed at, and creates the necessary contacts with, the forum state." *AMA Multimedia*, 970 F.3d at 1209 n.5 (citing *Axiom*, 874 F.3d at 168–69).  Accordingly, the Court must determine whether Plaintiff has shown that Defendant expressly targeted his intentional act—of operating the MKV Website—at the United States.

This Court carefully reviewed the Second Amended Complaint.  Despite the opportunity from the district court to allege facts consistent with *AMA Multimedia*'s updated guidance on express aiming, the Court, nonetheless, finds that Plaintiff's amended allegations do not show that Defendant's intentional act expressly targets the United States sufficient to invoke Rule 4(k)(2)'s reach.  The Court reviews Plaintiff's attempts to establish that either:  (1) Defendant's tortious conduct occurred within the United States; or (2) Defendant's out-of-forum

tortious conduct was purposefully directed at the United States. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 604–06 (9th Cir. 2018).

        1.     Alleged Tortious Conduct Occurring in the United States

Plaintiff alleges that Defendant's tortious conduct took place in the United States because Defendant ordered a United States version Blu-ray of the Work from a United States retailer "and created the infringing file copy." ECF No. 64 at 45 ¶ 182. Defendant also purchased a legitimate streaming copy of the work from Amazon.com using United States IP addresses provided by Namecheap, located in Arizona. *Id*. at ¶ 183. The Court finds that these allegations do not demonstrate express aiming at the United States. The allegations merely describe Defendant's "random, fortuitous, or attenuated contacts" with the United States. *Walden*, 571 U.S. at 286 (citing *Burger King*, 471 U.S. at 475). In fact, all these allegations show is that Defendant legitimately purchased the Work—twice.

        2.     Alleged Tortious Conduct Occurring Outside of the United States

Plaintiff further asserts that Defendant's tortious conduct that occurred outside of the United States purposefully targeted the United States market. ECF No. 75-1 at 15. Plaintiff's allegations relate to features of the MKV Website and how Defendant expressly aimed these features at the United States market. The Court addresses the alleged features in turn below.

a.   Promotion of Content Which Is Allegedly Popular in the United States Market

Plaintiff alleges that Defendant's website promotes movies and television series that are "mostly popular to the US audience" and which are "uniquely oriented to and popular in the US market."  ECF No. 64 at 14 ¶ 46.  Plaintiff alleges that the United States is the second highest source of traffic to the MKV Website to distribute United States copyright-protected content.  *Id*. at 8 ¶ 25, 9 at ¶ 27.  Plaintiff alleges that of the more than nine million visitors to the MKV Website, nearly one million originated from the United States.  *Id*. at 8 ¶ 26.  This alone, however, does not show express aiming at the United States.

The Court finds, as did the Ninth Circuit, that United States copyright-protected content and Hollywood films, the kind of content Defendant makes available on the MKV Website, have global appeal.  *AMA Multimedia*, 970 F.3d at 1210.  Eight million visitors to the MKV Website originated outside the United States.  Also, the allegation that the United States provides the second highest source of traffic to the MKV Website does not mean that Defendant aimed his content at the United States.

In fact, based on Plaintiff's allegations, the Court finds that Defendant operates a passive website that offers content like the Work, over which Defendant "has no control over the ultimate distribution . . . ."  *Ayla*, 11 F.4th at 981.  "[A]n 'interactive' website may provide sufficient contacts depending on the 'level of

17

interactivity and commercial nature of the exchange of information that occurs on the website.'" *Blizzard Ent., Inc. v. Joyfun Inc.*, Case No. SACV 19-1582 JVS (DFMx), 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) (quoting *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 418 (9th Cir. 1997)).  By contrast, where a "website is passive—i.e., does not directly engage in financial transactions with those who access it—to show the website's activity was 'expressly aimed' at the forum, there must be a showing of 'something more,' i.e., 'conduct directly targeting the forum.'" *42 Ventures*, 2020 WL 6257069, at *3  (quoting *Mavrix*, 647 F.3d at 1229).

For example, Plaintiff's allegations describe passive activity set up by Defendant on the MKV Website, rather than actions by Defendant specifically targeting the United States.  Plaintiff alleges that Defendant attempts to "attract users" and the MKV Website "collects log files," "uses cookies and web beacons to store information such as personal preferences . . . ."  ECF No. 64 at 3–4 ¶¶ 12–15, 22 ¶ 74.  The torrent files that Defendant "made available" "can be used by a BitTorrent client application to download and reproduce file copies for free and without license" "by people using the BitTorrent protocol.  *Id*. at 21, ¶¶ 69, 70; *see also id*. at 28 ¶ 103.  None of this activity is conduct directly targeting the United States.

b.     Solicitation of Donations

Plaintiff alleges that Defendant selected a United States bank account through PayPal "so that US users could seamlessly send donations in US dollars from US Paypal accounts without incurring burdensome foreign conversion fees. That is, Defendant particularly targeted US Paypal users for donations." *Id*. at 16–17 ¶ 54. The alleged "interactivity" of the MKV Website, however, does not generate commercial transactions, only the possibility for the MKV Website to passively accept donations. Moreover, the Court finds that Plaintiff does not sufficiently allege that Defendant's solicitations for donations specifically target Americans. *Ayla*, 11 F.4th at 980.

c.     Geolocated Advertising

To generate revenue from the MKV Website, Plaintiff alleges that Defendant "uses the cookies, log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user. Particularly, users in Hawaii receive advertisements based upon their location and websites they have previously visited." *Id*. at 4 ¶ 15. At the same time, Plaintiff alleges that Defendant uses "advertising partners he directly contracted with that specifically designed advertisements for US consumers regardless of where the visitor is located." *Id*. at 18 at ¶ 57. Plaintiff's allegations include, as an example, "an advertisement for a casual dating site specifically setup to recommend a specific

19

type of women ('ugly') in the US." *Id.* at 18–19 ¶ 58.  The Court must accept as true the allegations that Defendant enlisted both types of advertising that appeared on the MKV Website—geo-located advertisements and "specifically designed advertisements."  *Id.* at 18 at ¶ 57.

The Ninth Circuit, however, rejected the claim that such geo-located advertising tailors, and thus expressly aims, content at the United States.  *AMA Multimedia*, 970 F.3d at 1211.  Plaintiff does not establish that Defendant "personally control[s] the advertisements shown on the site . . . ."  *Id.*  Moreover, the advertising example alleged by Plaintiff does not contain any "references explicitly aimed at Americans."  *Ayla*, 11 F.4th at 980.

> d.  United States-Based Providers

Plaintiff also alleges that Defendant specifically chose United States-based providers, Namecheap and Cloudflare, for the MKV Website "to overcome blacklist restrictions that US search engines and servers often apply to IP addresses of foreign based piracy websites."  *Id.* at 17–18 ¶ 56.  The Court finds that this allegation establishes Defendant's ability to bypass restrictions that allow him to pirate the Work and offer it worldwide.  This allegation, however, fails to describe express aiming at the United States.

e.      Behavior After Notification of Lawsuit

Plaintiff also asserts that Defendant's behavior after being served with

process in this action is a further indication that Defendant expressly targeted the

United States market.  ECF No. 75-1 at 16.  Plaintiff alleges that once Defendant

received notice of this litigation, he began to operate "mkvcage.nl," hosted by 1337

Services, LLC.  ECF No. 64 at 23 ¶ 77.  1337 Services, LLC, is organized under

the laws of St. Kitts and Nevits in the Caribbean.  *Id*. at ¶ 78.  Defendant

subsequently ceased operating "mkvcage.nl," but continued to operate the MKV

Website through providers, Namecheap and Cloudflare.  *Id*. at 23–24 ¶ 82.  This

alleged behavior, however, does not indicate express targeting at the United States.

It also does not change this Court's initial finding that Defendant's choice of

United States providers in operating the MKV Website, without more, does not

establish direct targeting at the United States.

In sum, Plaintiff fails to establish that Defendant's intentional act of

operating the MKV Website is expressly aimed at the United States.  The Court

thus finds that Plaintiff fails to establish that Defendant purposefully directed his

actions toward the United States.  The Court also finds that Defendant's contacts

are insufficient to invoke nationwide jurisdiction under Rule 4(k)(2).  In particular,

Plaintiff fails to satisfy the first prong of the three-part minimum contacts test—

purposeful direction.  Accordingly, the Court declines to analyze whether

21

Defendant "purposefully availed" himself of the privilege of conducting activities in the United States or the remaining two prongs of the minimum contacts test. *See Cybersell*, 130 F.3d at 419–20 (declining to analyze the second and third prong of the minimum contacts test because plaintiffs failed to satisfy the "purposeful availment" prong of the three-part minimum contacts test).

## CONCLUSION

Based on the foregoing, the Court FINDS AND RECOMMENDS that the district court DENY Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan (ECF No. 75.).

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, March 29, 2022.

Kenneth J. Mansfield
United States Magistrate Judge

*HB Productions, Inc. v. Faizan*, Civil No. 19-00487 JMS-KJM; Findings and Recommendation to Deny Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan