IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HB PRODUCTIONS, INC., | ) | CIVIL NO. 19-00487 JMS-KJM |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT IN |
| vs. | ) | PART AND DENY IN PART |
| | ) | PLAINTIFF'S MOTION FOR |
| MUHAMMAD FAIZAN, | ) | DEFAULT JUDGMENT AGAINST |
| | ) | DEFENDANT MUHAMMAD |
| Defendant. | ) | FAIZAN |
| | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFF'S MOTION FOR DEFAULT
<u>JUDGMENT AGAINST DEFENDANT MUHAMMAD FAIZAN</u>

On March 29, 2022, this Court initially found that it lacks personal

jurisdiction over Defendant Muhammad Faizan ("Defendant") and recommended

that the district court deny Plaintiff HB Productions, Inc.'s ("Plaintiff") Motion for

Default Judgment Against Defendant ("Motion") ("03/29/2022 Findings and

Recommendation").  ECF No. 78 at 8, 21.

Plaintiff filed objections to this Court's 03/29/2022 Findings and

Recommendation ("Objections").  ECF No. 79.  The district court concluded that

the court has personal jurisdiction over Defendant for all claims in the Second

Amended Complaint.  Accordingly, the district court issued an order sustaining

Plaintiff's Objections, rejecting this Court's 03/29/2022 Findings and

Recommendation, and referring to this Court the remaining issues in Plaintiff's Motion ("05/13/2022 Order").  ECF No. 80 at 45.

The Court elects to decide this matter without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  After carefully considering Plaintiff's Motion, the applicable law, and the record in this case, the Court FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART the Motion.

## BACKGROUND

The 05/13/2022 Order sets forth the factual and procedural background of this matter, which this Court need not repeat except as relevant to deciding this Motion.

On January 19, 2022, the Clerk of Court ("Clerk") entered default against Defendant for failure to appear or otherwise defend.  ECF No. 74.  On January 27, 2022, Plaintiff filed this Motion and included a request for an award of $150,000 in statutory damages, $23,895 in attorneys' fees, $1,059.27 in Hawaii General Excise Tax ("GET"),[1] and $4,714 in taxable costs as final judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).  *See* ECF No. 75.  Plaintiff's counsel submitted a declaration in support of the Motion and damages sought by Plaintiff ("Culpepper Declaration").  ECF No. 75-2.  Plaintiff served the Motion on Defendant by airmail

---

[1]  The GET rate is 4.712%.

on January 27, 2022.  ECF No. 75-9.  Defendant did not file an opposition or otherwise respond to the Motion.

## DISCUSSION

Since the district court has determined that Plaintiff has established personal jurisdiction over Defendant, this Court will next consider whether default judgment is appropriate.

## I.    Legal Standard

Default judgment may be entered for the plaintiff if the defendant has defaulted by failing to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  Fed. R. Civ. P. 55(a), (b)(1). The court has discretion to grant or deny a motion for default judgment.  *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986) (citation omitted).  Default judgments are ordinarily disfavored and cases should be decided on their merits if reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  Courts may consider the following factors in deciding whether to grant a motion for default judgement (collectively, "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

3

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel*, 782 F.2d at 1471–72).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). Likewise, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

II.    *Eitel* Factors

Following the district court's conclusion that the court has subject matter jurisdiction over Plaintiff's claims and personal jurisdiction over Defendant, the Court must consider whether default judgment is appropriate under the *Eitel* factors.

A.    Possibility of Prejudice to Plaintiff

The first factor is whether Plaintiff would suffer prejudice if default judgment is not entered. Because Defendant has not appeared to defend this action on the merits, Plaintiff would be prejudiced if judgment is delayed and Plaintiff is forced to prove its claims at trial. Defendant is in default and is not defending this

4

case.  Under the circumstances, Plaintiff is entitled to a prompt decision by way of this Motion.  Accordingly, the first *Eitel* factor favors default judgment.

> B.    Merits of Plaintiff's Substantive Claims

Under the second *Eitel* factor, the Court considers the merits of Plaintiff's substantive claims.  As noted, the allegations in the Second Amended Complaint are deemed true to determine Defendant's liability.  *TeleVideo Sys., Inc.* at 917–18; *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Here, the allegations in Plaintiff's Second Amended Complaint, accepted as true, establish that Plaintiff is entitled to default judgment against Defendant on all claims.

Plaintiff has sufficiently pled claims that Defendant committed copyright infringement and contributory copyright infringement pertaining to the motion picture, *Hellboy* (the "Work").  A plaintiff asserting copyright infringement must prove two elements:  "(1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  Regarding Plaintiff's claim for copyright infringement, Plaintiff alleges:  (1) Plaintiff owns and has registered the Work, ECF No. 64 at 24 ¶ 85; (2) Defendant, who does not have a license from Plaintiff, distributes the Work by providing "immediate, unrestricted, and unauthorized access to unauthorized copies" of the Work, *id*. at 35 ¶ 129, 36

¶¶ 131–32; and (3) Plaintiff has and will be damaged by Defendant's wrongful actions, which hinder legitimate distribution of the Work. *Id*. at 39 ¶ 152.

As to Plaintiff's claim for contributory copyright infringement, the Ninth Circuit has recognized that "[o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct *of another* may be liable as a 'contributory' [copyright] infringer." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971) (some brackets *Gershwin*)). The Ninth Circuit has "interpreted the knowledge requirement for contributory copyright infringement to include both those with *actual knowledge* and those who *have reason to know* of direct infringement." *Id*. (quoting *A&M Records v. Napster, Inc*., 239 F.3d 1004, 1020 (9th Cir. 2001)).

Plaintiff alleges that by unlawfully furnishing access to unauthorized content through Defendant's websites, Defendant caused or materially contributed to the direct infringement by others of Plaintiff's copyrighted Work. *See* ECF No. 64 at 36 ¶¶ 131–33. Plaintiff also alleges that Defendant knew or should have known that other BitTorrent users were directly infringing on Plaintiff's Work. *See id*. at 43 ¶ 175. As likewise concluded by the district court, the Court finds that Plaintiff's allegations are sufficient to state a claim for direct and contributory copyright infringement. *See Ellison*, 357 F.3d at 1076 (enumerating elements of

6

copyright infringement).  Accordingly, the merits of Plaintiff's substantive claims

weigh in favor of default judgment.

> C.     Sufficiency of the Second Amended Complaint

As stated, the Court finds that Plaintiff's allegations in the Second Amended

Complaint are sufficiently pled.  Accordingly, the sufficiency of the Second

Amended Complaint weighs in favor of default judgment.

> D.     Sum of Money at Stake

For the fourth *Eitel* factor, the Court "must consider the amount of money at

stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal.

Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) (citing *Eitel*, 782 F.2d at

1471).  Plaintiff seeks $150,000 in statutory damages for willful contributory

infringements of the Work.  *See* 17 U.S.C. § 504(c)(2) (authorizing the court to

increase the award of statutory damages to a sum of not more than $150,000 for

willful infringement).  ECF No. 75-1 at 24, 26.  The Court finds that the amount of

money at stake is significant relative to the cost of continued litigation, especially

considering Defendant's location outside of the United States and Plaintiff's

alleged actual damages totaling $270,902.58.  *See* ECF No. 64 at 47 ¶ (D).  The

statutory damages Plaintiff seeks are appropriate and reflect the severity of

Defendant's willful infringement of Plaintiff's copyrighted Work, as addressed

below.  The Court thus finds that the sum of money at stake weighs in favor of default judgment.

E.    Possibility of Dispute Concerning Material Facts

The fifth factor, the possibility of dispute concerning material facts, weighs in favor of default judgment.  The Court takes the well-pled allegations of the Second Amended Complaint as true, except those relating to the amount of damages.  *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.  Defendant has not defended against Plaintiff's claims, despite having a fair opportunity to do so.  Pakistan foreign counsel has declared that Defendant was personally served with process.  *See* ECF No. 14-1 at 2.  Plaintiff has certified that it served Defendant the Second Amended Complaint via airmail.  *See* ECF No. 65 at 2.  Defendant, nonetheless, has failed to make an appearance in this action or otherwise respond to Plaintiff's claims.  Because Defendant has failed to raise any dispute regarding Plaintiff's material factual allegations, this factor favors default judgment.

F.    Whether Default Was Due to Excusable Neglect

Regarding the sixth factor, the Court finds that Defendant's default was not the result of excusable neglect.  Defendant failed to defend this action, and the Clerk entered default against him.  *See* ECF No. 74.  There is no evidence in the record indicating that Defendant's default was the result of excusable neglect.  Consequently, this factor weighs in favor of default judgment.

8

### G.    Policy Favoring Decisions on the Merits

Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("[T]he mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive.").

Defendant has failed to defend against this action and has thus rendered adjudication on the merits before this Court impracticable.  Although the policy favoring decisions on the merits generally weighs against default judgment, this factor alone does not preclude the Court from entering default judgment.  Therefore, this factor does not preclude the Court from entering default judgment against Defendant.

### H.    Totality of *Eitel* Factors

The Court finds that the totality of the *Eitel* factors weigh in favor of entering default judgment in favor of Plaintiff and against Defendant.  So, the Court considers Plaintiff's request for statutory damages, costs, and attorneys' fees.

## IV.    Remedies

Although Defendant's default establishes his liability to Plaintiff, it does not establish the amount of damages or other relief to which Plaintiff is entitled.  *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.  Plaintiff must provide evidence to

support Plaintiff's requested relief and the relief "must not differ in kind from, or

exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Plaintiff seeks the following relief: (1) statutory damages of $150,000; (2) $4,714

in costs; (3) $23,895 in attorneys' fees (plus $1,059.27 for Hawaii GET); and

(4) injunctive relief. *See* ECF No. 75 at 2. The Court addresses these requests in

turn.

     A.    Statutory Damages

"[T]he Copyright Act provides a plaintiff the option of electing either

statutory damages or actual damages." *Columbia Pictures Television, Inc. v.*

*Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citing

17 U.S.C. § 504(a)). "A plaintiff may elect statutory damages 'regardless of the

adequacy of the evidence offered as to his actual damages and the amount of the

defendant's profits.'" *Id.* (quoting Melville B. Nimmer & David Nimmer, *Nimmer*

*on Copyright*, § 14.04[A] (2000)). "If statutory damages are elected, the court has

wide discretion in determining the amount of statutory damages to be awarded,

constrained only by the specified maxima and minima." *Id*. (quoting *Peer Int'l*

*Corp. v. Pausa Records, Inc*., 909 F.2d 1332, 1336 (9th Cir. 1990)).

Statutory damages "serve both compensatory and punitive purposes" so as

"to sanction and vindicate the statutory policy of discouraging infringement." *L.A.*

*News Serv. v. Reuters Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quotation

marks omitted) (citing *Peer Int'l Corp.*, 909 F.2d at 1336). This Court is thus

guided by "what is just in the particular case, considering the nature of the

copyright, the circumstances of the infringement and the like." *Id.* (quotation

marks omitted) (citing *Peer Int'l Corp.*, 909 F.3d at 1337).

Plaintiff elects statutory damages of $150,000 in lieu of actual damages

under § 504(c)(2). Plaintiff alleges that Defendant's infringing conduct is willful.

*See* ECF No. 64 at 41 ¶ 161, 42 ¶ 168, 44 ¶ 176, 46 ¶ 189. Plaintiff's pointed

allegations of willful copyright infringement include: Defendant "directly

infringed Plaintiff's exclusive rights of reproduction and distribution in California"

by using Defendant's username to upload the file to the Work to, among others, a

California server that hosts a piracy website, *id.* at 6 ¶ 20, 32 ¶ 122; Plaintiff issued

a Digital Millennium Copyright Act ("DMCA") notice and subpoena to

Namecheap, which in turn informed Defendant, who promptly moved his website

from "mkvcage.fun" to "mkvcage.com," *id.* at 22–23 ¶¶ 75, 76, *see also* ECF No.

75-2 at 3 ¶ 6; and when Defendant received notification of this lawsuit, Defendant

created a new website, "mkvcage.nl," hosted by a completely different servicer

(1337 Services, LLC, organized under the laws of the Caribbean island of St. Kitt

and Nevis) so that Defendant could continue his infringing activities. ECF No. 64

at 23 ¶¶ 77, 78; *see also* ECF No. 75-2 at 8–9 ¶¶ 19, 22.

Plaintiff also retained copyright enforcement company, Maverickeye UG.

ECF No. 64 at 30 ¶ 112.  Using forensic software, Maverickeye UG identified

16,942 unauthorized transactions involving the Work in the United States alone.[2]

*Id*. at 30–31 ¶¶ 112–20.  Accepting these allegations as true, the Court finds that

Defendant's conduct is willful.

Plaintiff requests an award for willful violation of the Copyright Act.  The

Court finds that awarding maximum statutory damages under the Copyright Act is

appropriate to deter and punish Defendant's conduct and to compensate Plaintiff.

*See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018)

(citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 963

2005) ("In the Internet Age, such [infringement] suits 'have served as a teaching

tool, making clear that much file sharing, if done without permission, is unlawful[,]

and apparently have had a real and significant deterrent effect.'")).  The Court,

therefore, recommends that the district court award Plaintiff $150,000 in statutory

damages.

---

[2]  Plaintiff alleges that a Blu-ray copy of the Work is currently available for
$15.95.  This retail price multiplied by the number of unauthorized transactions
approximately equals the $270,902.58 in alleged actual damages.  *See* ECF No. 64
at 25 ¶ 86; *id*. at 47 ¶ (D).

B.    Costs

Turning to Plaintiff's requested costs, the Court may "allow the recovery of full costs" to a prevailing party.  17 U.S.C. § 505.  Although the Court finds and recommends that the district court grant default judgment in favor of Plaintiff, the Court finds that Plaintiff is not yet entitled to an award of its requested costs.

Costs are to be requested in a Bill of Costs, not in a motion for default judgment.[3]  *See* 28 U.S.C. § 1920 ("A judge or clerk of any court of the United States may tax as costs the following:  (1) Fees of the clerk and marshal . . . ."); LR54.1(f)(1) ("Costs are taxed in conformity with 28 U.S.C. §§ 1821, 1920–1925, and other applicable statutes, with the following clarifications:  (1) Fees for the service of process . . . by someone other than the marshal are allowable, to the extent they are reasonably required and actually incurred . . . .").  The Court, thus, recommends that the district court deny Plaintiff's request for an award of costs.

C.    Attorneys' Fees

The Court may award to the prevailing party a "reasonable attorney's fee" incurred in litigating a copyright infringement action.  17 U.S.C. § 505.  "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing

---

[3]  The Court notes that some of Plaintiff's requested costs are not recoverable under 28 U.S.C. §§ 1920 and 1821.  *See Rimini Street, Inc. v. Oracle USA, Inc*., 139 S. Ct. 873, 878 (2019) (holding that the Copyright Act does not explicitly authorize the award of litigation expenses beyond the six categories specified in §§ 1920 and 1821).

in the action: no other precondition need be met, although the fee awarded must be reasonable." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989).

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation, which multiplies the number of hours reasonably expended by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar approach has been used by district courts across the country to calculate reasonable attorneys' fee awards in cases that result in default judgments. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 n.4 (9th Cir. 2018) (other citations omitted) (citing *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1143–44 (N.D. Cal. 2016) (applying the lodestar approach to determine reasonable attorneys' fees in a case in which the defendant failed to defend itself)).

The court may adjust the "presumptively reasonable" lodestar calculation based on an evaluation of the "reasonableness" factors articulated in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992), that are not already subsumed in the lodestar. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (citing *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). "The court need not consider all . . . factors, but only those called into question by the case at

14

hand and necessary to support the reasonableness of the fee award." *Id.* (quoting

*Kessler v. Assocs. Servs. Co. of Haw.*, 639 F.2d 498, 500 n.1 (9th Cir. 1981)).

This Court finds and recommends that the district court enter default

judgment for Plaintiff.  Accordingly, Plaintiff is a prevailing party and entitled to

an award of a reasonable attorneys' fee, as addressed below.

### 1.    Reasonable Hourly Rate

The reasonable hourly rate is determined by assessing the prevailing market

rate in the relevant community for similar work performed by attorneys of

comparable skill, experience, and reputation. *Roberts v. City of Honolulu*, 938

F.3d 1020, 1023 (9th Cir. 2019) (citing *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th

Cir. 2016)); *Webb v. Ada Cnty.*, 285 F.3d 829, 840 (9th Cir. 2002) (citing

*Chalmers v. City of L.A.*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)).  The relevant

community is the forum in which the district court sits. *Camacho v. Bridgeport

Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  In this case, the relevant community

is the District of Hawaii.

The Court has reviewed the Culpepper Declaration.  ECF No. 75-2.  Plaintiff

seeks an hourly rate of $250 for work completed by Mr. Culpepper.  *Id.* at 19 ¶ 35.

Mr. Culpepper declares that he is a solo practitioner who focuses his practice on

intellectual property, in particular, electrical and computer software technology.

*Id.* at 18 ¶ 34.  Mr. Culpepper declares that he has been licensed to practice law in

the State of Hawaii since 2012, and before the United States Patent and Trademark

Office since 2000.  *Id*.  Mr. Culpepper declares that his $250 hourly rate is below

the 2014 mean hourly rate of $379 for a solo practitioner specializing in electrical

technologies.  *Id*. at 19 ¶ 35 (citing American Intellectual Property Law

Association, *Report of the Economic Survey* (2015), at I-15).

This Court is aware of the prevailing rates in the community for similar

services performed by attorneys of comparable experience, skill, and reputation.

Based on the Court's knowledge of the prevailing rates, the Court finds that

Mr. Culpepper's requested hourly rate is reasonable.  Accordingly, the Court will

apply this $250 hourly rate in calculating Plaintiff's lodestar.

2.    Hours Reasonably Expended

"The fee applicant bears the burden of documenting the appropriate hours

expended in the litigation and must submit evidence in support of those hours

worked."  *U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir.

2015) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)).  "[T]he

prevailing party is entitled to recover only reasonable attorneys' fees and costs, and

the burden is on the prevailing party to prove those fees and costs were associated

with the relief requested and reasonably necessary to achieve the results obtained."

*Tirona v. State Farm Mut. Auto. Ins. Co*., 821 F. Supp. 632, 636 (D. Haw. 1993)

(citations omitted).

The Court also has its own "independent duty to review the submitted itemized log of hours to determine the reasonableness of the hours requested in each case." *Irwin v. Astrue*, No. 3:10-CV-545-HZ, 2012 WL 707090, at *1 (D. Or. Mar. 5, 2012) (citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)). The court must guard against awarding fees and costs which are excessive and must determine which fees were self-imposed and avoidable. *Au v. Funding Grp., Inc.*, 933 F. Supp. 2d 1264, 1275 (D. Haw. 2013) (citing *Tirona*, 821 F. Supp. 18 at 637).

Courts have the "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Id.* (quoting *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992)). Accordingly, courts must deny compensation for time expended on work deemed "excessive, redundant, or otherwise unnecessary." *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1083 (9th Cir. 2021) (quoting *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).

Plaintiff requests attorneys' fees of $23,895 for 95.58 hours of work performed. ECF No. 75-2 at 17–18. The Court has reviewed Mr. Culpepper's billing entries and notes several that warrant reduction. The Court addresses these entries below.

a.   Excessive Time

The Court finds that Mr. Culpepper logged excessive hours for completing tasks that are clearly template-based and similar to those in other actions in this district court.  The Court thus recommends that the district court impose a 10% reduction for the tasks below.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."); *see also Ruiz v. FCA US LLC*, Case No. CV 19-8254-DMG (JEMx), 2020 WL 4980079, at *3 (C.D. Cal. June 25, 2020) (reducing by 10% time counsel spent completing form documents and routine motions).

i.   Similar Motions for Default Judgment

Mr. Culpepper logged a total 14.0 hours January 24 to 28, 2022, to prepare this Motion.  *See* ECF No. 75-2 at 17.  The Court finds 14.0 hours excessive. Motions for default judgment tend to follow a set formula.  This Motion is similar to others filed by Mr. Culpepper in this district.  *See, e.g.*, *Eve Nevada, LLC v. Does 1-16*, Civil No. 20-00475 DKW-KJM, ECF No. 35; *42 Ventures, LLC v. Rend*, Civil No. 20-00228 DKW-WRP, ECF No. 25; *Hunter Killer Prods., Inc. v. Qazi Muhammad Zarlish*, Civil No. 19-00168 LEK-KJM, ECF No. 37.  The Court thus recommends that the district court reduce Mr. Culpepper's claimed 14.0 hours to prepare this Motion by 10% and award Mr. Culpepper 12.6 hours.

ii.    Similar Requests for Entry of Default

Mr. Culpepper logged 1.0 hours on March 2, 2020, to prepare Plaintiff's

second request for entry of default, and 0.5 hours on January 14, 2022, to prepare

Plaintiff's third request for entry of default.  *See* ECF Nos. 42, 73.  The Court finds

the time Mr. Culpepper expended preparing these two requests to be excessive.

Requests for entry of default are also formulaic, even arguably clerical in nature,

and the requests filed in this matter are among several filed by Mr. Culpepper in

this and other copyright infringement cases in this district.  *See, e.g.*, ECF No. 18;

*Eve Nevada, LLC v. Does 1-16*, Civil No. 20-00475 DKW-KJM, ECF No. 28; *42*

*Ventures, LLC v. Rend*, Civil No. 20-00228 DKW-WRP, ECF No. 22; *id.*, ECF

No. 44; *Fallen Prods., Inc. v. DOE*, Civil No. 20-0033 JAO-RT, ECF No. 37;

*Definition Delaware, LLC v. Davis*, Civil No. 20-00027 LEK-KJM, ECF No. 16.

The Court thus recommends that the district court reduce Mr. Culpepper's claimed

1.5 hours preparing two requests for entry of default by 10% and award

Mr. Culpepper 1.35 hours.

iii.    Notice of Ninth Circuit Decision

Mr. Culpepper logged 1.0 hours on December 16, 2021, to prepare and file a

Notice of Decision by Ninth Circuit Court of Appeals in Related Case ("Notice").

*See* ECF No. 68; ECF No. 75-2 at 17.  The Court finds 1.0 hours for this task

excessive.  The Notice informs the Court of the Ninth Circuit's decision in *42*

*Ventures* and requests, albeit incompletely, that the Court lift the stay.[4]  ECF No.

68 at 2.  Plaintiff attached the Ninth Circuit's decision in *42 Ventures* to the Notice.

ECF No. 68-1.  Given the Notice's non-substantive nature, the Court recommends

that the district court reduce Mr. Culpepper's claimed 1.0 hours by 10% and award

0.9 hours.

b.    Clerical Tasks

The Court's review of Mr. Culpepper's billing entries further reveals non-

compensable clerical tasks.  "[C]lerical or ministerial costs are part of an attorney's

overhead and are reflected in the charged hourly rate."  *Au*, 933 F. Supp. 2d at

1275–76 (quoting *Jeremiah B. v. Dep't of Educ.*, Civil No. 09-00262 DAE-LEK,

2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010)).  The following is a non-

exhaustive list of clerical and ministerial tasks deemed non-compensable in this

district:

> reviewing Court-generated notices; scheduling dates and deadlines;
> calendaring dates and deadlines; notifying a client of dates and
> deadlines; preparing documents for filing with the Court; filing
> documents with the Court; informing a client that a document has
> been filed; . . . copying, printing, and scanning documents, receiving,
> downloading, and emailing documents; and communicating with
> Court staff.

---

[4]  The last unfinished sentence of the Notice provides:  "Plaintiff respectfully
requests that the stay be lifted so that it[]"  ECF No. 68 at 2.

*Crawford v. Japan Airlines*, Civil No. 03-00451 LEK-KSC, 2014 WL 1326576, at

*4 (D. Haw. Jan. 22, 2014) (citations omitted), *adopted by* 2014 WL 1326580 (D.

Haw. Mar. 28, 2014).

The Court finds that billing entries containing clerical tasks consist of a

compensable portion—"preparing" a document—and a non-compensable

portion—"filing" a document.[5]  Accordingly, the Court recommends applying a

5% reduction to account for the clerical portion of otherwise compensable tasks

(excepting the entries noted above as excessive).  *See Gonzalez v. City of*

*Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (quoting *Moreno*, 534 F.3d at

1112) "[T]he district court can impose a small reduction, no greater than 10

percent—a 'haircut'—based on its exercise of discretion and without a more

specific explanation.").

The Court recommends that the district court reduce by 5% Mr. Culpepper's

claimed 11.5 hours of billed work that includes clerical tasks.[6]  The Court also

recommends that, for the entries already subject to reduction for excessiveness, the

---

[5] *See, e.g.*, ECF No. 75-2 at 16 (10/15/2019 "preparing scheduling conf statement;
filing" (2.0 hours)).

[6] Entries subject to reduction as clerical tasks include the following:  09/11/2019
(2.75 hours); 09/27/2019 (0.5 hours); 10/15/2019 (2.0 hours); 10/15/2019 (2.0
hours); 02/14/2020 (1.75 hours); 03/02/2020 (1.0 hours); 12/16/2021 (1.0 hours);
01/14/2022 (0.5 hours).

district court further reduce such entries by 5%.[7]  In sum, the Court recommends

that the district court impose a total reduction of 0.56 hours for non-compensable

clerical tasks.

From those hours the Court finds excessive, the Court recommends that the

district court further reduce by 5% Mr. Culpepper's claimed 11.25 hours of billed

work that includes clerical tasks and award 10.69 hours.[8]

c.    Block-Billed Entries

The practice of block-billing violates Local Rule 54.2(f), which requires that

a memorandum in support of a motion for attorneys' fees describe "the work

performed by each timekeeper, broken down by hours expended on each task . . . ."

LR54.2(f).  "Block billing entries generally fail to specify a breakdown of the time

spent on each task." *Au*, 933 F. Supp. 2d at 1276.  The Ninth Circuit has

---

[7]  Entries subject to reduction as clerical tasks and for excessiveness include the
following:  03/02/2020 (0.9 hours); 12/16/2021 (0.9 hours); 01/14/2022 (0.45
hours).

[8]  As stated, the Court finds that the following time entries contain non-
compensable clerical tasks:  09/11/2019 (2.75 hours); 09/27/2019 (0.5 hours);
10/15/2019 (2.0 hours); 10/15/2019 (2.0 hours); 02/14/2020 (1.75 hours);
03/02/2020 (1.0 hours); 12/16/2021 (1.0 hours); 01/14/2022 (0.5 hours).  For those
entries that are also subject to reduction for excessiveness, the Court first imposed
a 10% reduction as set forth above.  The Court then used the reduced figure to
calculate the 5% reduction for clerical tasks.  For example, Mr. Culpepper claimed
1.0 hours for work performed on 03/02/2020 that the Court finds excessive and
contains a clerical task.  Accordingly, the Court recommends a 10% reduction on
1.0 hours, and a further 5% reduction on 0.9 hours.

recognized a district court's authority to reduce hours that are billed in block format. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with the district court's authority to reduce hours that are billed in block format."). Generally, the district court "may properly impose a reduction for block billing, but it should 'explain how or why . . . the reduction . . . fairly balance[s] those hours that were actually billed in block format." *Id.* (citing *Sorenson*, 239 F.3d at 1146).

This district court has previously declined to impose a reduction for block-billed entries where "limited instances" of block-billing that did not prevent the court from evaluating the reasonableness of the hours expended. *See Santana v. Berryhill*, Civil No. 16-00367 ACK-KJM, 2017 WL 4211044, at *4 (D. Haw. Aug. 31, 2017), *adopted by* No. CV 16-00367 ACK-KJM, 2017 WL 4202153 (D. Haw. Sept. 21, 2017) (citations omitted) ("The limited instances of block-billed entries . . . do not prevent the Court from evaluating the reasonableness of the hours expended."); *Dep't of Educ. Haw. v. C.B. ex rel. Donna B.*, Civil No. 11-00576 SOM-RLP, 2012 WL 7475406, at *10 (D. Haw. Sept. 28, 2012) (citing *Ko Olina Dev., LLC v. Centex Homes*, CV. NO. 09-00272 DAE-LEK, 2011 WL 1235548, at *11 (D. Haw. Mar. 29, 2011) (declining to apply a percentage reduction for block-billing because "[v]iewing the record as a whole, the limited instances of block

billing do not prevent the Court from evaluating the reasonableness of the hours expended").

Here, the Court finds entries in block format that contain both legal and clerical tasks. The comingling of compensable and non-compensable tasks in block-billed format render the determination of reasonableness nearly impossible. When a single entry contains multiple tasks—particularly tasks that are clearly different, such as writing e-mails, drafting testimony, and legal research—the Court is unable to assess the reasonableness of the hours expended on each specific task.

The Court thus recommends that the district court apply an across-the-board reduction of 20% to block-billed entries, accounting for those entries the Court recommended to be reduced as excessive and for clerical tasks.[9] *See Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, CIVIL NO. 14-00520 DKW-KSC, 2017 WL 810277, at *14 (D. Haw. Mar. 1, 2017) (imposing an across-the-board reduction of 20% to block-billed entries); *Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, CIV. No. 09-00429 ACK-KSC, 2012 WL 2529298, at *3 (D. Haw. June 28, 2012) (reducing block-billed hours by 20%); *Signature Homes of Haw., LLC v. Cascade Sur. and*

---

[9]  As set forth above, the Court's recommendation is based on reductions imposed in sequential order, rather than concurrent order. Stated differently, for those entries subject to reduction for excessiveness, clerical tasks, and block-billing, the Court first imposes a 10% reduction for excessiveness. The Court then uses the reduced figure to calculate the next applicable reduction.

*Bonding, Inc.*, No. CV 06-00663 JMS BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block-billed hours by 20%). From those hours the Court finds excessive and clerical, the Court recommends that the district court further reduce Mr. Culpepper's claimed 38.89 hours that contain block-billed entries by 20% and award 31.14 hours.[10]

### d.   Total Lodestar Calculation

Based on the foregoing, the Court recommends that the district court reduce Plaintiff's 95.58 requested hours by: (1) 1.65 hours for excessiveness; (2) 0.56 hours for clerical tasks; and (3) 7.75 hours for block-billing, for an adjusted total of 85.59 hours. The Court thus recommends that the district court award Plaintiff $21,397.50 in attorneys' fees, plus $1,008.25 GET, for a total fees award of $22,405.75.

### D.   Injunctive Relief

Plaintiff requests that the Court grant injunctive relief to permanently bar Defendant from directly and contributorily infringing Plaintiff's copyrights in the

---

[10] Entries subject to a 20% reduction for block-billing—some of which have already been reduced for excessiveness and as being clerical tasks—include: 08/08/2019 (1.5 hours); 08/12/2019 (1.5 hours); 08/30/2019 (1.5 hours); 09/06/2019 (5.0 hours); 09/06/2019 (5.0 hours); 09/11/2019 (2.61 hours); 09/25/2019 (0.75 hours); 09/25/2019 (0.75 hours); 09/27/2019 (0.48 hours); 09/30/2019 (0.25 hours); 10/06/2019 (1.0 hours); 10/15/2019 (1.9 hours); 10/15/2019 (1.9 hours); 11/29/2019 (1.0 hours); 12/04/2019 (4.0 hours); 01/09/2020 (0.75 hours); 07/18/2020–07/20/2020 (6.0 hours); 11/24/2020 (1.0 hours); 12/16/2020 (0.75 hours); 01/14/2022 (1.25 hours).

Work.  ECF No. 75-1 at 28.  Section 502 authorizes the Court to grant permanent

injunctive relief to prevent or restrain copyright infringement.  *See* 17 U.S.C.

§ 502(a) ("Any court having jurisdiction of a civil action arising under this title

may . . . grant temporary and final injunctions on such terms as it may deem

reasonable to prevent or refrain infringement of a copyright.").  "Courts routinely

issue injunctive relief as part of a default judgment where, as here, an online media

distribution system was used to download and distribute copyrighted works

without permission."  *Cook Prods., LLC v. Szerlip*, Civil NO. 16-00637 HG-KSC,

2017 WL 6568001, at *5 (D. Haw. Aug. 25, 2017), *adopted as modified by* No.

CV 16-00637 HG-KSC, 2017 WL 4883220 (D. Haw. Oct. 30, 2017), *on*

*reconsideration*, No. CV 16-00637 HG-KSC, 2017 WL 6559754 (D. Haw. Dec.

22, 2017) (citing *Warner Bros. Records, Inc. v. Novak*, 2007 WL 1381748 at * 2–3

(D. N.J. May 9, 2007)).  "As a general rule, a permanent injunction will be granted

when liability has been established and there is a threat of continuing violations."

*MAI Systems Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993)

(citation omitted).

Plaintiff has shown that Defendant will likely continue to violate Plaintiff's

copyright if Defendant is not enjoined.  The BitTorrent technology, which

Defendant allegedly used to violate Plaintiff's copyright, allows its users "to

reproduce, distribute, display or perform the Plaintiff's copyrighted Work."  ECF

26

No. 64 at 30 ¶ 112.  Based on how BitTorrent operates, Defendant's unauthorized copy of the Work will likely be the source for others to download the Work repeatedly.  *See* ECF No. 64 at 25–29 ¶¶ 89–111 (describing the BitTorrent file sharing protocol and how it propagates continued unlawful sharing).

Defendant's failure to appear in this case further illustrates Defendant's disregard for the seriousness of his actions.  In fact, Mr. Culpepper had corresponded by email with Defendant on September 6 to 9, 2019.  ECF No. 75-2 at 4 ¶ 11.  Plaintiff attempted to resolve the matter with Defendant but without success.  *See id*. at 5–8 ¶¶ 12–17.  Coupled with Plaintiff's allegations, this indicates that Defendant will likely continue to violate Plaintiff's copyrights. Moreover, Defendant is not likely to suffer hardship by being enjoined from engaging in illegal activity.  Accordingly, the Court finds that permanent injunctive relief is an appropriate award to prevent future copyright infringement.  The Court thus recommends that the district court grant Plaintiff's request for a permanent injunction.

## CONCLUSION

Based on the foregoing, the Court FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan (ECF No. 75) as follows: (1) award Plaintiff a total of $150,000 for statutory damages; (2) award Plaintiff a

total of $22,405.75 (which includes GET of $1,008.25); and (3) award Plaintiff a permanent injunction against Defendant's continued infringement of Plaintiff's copyright in the Work.

The Court also RECOMMENDS that the district court DENY Plaintiff's request for $4,714 in costs.  The Court further RECOMMENDS that such denial be without prejudice to Plaintiff bringing this request in a Bill of Costs pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54, and Local Rule 54.1(f)(1).

The Court ORDERS Plaintiff to (1) serve a copy of this Findings and Recommendation on Defendant and (2) file a Certificate of Service indicating the date of service by no later than June 21, 2022.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, June 7, 2022.



_____
Kenneth J. Mansfield
United States Magistrate Judge

*HB Productions, Inc. v. Faizan*, Civil No. 19-00487 JMS-KJM; Findings and Recommendation to Grant in Part and Deny in Part Plaintiff's Motion for Default Judgment Against Defendant Muhammad Faizan